UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

Case No.: 6:23-CV-00681

DIRECT GENERAL INSURANCE
COMPANY,

        Plaintiff,

v.

JOSEPH BEECHER ALCE, DESTINY
ALCE, JEANETTE JACQUES, JOSEPH
BEECHER ALCE, as parent, natural, and
legal guardian of J.A., a minor, and JOSEPH
BEECHER ALCE, as parent, natural, and
legal guardian of S.A., a minor

        Defendants.

_____/

## **SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT**

COMES NOW, the Plaintiff, DIRECT GENERAL INSURANCE COMPANY, by and through their undersigned counsel, pursuant to Chapter 86, Florida Statutes, files this Complaint for Declaratory Judgment seeking this Court's declaratory judgment and relief against the Defendants, JOSEPH BEECHER ALCE, DESTINY ALCE, JEANETTE JACQUES, JOSEPH BEECHER ALCE, as Parent, Natural, and Legal Guardian of J.A., a minor, and JOSEPH BEECHER ALCE, as Parent, Natural, and Legal Guardian of S.A., a minor, and as grounds therefore would state:

1.     This is an action for Declaratory Judgment pursuant to Chapter 86, Florida Statutes. The Plaintiff, DIRECT GENERAL INSURANCE COMPANY requests that this Honorable Court rule that the policy of insurance issued to the Defendant, JOSEPH BEECHER ALCE, bearing policy # XXXXXX9679, is rescinded and is void *ab initio*.

**Jurisdiction and Venue**

2.      This is an Action for Declaratory Judgment and for Breach of Insurance Contract and is otherwise within the jurisdiction of this Court.  The amount of the total claim exposure is in excess of thirty thousand ($30,000.00) dollars, including but not limited to adjusting costs, investigative costs, exposure under the subject insurance policy, and attorney's fees and costs.

3.      Venue is proper in Orange County, Florida.

**Parties**

4.      The Plaintiff, DIRECT GENERAL INSURANCE COMPANY, is a duly licensed insurance company authorized to conduct business in the State of Florida and Orange County.

5.      At all times material to this action, JOSEPH BEECHER ALCE is and was a Florida citizen residing in Orange County, Florida.

6.      At all times material to this action, DESTINY ALCE is and was a Florida citizen residing in Orange County, Florida.

7.      At all times material to this action, JEANETTE JACQUES is and was a Florida citizen residing in Orange County, Florida.

8.      At all times material to this action, JOSEPH BEECHER ALCE, as Parent, Natural, and Legal Guardian of J.A., a minor (hereinafter referred to as "J.A., a minor") is and was a Florida citizen residing in Orange County, Florida.

9.      At all times material to this action, JOSEPH BEECHER ALCE, as Parent, Natural, and Legal Guardian of S.A., a minor (hereinafter referred to as "S.A., a minor") is and was a Florida citizen residing in Orange County, Florida.

**Facts**

10.     The Plaintiff, DIRECT GENERAL INSURANCE COMPANY, issued a policy of insurance, bearing policy # XXXXXX9679, to the Defendant, JOSEPH BEECHER ALCE, with effective dates from January 1, 2022 through January 1, 2023. (See the Declarations Page and the policy of insurance, attached hereto **as Exhibit "A" and Exhibit "B"**).

11.     The policy of insurance provided the following coverages to JOSEPH BEECHER ALCE for a 2013 Land Rover LR4, VIN# SALAG2D43DA683068: property damage liability insurance coverage, personal injury protection benefits, and accidental death benefits. (See Exhibit "A").

12.     The policy of insurance described herein was in full force and effect on the date of the subject accident.

13.     On or about May 29, 2022, DESTINY ALCE was operating the insured 2013 Land Rover LR4 (VIN: SALAG2D43DA683068), when the insured vehicle was involved in an accident with an opposing motor vehicle. The insured 2013 Land Rover LR4 (VIN: SALAG2D43DA683068) was owned by JOSEPH BEECHER ALCE. JEANETTE JACQUES, J.A., a minor, and S.A., a minor were passengers in the insured 2013 Land Rover LR4 (VIN: SALAG2D43DA683068). The opposing motor vehicle was owned by An Unknown Individual and operated by Ashley Martinez.

14.     As a result of the May 29, 2022 motor vehicle accident, Defendant, DESTINY ALCE, the operator of the insured 2013 Landrover LR4 (VIN: SALAG2D43DA683068), has a claim for personal injuries and/or personal injury protection benefits against the Plaintiff, DIRECT GENERAL INSURANCE COMPANY.

15.     As a result of the May 29, 2022 motor vehicle accident, Defendant, JEANETTE JACQUES, the passenger of the insured 2013 Landrover LR4 (VIN: SALAG2D43DA683068), has a claim for personal injuries and/or personal injury protection benefits against the Plaintiff,

DIRECT GENERAL INSURANCE COMPANY and/or Defendant, JOSEPH BEECHER ALCE and/or Defendant, DESTINY ALCE.

16.     As a result of the May 29, 2022 motor vehicle accident, Defendant, J.A., a minor, the passenger of the insured 2013 Landrover LR4 (VIN: SALAG2D43DA683068), has a claim for personal injuries and/or personal injury protection benefits against the Plaintiff, DIRECT GENERAL INSURANCE COMPANY and/or Defendant, JOSEPH BEECHER ALCE and/or Defendant, DESTINY ALCE.

17.     As a result of the May 29, 2022 motor vehicle accident, Defendant, S.A., a minor, the passenger of the insured 2013 Landrover LR4 (VIN: SALAG2D43DA683068), has a claim for personal injuries and/or personal injury protection benefits against the Plaintiff, DIRECT GENERAL INSURANCE COMPANY and/or Defendant, JOSEPH BEECHER ALCE and/or Defendant, DESTINY ALCE.

18.     As a result of the May 29, 2022 motor vehicle accident, An Unknown Individual, the owner of the opposing motor vehicle, has a claim for property damage against the Plaintiff, DIRECT GENERAL INSURANCE COMPANY and/or Defendant, JOSEPH BEECHER ALCE and/or Defendant, DESTINY ALCE.

19.     As a result of the May 29, 2022 motor vehicle accident, Ashley Martinez, the operator of the opposing motor vehicle, has a claim for personal injuries against the Plaintiff, DIRECT GENERAL INSURANCE COMPANY and/or Defendant, JOSEPH BEECHER ALCE and/or Defendant, DESTINY ALCE.

20.     On or about January 1, 2022, Defendant, JOSEPH BEECHER ALCE completed an application for insurance with the Plaintiff, DIRECT GENERAL INSURANCE COMPANY. The application for insurance dated January 1, 2022 is a contract entered between JOSEPH BEECHER ALCE and DIRECT GENERAL INSURANCE COMPANY.

21.     Once Defendant, JOSEPH BEECHER ALCE completed the application for insurance, Plaintiff, DIRECT GENERAL INSURANCE COMPANY relied upon the representations made by JOSEPH BEECHER ALCE and issued a contract for insurance.

22.     During the investigation of the facts and circumstances surrounding the motor vehicle accident, it was determined that JOSEPH BEECHER ALCE made material misrepresentations on the application for insurance.

23.     In particular, on the application for insurance dated January 1, 2022, Defendant, JOSEPH BEECHER ALCE failed to disclose that an additional resident over the age of 15 lived within his household at the time of the application for insurance. (See the Application for Insurance dated January 1, 2022, attached hereto as **Exhibit "C"**).

24.     Specifically, on the application for insurance dated January 1, 2022, Defendant, JOSEPH BEECHER ALCE failed to disclose that S.A.,a minor (Daughter) resided with JOSEPH BEECHER ALCE.

25.     On the application for insurance dated January 1, 2022, Defendant, JOSEPH BEECHER ALCE was required to disclose:

> "… ALL persons age 15 years and older who reside with Applicant, whether or not they (1) operate any of the vehicle listed above, or 92) are licensed to drive. Dependent children whose parents are separated or divorced are deemed to reside in both parent's households and must be listed."

See Exhibit "C."

26.     On the application for insurance dated January 1, 2022, Defendant, JOSEPH BEECHER ALCE, answered "No" to the following application question, which provides:

> "Are there any residents in your household who are 15 years and older, whether licensed or not, that you have not disclosed on the Application, including children/step-children or dependents who reside temporarily elsewhere?"

See Exhibit "C".

27.     On the application for insurance dated January 1, 2022, Defendant, JOSEPH BEECHER ALCE signed the pertinent page of the Applicant's Statement, which provides:

"2. I understand, recognize, and agree that the information I have given with this Application was done to induce the Company to issue the policy for which I have applied.

3. I have reported on this Application all persons age 15 and older who reside with me, whether or not they are licensed to operate a vehicle. I have also reported all regular operators of my vehicle(s).
…

11. If any of my answers on this Application are materially false or misleading, I understand and agree that the Company may rescind any policy issued, as authorized by law."

See Exhibit "C."

28.     Further, on the application for insurance dated January 1, 2022, Defendant, JOSEPH BEECHER ALCE listed S.A.,a minor (Daughter) on the Driver Statement from, which provides:

"I agree that the persons listed below of eligible driving or permit age do not reside in my household nor have access to drive the vehicles insured on my policy. I understand that the Company may declare no coverage will be provided if said answers are false or misleading, and materially affect the risk the Company assumes by issuing this policy."

See Exhibit "C".

29.     By failing to disclose S.A.,a minor (Daughter) as an additional household resident over the age of 15 on the application for insurance dated January 1, 2022, Defendant, JOSEPH BEECHER ALCE made material misrepresentations with the Plaintiff, DIRECT GENERAL INSURANCE COMPANY on the application for insurance dated January 1, 2022.

30.     Had JOSEPH BEECHER ALCE disclosed S.A.,a minor (Daughter) as an additional household resident over the age of 15 at the time of the application for insurance dated January 1, 2022, Plaintiff, DIRECT GENERAL INSURANCE COMPANY would not

have issued the policy at the same premium rate. Specifically, this would have resulted in an increase to the policy premium.

31.     JOSEPH BEECHER ALCE's omission of facts relating to the additional household resident over the age of 15, and his misrepresentation by certifying that all disclosures concerning the additional resident over the age of 15 in his household had been made, is a material misrepresentation on the application for insurance dated January 1, 2022.

32.     As JOSEPH BEECHER ALCE made a material misrepresentation on the application for insurance dated January 1, 2022, which would have resulted in an increase of the policy premium had the true facts been disclosed, Plaintiff, DIRECT GENERAL INSURANCE COMPANY is not responsible for providing insurance coverage pursuant to Florida Statute §627.409.

33.     Pursuant to the policy of insurance issued to JOSEPH BEECHER ALCE , DIRECT GENERAL INSURANCE COMPANY may void the insurance policy as follows:

### MISREPRESENTATION AND FRAUD

A. This Policy was issued in reliance on the information provided on **your** written or verbal insurance application. **We** reserve the right, at **our** sole discretion, to void or rescind this Policy if **you** or a **relative**:

1. Made any false statements or representations to **us** with respect to any material fact or circumstance; or

2. Concealed, omitted, or misrepresented any material fact or circumstance or engaged in any fraudulent conduct;

in any application for this insurance or when renewing this Policy. **We** will not be liable and will deny coverage for any **accident**, **loss** or claim occurring thereafter.

A fact or circumstance will be deemed material if **we** would not have:

1. Written this Policy;
2. Agreed to insure the risk assumed; or
3. Assumed the risk at the premium charged.

This includes, but is not limited to, failing to disclose in a verbal or written application all person residing in your household or regular operators of a covered auto.

See page 27 of Exhibit "B".

34.    Further, Florida Statute §627.409(1) provides:

(1)   Any statement or description made by or on behalf of an insured or annuitant in an application for an insurance policy or annuity contract, or in negotiations for a policy or contract, is a representation and not a warranty. Except as provided in subsection (3), *a misrepresentation, omission, concealment of fact, or incorrect statement may prevent recovery under the contract or policy only if any of the following apply*:

(a)   The misrepresentation, omission, concealment, or statement is fraudulent or is material to the acceptance of the risk or to the hazard assumed by the insurer.

(b)   *If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith* would not have issued the policy or contract, *would not have issued it at the same premium rate*, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss.

(*emphasis added*).

35.    As a result of the material misrepresentations committed by JOSEPH BEECHER ALCE, Plaintiff, DIRECT GENERAL INSURANCE COMPANY has rescinded the insurance policy, bearing policy # XXXXXX9679, issued to JOSEPH BEECHER ALCE and has declared the policy void ab initio in accordance with Florida Statute §627.409.

36.    In accordance with Plaintiff, DIRECT GENERAL INSURANCE COMPANY's rescission of the policy and declaring the policy void ab initio, Plaintiff, DIRECT GENERAL INSURANCE COMPANY has issued a full refund of insurance premiums paid by Defendant, JOSEPH BEECHER ALCE for the policy of insurance.

37.     Additionally, in accordance with Plaintiff's rescission of the policy and declaring the policy void ab initio, Plaintiff, DIRECT GENERAL INSURANCE COMPANY notified the Defendant, JOSEPH BEECHER ALCE of the material misrepresentations and of the rescission of the policy. (See Notice of Rescission dated August 29, 2022, attached hereto as **Exhibit "D"**).

38.     The Plaintiff, DIRECT GENERAL INSURANCE COMPANY, as required by Rule 69O-167.002 of the Florida Administrative Code, provided notice to the Florida Department of Insurance, Office of Insurance Regulations of the rescission of the insurance policy.

39.     As a result, DIRECT GENERAL INSURANCE COMPANY asserts that there is no insurance coverage for the May 29, 2022 accident since the insured, JOSEPH BEECHER ALCE, made material misrepresentations on the application for insurance, and misrepresented facts in the procurement of the insurance coverage as set forth therein.

40.     Nonetheless, multiple claims have been presented against the subject insurance policy.  Therefore, there exists a present, ascertained or ascertainable set of facts or present controversy as to a state of facts concerning the rights and obligations of DIRECT GENERAL INSURANCE COMPANY under the subject insurance policy.

41.     DIRECT GENERAL INSURANCE COMPANY, the Defendants and the claimants have an actual, present, adverse and antagonistic interest in the subject matter described herein.  All proper and present and antagonistic interests are before the court by proper process.  The Plaintiff, DIRECT GENERAL INSURANCE COMPANY, is in doubt with respect to its rights under the automobile policy and by this Complaint seeks a declaration of its rights and obligations under the automobile policy with respect to the claims asserted against DIRECT GENERAL INSURANCE COMPANY.  The Plaintiff is not seeking legal advice or an advisory opinion.

42.    All conditions precedent to the bringing of this action have occurred and Plaintiff, DIRECT GENERAL INSURANCE COMPANY is entitled to the relief sought herein.

### Count I – Declaratory Relief
### Material Misrepresentation – Rescission
### As Per Florida Statute § 627.409

43.    The Plaintiff, DIRECT GENERAL INSURANCE COMPANY, incorporates by reference paragraphs 1 through 46, as if fully alleged herein.

44.    Florida Statute § 627.409(1) provides,

(1)   Any statement or description made by or on behalf of an insured or annuitant in an application for an insurance policy or annuity contract, or in negotiations for a policy or contract, is a representation and not a warranty. Except as provided in subsection (3), *a misrepresentation, omission, concealment of fact, or incorrect statement may prevent recovery under the contract or policy only if any of the following apply*:

(a)    The misrepresentation, omission, concealment, or statement is fraudulent or is material to the acceptance of the risk or to the hazard assumed by the insurer.

(b)    *If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith* would not have issued the policy or contract, *would not have issued it at the same premium rate*, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss.

(emphasis added).

45.    By failing to disclose S.A.,a minor (Daughter) as additional household residents over the age of 15 on the application for insurance dated January 1, 2022, Defendant, JOSEPH BEECHER ALCE made material misrepresentations with the Plaintiff, DIRECT GENERAL INSURANCE COMPANY on the application for insurance dated January 1, 2022.

46.    Had JOSEPH BEECHER ALCE disclosed S.A.,a minor (Daughter) as additional household residents over the age of 15 at the time of the application for insurance dated January 1, 2022, Plaintiff, DIRECT GENERAL INSURANCE COMPANY would not

have issued the policy at the same premium rate. Specifically, this would have resulted in an increase to the policy premium.

47.     JOSEPH BEECHER ALCE's omission of facts relating to the additional household resident over the age of 15, and his misrepresentation by certifying that all disclosures concerning the additional resident over the age of 15 in his household had been made, is a material misrepresentation on the application for insurance dated January 1, 2022.

48.     As JOSEPH BEECHER ALCE made a material misrepresentation on the application for insurance dated January 1, 2022, which would have resulted in an increase of the policy premium had the true facts been disclosed, Plaintiff, DIRECT GENERAL INSURANCE COMPANY is not responsible for providing insurance coverage pursuant to Florida Statute §627.409.

49.     Pursuant to Florida Statute § 627.409(1), an insurer is not responsible for coverage where a material misrepresentation has been made on the application for insurance.

50.     Therefore, at this time, there exists a bona fide dispute with the Defendants regarding whether Defendants, JOSEPH BEECHER ALCE, DESTINY ALCE, JEANETTE JACQUES, J.A., a minor, and S.A., a minor, are covered under the policy of insurance; and therefore, entitled to the coverages provided by the policy of insurance.

51.     Notwithstanding the subject policy rescission, the Plaintiff asserts that claims have been made seeking benefits under the subject or the insured has sought a defense or indemnification from DIRECT GENERAL INSURANCE COMPANY.  Therefore, there is a dispute with the Defendants herein as to the legal ramifications regarding the subject policy rescission.

52.     The insured Defendant, JOSEPH BEECHER ALCE has or will demand to be defended or to be indemnified under the policy of insurance for claims and injuries sustained

in the May 29, 2022 motor vehicle accident under policy # XXXXXX9679. Therefore, to avoid occurring unnecessary and excessive attorneys' fees and costs in providing a defense or indemnification where there was a material misrepresentation as described herein, the Plaintiff asks for the Court to declare the rights and obligations of the parties.

53.     The Defendant, DESTINY ALCE has or will demand to be defended or to be indemnified under the policy of insurance for claims and injuries sustained in the May 29, 2022 motor vehicle accident under policy # XXXXXX9679. Therefore, to avoid occurring unnecessary and excessive attorneys' fees and costs in providing a defense or indemnification where there was a material misrepresentation as described herein, the Plaintiff asks for the Court to declare the rights and obligations of the parties.

54.     The Defendant, Joseph Beecher, is currently challenging the rescission individually and on behalf of three separate classes, "PIP and PD Only Class," "Online Class," and "Prior Knowledge Class," in the filing of Counter-Plaintiffs' Class Action Complaint wherein it is requesting a judgment that he is entitled to insurance coverage from Plaintiff. See **Exhibit F**.

55.     The Defendant, Destiny Alce, is currently challenging the rescission individually and on behalf of three separate classes, "PIP and PD Only Class," "Online Class," and "Prior Knowledge Class," in the filing of Counter-Plaintiffs' Class Action Complaint wherein it is requesting a judgment that he is entitled to insurance coverage from Plaintiff. See **Exhibit F**.

56.     The Defendant, Jeanette Jacques, is currently challenging the rescission individually and on behalf of three separate classes, "PIP and PD Only Class," "Online Class," and "Prior Knowledge Class," in the filing of Counter-Plaintiffs' Class Action Complaint wherein it is requesting a judgment that he is entitled to insurance coverage from Plaintiff. See **Exhibit F**.

57.    The Defendant, J.A., a minor, is currently challenging the rescission individually and on behalf of three separate classes, "PIP and PD Only Class," "Online Class," and "Prior Knowledge Class," in the filing of Counter-Plaintiffs' Class Action Complaint wherein it is requesting a judgment that he is entitled to insurance coverage from Plaintiff. See **Exhibit F**.

58.    The Defendant, S.A., a minor, is currently challenging the rescission individually and on behalf of three separate classes, "PIP and PD Only Class," "Online Class," and "Prior Knowledge Class," in the filing of Counter-Plaintiffs' Class Action Complaint wherein it is requesting a judgment that he is entitled to insurance coverage from Plaintiff. See **Exhibit F**.

59.    Based on the rescission of the subject insurance policy, there is no insurance coverage for the named insured, JOSEPH BEECHER ALCE for any property damage liability insurance coverage, under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679.

60.    Based on the rescission of the subject insurance policy, there is no insurance coverage for the Defendant, DESTINY ALCE for any property damage liability insurance coverage or personal injury protection benefits, under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679.

61.    Based on the rescission of the subject insurance policy, there is no insurance coverage for the Defendant, JEANETTE JACQUES for any personal injury protection benefits, under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679.

62.    Based on the rescission of the subject insurance policy, there is no insurance coverage for the Defendant, J.A., a minor for any personal injury protection benefits, under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679.

63.     Based on the rescission of the subject insurance policy, there is no insurance coverage for the Defendant, S.A., a minor for any personal injury protection benefits, under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679.

64.     Based on the rescission of the subject insurance policy, the Plaintiff, DIRECT GENERAL INSURANCE COMPANY, has no duty to defend and/or indemnify the insured, JOSEPH BEECHER ALCE, for any claims made under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679.

65.     Based on the rescission of the subject insurance policy, the Plaintiff, DIRECT GENERAL INSURANCE COMPANY, has no duty to defend and/or indemnify the Defendant, DESTINY ALCE, for any claims made under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679.

66.     Based on the rescission of the subject insurance policy, the Defendant, JOSEPH BEECHER ALCE, is excluded from any insurance coverage under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679, for the May 29, 2022 accident.

67.     Based on the rescission of the subject insurance policy, the Defendant, DESTINY ALCE, is excluded from any insurance coverage under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679, for the May 29, 2022 accident.

68.     Based on the rescission of the subject insurance policy, the Defendant, JEANETTE JACQUES, is excluded from any insurance coverage under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679, for the May 29, 2022 accident.

69.    Based on the rescission of the subject insurance policy, the Defendant, J.A., a minor, is excluded from any insurance coverage under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679, for the May 29, 2022 accident.

70.    Based on the rescission of the subject insurance policy, the Defendant, S.A., a minor, is excluded from any insurance coverage under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679, for the May 29, 2022 accident.

71.    Based on the rescission of the subject insurance policy, there is no insurance coverage for the motor vehicle accident which occurred on May 29, 2022, under the policy of insurance issued by Plaintiff, DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679.

72.    Based on the rescission of the subject insurance policy, there is no personal injury protection ("PIP") benefits for the accident which occurred on May 29, 2022, under the policy of insurance issued by Plaintiff, DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679.

73.    Based on the rescission of the subject insurance policy, there is no property damage liability insurance coverage for the accident which occurred on May 29, 2022, under the policy of insurance issued by Plaintiff, DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679.

74.    The DIRECT GENERAL INSURANCE COMPANY Policy of Insurance, bearing policy # XXXXXX9679, is rescinded and is void ab initio.

75.    Florida Statute § 86.21 states in pertinent part:

> Any person claiming to be interested or who may be in doubt about his or her rights under a deed, will, contract, or other article, memorandum, or instrument in writing or whose rights, status, or other equitable or

legal relations are affected by a statute, or any regulation made under statutory authority, or by municipal ordinance, contract, deed, will, franchise, or other article, memorandum, or instrument in writing may have determined any question of construction or validity arising under such statute, regulation, municipal ordinance, contract, deed, will, franchise, or other article, memorandum, or instrument in writing, or any part thereof, and obtain a declaration of rights, status, or other equitable or legal relations thereunder.

76.    Chapter 86, Florida Statutes, explains that the purpose of a declaratory judgment "is to settle and to afford relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations and is to be liberally administered and construed." Fla. Stat. § 86.101 (2007).  There is almost no limit to the number and types of cases that may be heard under Chapter 86, if the following requirements are met: (1) there is a bona fide, actual, present need for the declaration; (2) the declaration deals with a present or ascertainable controversy; (3) there is a person who has or reasonably may have an actual, present, adverse interest in the subject matter; and (4) the relief sought is not merely the giving of legal advice by the court.  May v. Holley, 59 So. 2d 636, 639 (Fla. 1952).

77.    "When a party seeks declaratory judgment as to coverage under an insurance policy, it is functionally seeking the court's construction as to the rights and liabilities of the parties under a contract."  State Farm Mut. Auto. Ins. Co. v. Hinestrosa, 614 So. 2d 633, 635 (Fla. 4th DCA 1993) (trial court erred in dismissing insurance company's pleading seeking declaratory judgment because even if coverage did exist contrary to the insurance company's position, it was still entitled to a declaration by judgment on the coverage issue); see N.H. Indem. Ins. Co. v. Zaniboni, 13 Fla. L. Weekly Supp. 573a (Fla. 18th Cir. Ct. Nov. 18, 2005) (rejecting insurance company's argument that demand letter was required for declaratory relief action).

78.    An insurer's duty to defend depends solely on the allegations of the complaint against the insured.  See Lawyers Title Ins. Corp. v. JDC (America) Corp., 52 F.3d 1575,

1580 (11th Cir. 1995).  See also Philadelphia Indemn. Ins. Co. v. Yachtman's Inn Condo. Ass'n, Inc., 595 F. Supp. 2d 1319, 1322 (S.D. Fla. 2009) ("When a Florida court makes a determination as to whether an insurer's duty to defend the insured exists, it must look to the allegations contained within the four corners of the complaint in the underlying action against the insured.").  "The duty to defend is broader than the duty to indemnify, and thus, where the insurer has no duty to defend, it necessarily has no duty to indemnify."  Nova Cas. Co. v. Wasterstein, 424 F. Supp. 2s 1325, 1332 (S.D. Fla. 2006).

79.    Based upon this dispute, the Plaintiff, DIRECT GENERAL INSURANCE COMPANY, seeks a declaration of its rights and obligations under the statute with respect to the misrepresentations made by JOSEPH BEECHER ALCE on the application for insurance.

80.    There exists an actual and present need for a declaration of rights under the policy of insurance and the personal injury damages and/or property damage liability damages alleged.

WHEREFORE, the Plaintiff, DIRECT GENERAL INSURANCE COMPANY, requests that this Honorable Court rule that:

a.  The Defendant, JOSEPH BEECHER ALCE, failed to disclose that an additional resident over the age of 15 lived within his household at the time of the application for insurance, which occurred prior to the assignment of any benefits under the policy of insurance, bearing policy # XXXXXX9679, issued by DIRECT GENERAL INSURANCE COMPANY;

b.  There is no insurance coverage for the named insured, JOSEPH BEECHER ALCE for any property damage liability insurance coverage, under the policy of insurance issued by DIRECT

GENERAL    INSURANCE    COMPANY,    bearing    policy    #
XXXXXX9679;

c.  There is no insurance coverage for the Defendant, DESTINY ALCE
for any property damage liability insurance coverage or personal
injury protection benefits, under the policy of insurance issued by
DIRECT GENERAL INSURANCE COMPANY, bearing policy #
XXXXXX9679;

d.  There is no insurance coverage for the Defendant, JEANETTE
JACQUES for any personal injury protection benefits, under the
policy of insurance issued by DIRECT GENERAL INSURANCE
COMPANY, bearing policy # XXXXXX9679;

e.  There is no insurance coverage for the Defendant, J.A., a minor for
any personal injury protection benefits, under the policy of insurance
issued by DIRECT GENERAL INSURANCE COMPANY, bearing
policy # XXXXXX9679;

f.  There is no insurance coverage for the Defendant, S.A., a minor for
any personal injury protection benefits, under the policy of insurance
issued by DIRECT GENERAL INSURANCE COMPANY, bearing
policy # XXXXXX9679;

g.  The Plaintiff, DIRECT GENERAL INSURANCE COMPANY, has no
duty to defend and/or indemnify the insured, JOSEPH BEECHER
ALCE, for any claims made under the policy of insurance issued by
DIRECT GENERAL INSURANCE COMPANY, bearing policy #
XXXXXX9679;

h.  The Plaintiff, DIRECT GENERAL INSURANCE COMPANY, has no duty to defend and/or indemnify the Defendant, DESTINY ALCE, for any claims made under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679;

i.  The Defendant, JOSEPH BEECHER ALCE, is excluded from any insurance coverage under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679, for the May 29, 2022 accident;

j.  The Defendant, DESTINY ALCE, is excluded from any insurance coverage under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679, for the May 29, 2022 accident;

k.  The Defendant, JEANETTE JACQUES, is excluded from any insurance coverage under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679, for the May 29, 2022 accident;

l.  The Defendant, J.A., a minor, is excluded from any insurance coverage under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679, for the May 29, 2022 accident;

m.  The Defendant, S.A., a minor, is excluded from any insurance coverage under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679, for the May 29, 2022 accident;

n.  There is no insurance coverage for the motor vehicle accident which occurred on May 29, 2022, under the policy of insurance issued by Plaintiff, DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679;

o.  There is no personal injury protection ("PIP") benefits for the accident which occurred on May 29, 2022, under the policy of insurance issued by Plaintiff, DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679;

p.  There is no property damage liability insurance coverage for the accident which occurred on May 29, 2022, under the policy of insurance issued by Plaintiff, DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679;

q.  The DIRECT GENERAL INSURANCE COMPANY Policy of Insurance, bearing policy # XXXXXX9679, is rescinded and is void ab initio.

**Count II – Declaratory Relief**
**Material Misrepresentation- Rescission**
**As Per Insurance Policy**

81.     The Plaintiff, DIRECT GENERAL INSURANCE COMPANY, incorporates by reference paragraphs 1 through 46, as if fully alleged herein.

82.     Pursuant to the policy of insurance issued to JOSEPH BEECHER ALCE, DIRECT GENERAL INSURANCE COMPANY may void the insurance policy as follows:

**MISREPRESENTATION AND FRAUD**

A.  This Policy was issued in reliance on the information provided on **your** written or verbal insurance application. **We** reserve the right, at **our** sole discretion, to void or rescind this Policy if **you** or a **relative**:

1. Made any false statements or representations to **us** with respect to any material fact or circumstance; or

2. Concealed, omitted, or misrepresented any material fact or circumstance or engaged in any fraudulent conduct;

in any application for this insurance or when renewing this Policy. **We** will not be liable and will deny coverage for any **accident**, **loss** or claim occurring thereafter.

A fact or circumstance will be deemed material if **we** would not have:

1. Written this Policy;
2. Agreed to insure the risk assumed; or
3. Assumed the risk at the premium charged.

This includes, but is not limited to, failing to disclose in a verbal or written application all person residing in your household or regular operators of a covered auto.

See page 27 of Exhibit "B".

83.　Pursuant to the insurance policy, DIRECT GENERAL INSURANCE COMPANY may void the policy based on material misrepresentation or fraud.

84.　Therefore, at this time, there exists a bona fide dispute with the Defendants regarding whether Defendants, JOSEPH BEECHER ALCE, DESTINY ALCE, JEANETTE JACQUES, J.A., a minor, and S.A., a minor, are covered under the policy of insurance; and therefore, entitled to the coverages provided by the policy of insurance.

85.　Notwithstanding the subject policy rescission, the Plaintiff asserts that claims have been made seeking benefits under the subject policy or the insured has sought a defense or indemnification from DIRECT GENERAL INSURANCE COMPANY.  Therefore, there is a dispute with the Defendants herein as to the legal ramifications regarding the subject policy rescission.

86.　The insured Defendant, JOSEPH BEECHER ALCE has or will demand to be defended or to be indemnified under the policy of insurance for claims and injuries sustained in the May 29, 2022 motor vehicle accident under policy # XXXXXX9679.  Therefore, to avoid

occurring unnecessary and excessive attorneys' fees and costs in providing a defense or indemnification where there was a material misrepresentation as described herein, the Plaintiff asks for the Court to declare the rights and obligations of the parties.

87.    The Defendant, DESTINY ALCE has or will demand to be defended or to be indemnified under the policy of insurance for claims and injuries sustained in the May 29, 2022 motor vehicle accident under policy # XXXXXX9679.  Therefore, to avoid occurring unnecessary and excessive attorneys' fees and costs in providing a defense or indemnification where there was a material misrepresentation as described herein, the Plaintiff asks for the Court to declare the rights and obligations of the parties.

88.    The Defendant, Joseph Beecher, is currently challenging the rescission individually and on behalf of three separate classes, "PIP and PD Only Class," "Online Class," and "Prior Knowledge Class," in the filing of Counter-Plaintiffs' Class Action Complaint wherein he is requesting a judgment that he is entitled to insurance coverage from Plaintiff.

89.    The Defendant, Destiny Alce, is currently challenging the rescission individually and on behalf of three separate classes, "PIP and PD Only Class," "Online Class," and "Prior Knowledge Class," in the filing of of Counter-Plaintiffs' Class Action Complaint wherein she is requesting a judgment that she is entitled to insurance coverage from Plaintiff.

90.    The Defendant, Jeanette Jacques, is currently challenging the rescission individually and on behalf of three separate classes, "PIP and PD Only Class," "Online Class," and "Prior Knowledge Class," in the filing of Counter-Plaintiffs' Class Action Complaint wherein she is requesting a judgment that she is entitled to insurance coverage from Plaintiff.

91.    The Defendant, J.A., a minor, is currently challenging the rescission individually and on behalf of three separate classes, "PIP and PD Only Class," "Online Class," and "Prior Knowledge Class," in the filing of Counter-Plaintiffs' Class Action Complaint wherein he is

requesting a judgment that hhe is entitled to insurance coverage from Plaintiff. See **Exhibit F**.

92.     The Defendant, S.A., a minor, is currently challenging the rescission individually and on behalf of three separate classes, "PIP and PD Only Class," "Online Class," and "Prior Knowledge Class," in the filing of Counter-Plaintiffs' Class Action Complaint wherein she is requesting a judgment that she is entitled to insurance coverage from Plaintiff. See **Exhibit F**.

93.     Based on the rescission of the subject insurance policy, there is no insurance coverage for the named insured, JOSEPH BEECHER ALCE for any property damage liability insurance coverage, under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679. See **Exhibit F**.

94.     Based on the rescission of the subject insurance policy, there is no insurance coverage for the Defendant, DESTINY ALCE for any property damage liability insurance coverage or personal injury protection benefits, under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679. See **Exhibit F**.

95.     Based on the rescission of the subject insurance policy, there is no insurance coverage for the Defendant, JEANETTE JACQUES for any personal injury protection benefits, under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679.

96.     Based on the rescission of the subject insurance policy, there is no insurance coverage for the Defendant, J.A., a minor for any personal injury protection benefits, under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679.

97.     Based on the rescission of the subject insurance policy, there is no insurance coverage for the Defendant, S.A., a minor for any personal injury protection benefits, under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679.

98.     Based on the rescission of the subject insurance policy, the Plaintiff, DIRECT GENERAL INSURANCE COMPANY, has no duty to defend and/or indemnify the insured, JOSEPH BEECHER ALCE, for any claims made under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679.

99.     Based on the rescission of the subject insurance policy, the Plaintiff, DIRECT GENERAL INSURANCE COMPANY, has no duty to defend and/or indemnify the Defendant, DESTINY ALCE, for any claims made under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679.

100.     Based on the rescission of the subject insurance policy, the Defendant, JOSEPH BEECHER ALCE, is excluded from any insurance coverage under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679, for the May 29, 2022 accident.

101.     Based on the rescission of the subject insurance policy, the Defendant, DESTINY ALCE, is excluded from any insurance coverage under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679, for the May 29, 2022 accident.

102.     Based on the rescission of the subject insurance policy, the Defendant, JEANETTE JACQUES, is excluded from any insurance coverage under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679, for the May 29, 2022 accident.

103.    Based on the rescission of the subject insurance policy, the Defendant, J.A., a minor, is excluded from any insurance coverage under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679, for the May 29, 2022 accident.

104.    Based on the rescission of the subject insurance policy, the Defendant, S.A., a minor, is excluded from any insurance coverage under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679, for the May 29, 2022 accident.

105.    Based on the rescission of the subject insurance policy, there is no insurance coverage for the motor vehicle accident which occurred on May 29, 2022, under the policy of insurance issued by Plaintiff, DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679.

106.    Based on the rescission of the subject insurance policy, there is no personal injury protection ("PIP") benefits for the accident which occurred on May 29, 2022, under the policy of insurance issued by Plaintiff, DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679.

107.    Based on the rescission of the subject insurance policy, there is no property damage liability insurance coverage for the accident which occurred on May 29, 2022, under the policy of insurance issued by Plaintiff, DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679.

108.    The DIRECT GENERAL INSURANCE COMPANY Policy of Insurance, bearing policy # XXXXXX9679, is rescinded and is void ab initio.

109.    Florida Statute § 86.21 states in pertinent part:

> Any person claiming to be interested or who may be in doubt about his or her rights under a deed, will, contract, or other article, memorandum, or instrument in writing or whose rights, status, or other equitable or

legal relations are affected by a statute, or any regulation made under statutory authority, or by municipal ordinance, contract, deed, will, franchise, or other article, memorandum, or instrument in writing may have determined any question of construction or validity arising under such statute, regulation, municipal ordinance, contract, deed, will, franchise, or other article, memorandum, or instrument in writing, or any part thereof, and obtain a declaration of rights, status, or other equitable or legal relations thereunder.

110.    Chapter 86, Florida Statutes, explains that the purpose of a declaratory judgment "is to settle and to afford relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations and is to be liberally administered and construed." Fla. Stat. § 86.101 (2007).  There is almost no limit to the number and types of cases that may be heard under Chapter 86, if the following requirements are met: (1) there is a bona fide, actual, present need for the declaration; (2) the declaration deals with a present or ascertainable controversy; (3) there is a person who has or reasonably may have an actual, present, adverse interest in the subject matter; and (4) the relief sought is not merely the giving of legal advice by the court.  May v. Holley, 59 So. 2d 636, 639 (Fla. 1952).

111.    "When a party seeks declaratory judgment as to coverage under an insurance policy, it is functionally seeking the court's construction as to the rights and liabilities of the parties under a contract."  State Farm Mut. Auto. Ins. Co. v. Hinestrosa, 614 So. 2d 633, 635 (Fla. 4th DCA 1993) (trial court erred in dismissing insurance company's pleading seeking declaratory judgment because even if coverage did exist contrary to the insurance company's position, it was still entitled to a declaration by judgment on the coverage issue); see N.H. Indem. Ins. Co. v. Zaniboni, 13 Fla. L. Weekly Supp. 573a (Fla. 18th Cir. Ct. Nov. 18, 2005) (rejecting insurance company's argument that demand letter was required for declaratory relief action).

112.    An insurer's duty to defend depends solely on the allegations of the complaint against the insured.  See Lawyers Title Ins. Corp. v. JDC (America) Corp., 52 F.3d 1575,

1580 (11th Cir. 1995).  See also *Philadelphia Indemn. Ins. Co. v. Yachtman's Inn Condo. Ass'n, Inc.*, 595 F. Supp. 2d 1319, 1322 (S.D. Fla. 2009) ("When a Florida court makes a determination as to whether an insurer's duty to defend the insured exists, it must look to the allegations contained within the four corners of the complaint in the underlying action against the insured.").  "The duty to defend is broader than the duty to indemnify, and thus, where the insurer has no duty to defend, it necessarily has no duty to indemnify."  *Nova Cas. Co. v. Wasterstein*, 424 F. Supp. 2s 1325, 1332 (S.D. Fla. 2006).

113.    Based upon this dispute, the Plaintiff, DIRECT GENERAL INSURANCE COMPANY, seeks a declaration of its rights and obligations under the statute with respect to the misrepresentations made by JOSEPH BEECHER ALCE on the application for insurance.

114.    There exists an actual and present need for a declaration of rights under the policy of insurance and the personal injury damages and/or property damage liability damages alleged.

WHEREFORE, the Plaintiff, DIRECT GENERAL INSURANCE COMPANY, requests that this Honorable Court rule that:

a.   The Defendant, JOSEPH BEECHER ALCE, failed to disclose that an additional resident over the age of 15 lived within his household at the time of the application for insurance, which occurred prior to the assignment of any benefits under the policy of insurance, bearing policy # XXXXXX9679, issued by DIRECT GENERAL INSURANCE COMPANY;

b.   There is no insurance coverage for the named insured, JOSEPH BEECHER ALCE for any property damage liability insurance coverage, under the policy of insurance issued by DIRECT

GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679;

c. There is no insurance coverage for the Defendant, DESTINY ALCE for any property damage liability insurance coverage or personal injury protection benefits, under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679;

d. There is no insurance coverage for the Defendant, JEANETTE JACQUES for any personal injury protection benefits, under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679;

e. There is no insurance coverage for the Defendant, J.A., a minor for any personal injury protection benefits, under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679;

f. There is no insurance coverage for the Defendant, S.A., a minor for any personal injury protection benefits, under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679;

g. The Plaintiff, DIRECT GENERAL INSURANCE COMPANY, has no duty to defend and/or indemnify the insured, JOSEPH BEECHER ALCE, for any claims made under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679;

h.  The Plaintiff, DIRECT GENERAL INSURANCE COMPANY, has no duty to defend and/or indemnify the Defendant, DESTINY ALCE, for any claims made under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679;

i.  The Defendant, JOSEPH BEECHER ALCE, is excluded from any insurance coverage under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679, for the May 29, 2022 accident;

j.  The Defendant, DESTINY ALCE, is excluded from any insurance coverage under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679, for the May 29, 2022 accident;

k.  The Defendant, JEANETTE JACQUES, is excluded from any insurance coverage under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679, for the May 29, 2022 accident;

l.  The Defendant, J.A., a minor, is excluded from any insurance coverage under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679, for the May 29, 2022 accident;

m.  The Defendant, S.A., a minor, is excluded from any insurance coverage under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679, for the May 29, 2022 accident;

n.  There is no insurance coverage for the motor vehicle accident which occurred on May 29, 2022, under the policy of insurance issued by Plaintiff, DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679;

o.  There is no personal injury protection ("PIP") benefits for the accident which occurred on May 29, 2022, under the policy of insurance issued by Plaintiff, DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679;

p.  There is no property damage liability insurance coverage for the accident which occurred on May 29, 2022, under the policy of insurance issued by Plaintiff, DIRECT GENERAL INSURANCE COMPANY, bearing policy # XXXXXX9679;

q.  The DIRECT GENERAL INSURANCE COMPANY Policy of Insurance, bearing policy # XXXXXX9679, is rescinded and is void ab initio.

**Count III – Alternative Count**
**Declaratory Relief and/or Equitable Relief – Repayment of Insurance Premium Refund**
**As Per Insurance Policy**

115.    The Plaintiff, DIRECT GENERAL INSURANCE COMPANY, incorporates by reference paragraphs 1 through 46, as if fully alleged herein.

116.    The Plaintiff, DIRECT GENERAL INSURANCE COMPANY, pleads this count in the alternative should the Court find that the subject insurance policy provides coverage.

117.    Pursuant to Fla. R. Civ. P. 1.110(b)(3), "[r]elief in the alternative or of several different types may be demanded."

118.    Pursuant to Fla. R. Civ. P. 1.110(b)(3), should the Court find that the subject insurance policy provides coverage, then JOSEPH BEECHER ALCE is subject to the terms and conditions therein.

119.    Specifically, pursuant to the policy of insurance issued to JOSEPH BEECHER ALCE, it states in pertinent part as follows:

> **AGREEMENT**
>
> **We agree to provide this insurance, subject to the terms, conditions, and limitations set forth in this Policy, if you have paid, when due, all of the premiums for the coverages you have chosen.**
>
> **We will only insure you for the coverages and the Limits of Liability for which a premium is shown on the Declarations Page of this policy.**

*See* page 1 of **Exhibit "B"**.

120.    Here, prior to the policy rescission, the premiums paid total $1,420.97 for policy period of January 1, 2022 through January 1, 2023. (See **Exhibit "E"**).

121.    On or about August 31, 2022, DIRECT GENERAL INSURANCE COMPANY has issued a refund of insurance premiums paid by JOSEPH BEECHER ALCE in the amount of $1,420.97 for policy period January 1, 2022 through January 1, 2023. (See **Exhibit "E"**).

122.    JOSEPH BEECHER ALCE cashed the premium refund check in the amount of $1,420.97. (See **Exhibit "E"**).

123.    As a result, if the Court finds that the subject insurance policy provides coverage, then JOSEPH BEECHER ALCE should be required to reimburse DIRECT GENERAL INSURANCE COMPANY the amount of the premium refund prior to any coverage being afforded under the subject policy.

124.    Therefore, should the Court find that the subject insurance policy provides coverage, DIRECT GENERAL INSURANCE COMPANY is entitled to reimbursement of the refunded insurance premium paid to the insured, JOSEPH BEECHER ALCE, in the amount of $1,420.97. (See **Exhibit "E"**).

125.    Nonetheless, at this time, there exists a bona fide dispute with the Defendants regarding whether there is coverage under the policy of insurance; and therefore, whether they are entitled to the coverages provided by the policy of insurance until such time that JOSEPH BEECHER ALCE reimburses the refunded insurance premium to DIRECT GENERAL INSURANCE COMPANY in the amount of $1,420.97.

126.    Therefore, there exists a present, ascertained or ascertainable set of facts or present controversy as to a state of facts concerning the rights and obligations of DIRECT GENERAL INSURANCE COMPANY and JOSEPH BEECHER ALCE under the subject insurance policy.

127.    DIRECT GENERAL INSURANCE COMPANY and JOSEPH BEECHER ALCE have an actual, present, adverse and antagonistic interest in the subject matter described herein. All proper and present and antagonistic interests are before the court by proper process.

128.    Therefore, should the Court find that the subject insurance policy provides coverage, DIRECT GENERAL INSURANCE COMPANY is in doubt and seeks a declaration of its rights and obligations with respect to whether it is entitled to reimbursement of the refunded insurance premium paid to the insured, JOSEPH BEECHER ALCE, in the amount of $1,420.97, pursuant to the terms and conditions under the subject policy. DIRECT GENERAL INSURANCE COMPANY is not seeking legal advice or an advisory opinion.

129.    Florida Statute § 86.21 states in pertinent part:

> Any person claiming to be interested or who may be in doubt about his or her rights under a deed, will, contract, or other article, memorandum, or instrument in writing or whose rights, status, or other equitable or legal relations are affected by a statute, or any regulation made under statutory authority, or by municipal ordinance, contract, deed, will, franchise, or other article, memorandum, or instrument in writing may have determined any question of construction or validity arising under such statute, regulation, municipal ordinance, contract, deed, will, franchise, or other article, memorandum, or instrument in writing, or any part thereof, and obtain a declaration of rights, status, or other equitable or legal relations thereunder.

130.    Chapter 86, Florida Statutes, explains that the purpose of a declaratory judgment "is to settle and to afford relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations and is to be liberally administered and construed." Fla. Stat. § 86.101 (2007).  There is almost no limit to the number and types of cases that may be heard under Chapter 86, if the following requirements are met: (1) there is a bona fide, actual, present need for the declaration; (2) the declaration deals with a present or ascertainable controversy; (3) there is a person who has or reasonably may have an actual, present, adverse interest in the subject matter; and (4) the relief sought is not merely the giving of legal advice by the court.  May v. Holley, 59 So. 2d 636, 639 (Fla. 1952).

131.    Moreover, pursuant to long-standing principles of equity jurisprudence, "the equitable maxim that no wrong shall be without a remedy." *See DeWitt v. Duce*, 408 So.2d 216, 219 (Fla. 1981); *Slavin v. Kay*, 108 So.2d 462, 467 (Fla. 1958) (stating "[t]o hold otherwise would result necessarily in the anomaly of fault without liability and wrong without a remedy"); *First State Bank of Clermont v. Fitch*, 141 So.299, 301 (1932); *Palm Beach County v. Town of Palm Beach*, 507 So.2d 1154, 1157 (Fla. 4th DCA 1987); *Farrington v. Flood*, 40 So.2d 462, 465 (Fla. 1949) ("equity will not permit a wrong to go without a remedy"); *Connell v. Mittendorf*, 147 So.2d 169, 172 (Fla. 2d DCA 1962) ("Equity will not suffer a wrong to be without a remedy."); and *Ret. Board of City of Coral Gables v. Piñon*, 992 So.2d 357, 359 (Fla. 3d DCA 2008) ("equity will not suffer a wrong to be without a remedy").

132.    In addition, these equitable maxims form the basis of the access-to-courts provision enshrined in Florida's Constitution. *See Farrington*, 40 So.2d at 465–66; and *State ex rel. Watkins v. Fernandez*, 143 So.638, 641 (Fla. 1932).

133.    Specifically, under Florida's Constitution, "[t]he courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay." *See* Art. I, §21, Fla. Const.

134.    Here, DIRECT GENERAL INSURANCE COMPANY, has conferred a benefit on JOSEPH BEECHER ALCE, who voluntary accepted and retained the benefit conferred by cashing the premium refund check in the amount of $1,420.97. (See **Exhibit "E"**).

135.    Therefore, should the Court find that the subject insurance policy provides coverage, the circumstances render JOSEPH BEECHER ALCE's retention of the benefit conferred by cashing the premium refund check in the amount of $1,420.97 inequitable unless JOSEPH BEECHER ALCE reimburses $1,420.97 to DIRECT GENERAL INSURANCE COMPANY.

WHEREFORE, the Plaintiff, DIRECT GENERAL INSURANCE COMPANY, requests that this Honorable Court declare that:

a. Should the Court find that the subject insurance policy provides coverage, then JOSEPH BEECHER ALCE is subject to the terms and conditions under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # FLADXXXXX9679;

b. Specifically, pursuant to the policy of insurance issued to JOSEPH BEECHER ALCE, bearing policy # FLADXXXXX9679, it states in pertinent part as follows:

   **AGREEMENT**

   **We agree to provide this insurance, subject to the terms, conditions, and limitations set forth in this Policy, if you have paid, when due, all of the premiums for the coverages you have chosen.**

   **We will only insure you for the coverages and the Limits of Liability for which a premium is shown on the Declarations Page of this policy.**

c. Prior to the policy rescission, the premiums paid for policy January 1, 2022 through January 1, 2023 total $1,420.97, under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # FLADXXXXX9679;

d.  DIRECT GENERAL INSURANCE COMPANY has issued a refund of insurance premiums paid by JOSEPH BEECHER ALCE in the amount of $1,420.97 for policy period January 1, 2022 through January 1, 2023, under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # FLADXXXXX9679;

e.  JOSEPH BEECHER ALCE cashed the premium refund check in the amount of $1,420.97, under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # FLADXXXXX9679;

f.  Should the Court find that the subject insurance policy provides coverage, DIRECT GENERAL INSURANCE COMPANY is entitled to reimbursement of the refunded insurance premium paid to the insured, JOSEPH BEECHER ALCE, in the amount of $1,420.97, under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # FLADXXXXX9679;

g.  Should the Court find that the subject insurance policy provides coverage, JOSEPH BEECHER ALCE and all other Defendants are not entitled to the coverages provided by the policy of insurance until such time that JOSEPH BEECHER ALCE reimburses the refunded insurance premium to DIRECT GENERAL INSURANCE COMPANY in the amount of $1,420.97, under the policy of insurance issued by DIRECT GENERAL INSURANCE COMPANY, bearing policy # FLADXXXXX9679.

WHEREFORE, the Plaintiff, DIRECT GENERAL INSURANCE COMPANY, sues the

Defendant, JOSEPH BEECHER ALCE, for the recovery of the insurance benefits previously

paid during the policy term as set forth above, plus costs, interest, and attorney's fees.

Dated this 14th day of April, 2023.

McFARLANE LAW
Attorneys for Plaintiff
210 N. University Drive, 6th Floor
Coral Springs, Florida 33071
(954) 340-0005 Telephone
(954) 340-0055 Facsimile
PLEADING SERVICE E-MAIL ADDRESS:
pleadingservice@mcfarlanedolanlaw.com

By:  /s/ WILLIAM J. McFARLANE, Esquire
        WILLIAM J. McFARLANE, ESQUIRE
        Florida Bar No: 768601



PO Box 3199 ● Winston Salem, NC 27102-3199

| | |
|---|---|
| Policy Number: | Date of Notice |
| **2014019679** | **01/01/2022 06:02 PM** |
| Named Insured: | |
| **JOSEPH BEECHER ALCE** | |

JOSEPH BEECHER ALCE
HOUSE
5474 GROVE CROSSING BLVD
ORLANDO, FL 32839

Policy Period:
**01/01/2022 - 01/01/2023 12:01 AM Standard Time**
Policy Underwritten by:

**Direct General Insurance Company**

**24 Hour Claim Reporting: 800-403-1077**
**For Policy Information: 877-463-4732**
**www.DirectAuto.com**

# FL PERSONAL AUTO DECLARATIONS PAGE

New Business Effective **01/01/2022 06:02 PM**

## Drivers and Household Residents

**#1    Joseph Beecher Alce**

| Driver Status | License # | Lic. State | Date of Birth | Gender | Marital Status | Driver Pts | Yrs. Lic. |
|---|---|---|---|---|---|---|---|
| Rated Driver | XXXXXXXXX3401 | FL | ~~REDACTED~~ | Male | Single | 8 | 32 |

## Policy Level Coverage(s)

| Coverages Provided | Limits/Deductibles | Premium |
|---|---|---|
| Accidental Death | $5,000 Named Insured Only | $20.00 |

## Insured Personal Auto(s) and Schedule of Coverages

**#1 2013 LNDR LR4 HSE**                    VIN: SALAG2D43DA683068-B7A5A4
**Usage:** Pleasure/Commute
**Garaging Location:** 32839

| Coverages Provided | Limits/Deductibles | Premium |
|---|---|---|
| Property Damage | $10,000 Each Accident | $628.00 |
| Personal Injury Protection | $10,000 , $1,000 Deductible Per Occurrence - Named Insured and Resident Relatives, Exclusion of Work Loss Benefit - Named Insured and Resident Relatives | $1,117.00 |
| | **Total For This Vehicle** | **$1,745.00** |

## Premium and Fee Totals

| | | |
|---|---|---|
| | **Combined Policy Level Coverage Premium** | $20.00 |
| | **Combined Vehicle Coverage Premium** | $1,745.00 |
| | Installment Underwriting Fee | $10.00 |
| | Agency MVR Fee | $8.00 |
| | MGA Policy Fee | $25.00 |
| | **Total 12 Month Policy Premium** | **$1,808.00** |

10039FL (07012019)

Page 1 of 2

Exhibit "A"

## Discounts Applied

**Policy Level**

Accident Free Claims Free
Homeowner Discount
Paperless Discount

**Vehicle Level**

| #1 | Airbag Discount |
| #1 | Anti-lock Brakes Discount |

## Important Notice

Online Policy Documents: Your policy form and coverage endorsements may be viewed by going to our website: www.DirectAuto.com. Click on the Policy Documents link at the top and enter your Policy Number and Last Name.

## Additional Policy Information

| Insured email: | BEECHER.ALCE@GMAIL.COM |
| Tier: | 0 |

## Disclosure of Possible Additional Charges

The amounts below are authorized for use in this state. However, they are only charged if they apply to your policy.

| FR Filing Charge | $15.00 |
| Late Charge | $10.00 |
| Nonsufficient Funds Charge | $15.00 |
| Reinstatement Charge | $10.00 |

## Forms and Endorsements

| Form | Edition | Form Name |
| --- | --- | --- |
| 12448 | 07012019 | PERSONAL INJURY PROTECTION COVERAGE - FLORIDA |
| 12683 | 05012020 | ACCIDENTAL DEATH BENEFIT COVERAGE |
| 12352 | 07012019 | FLORIDA PERSONAL AUTO POLICY |

**Authorized Signature**

**Direct General Insurance Company**

This Endorsement Applies Only If
Form Number 12448 (07012019) Appears in the Declarations.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**PERSONAL INJURY PROTECTION COVERAGE – FLORIDA**

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

**ADDITIONAL DEFINITIONS**

The following definitions, when used in this Endorsement only, apply as follows, whether in the singular, plural or possessive. Except for the changes made, all other definitions in your policy are the same and apply to this Endorsement.

1. "**Bodily injury**" means bodily harm; sickness; or disease, including death resulting therefrom.

2. "**Death benefits**" means the **PIP** death benefits to be paid by **us** if an **insured** dies due to **bodily injury** covered under this Endorsement.

3. "**Emergency medical condition**" means a medical condition which manifests itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:

   a. Serious jeopardy to patient health;

   b. Serious impairment to bodily functions; or

   c. Serious dysfunction of any bodily organ or part.

4. "**Follow-up services and care**" means **medically necessary** follow-up services and care upon a referral by a provider described under **initial services and care**, which services and care are consistent with the underlying medical diagnosis rendered in accordance with **initial services and care**, which may be provided, supervised, ordered, or prescribed only by:

   a. A physician licensed under Chapter 458, Florida Statutes or Chapter 459, Florida Statutes;

   b. A chiropractic physician licensed under Chapter 460, Florida Statutes;

   c. A dentist licensed under Florida Chapter 466, Florida Statutes;

   d. To the extent permitted by applicable Florida law, and under the supervision of a physician, osteopathic physician, chiropractic physician, or dentist, by:

      (1) A physician assistant licensed under Chapter 458, Florida Statutes or Chapter 459, Florida Statutes; or

      (2) An advanced registered nurse practitioner licensed under Chapter 464, Florida Statutes.

"**Follow up services and care**" may also be provided:

   a. By a hospital or ambulatory surgical center licensed under Chapter 395, Florida Statutes;

   b. By an entity wholly owned by one or more physicians licensed under Chapter 458, Florida Statutes or Chapter 459, Florida Statutes chiropractic physicians licensed under Chapter 460, Florida Statutes, or dentists licensed under Chapter 466, Florida Statutes; or by such practitioners and the spouse, parent, child, or sibling of such practitioners;

   c. By an entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals;

   d. Upon referral from a provider described in i) through iii) above, a physical therapist licensed under Chapter 486, Florida Statutes;

   e. By a health care clinic licensed under part X of Chapter 400, Florida Statutes which is accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission on Accreditation of Rehabilitation Facilities, or the Accreditation Association for Ambulatory Health Care, Inc., or:

      1. Has a medical director licensed under Chapters 458, 459, or 460, Florida Statutes;

      2. Has been continuously licensed for more than 3 years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

      3. Provides at least four of the following medical specialties:

         i) General medicine;

         ii) Radiography;

         iii) Orthopedic medicine;

         iv) Physical medicine;

         v) Physical therapy;

         vi) Physical rehabilitation;

         vii) Prescribing or dispensing outpatient prescription medication; or

         viii) Laboratory services.

Exhibit "B"

5. "**Initial services and care**" means **medically necessary** services and care lawfully rendered, supervised, ordered, or prescribed by a physician licensed under Chapter 458, Florida Statutes or Chapter 459, Florida Statutes, a dentist licensed under Chapter 466, Florida Statutes, or a chiropractic physician licensed under Chapter 460, Florida Statutes or that are provided in a hospital or facility that owns, or is wholly owned by, a hospital. "**Initial services and care**" may also be provided by a person or entity licensed under Part III of Chapter 401, Florida Statutes that provides emergency transportation and treatment.

6. "**Insured**" means:

   a. The **named insured** or any **relative** while:

      (1) **Occupying** a **motor vehicle**; or

      (2) A **pedestrian** struck by a **motor vehicle**.

   b. Any other person while:

      (1) **Occupying your insured motor vehicle**; or

      (2) A **pedestrian**, if a resident of Florida, who is struck by **your insured motor vehicle**.

   However, the term **insured** shall not include:

   a. Any person, other than the **named insured**, if such person is the **owner** of a **motor vehicle** for which security is required under the **No-Fault Law**; or

   b. Any person, other than the **named insured** or **relative**, who is entitled to **PIP** benefits from the **owner** of a **motor vehicle** that is not an **insured motor vehicle** under this policy or from the **owner's** insurer.

7. "**Insured Motor Vehicle**" means a **motor vehicle** owned by **you** and for which:

   a. Security is required to be maintained under the **No-Fault Law**; and

   b. A specific premium is charged and paid to **us**.

   Insured motor vehicle includes a trailer or semitrailer designed for use with a **motor vehicle**.

8. "**Medical expenses**" means reasonable expenses for **medically necessary** medical, surgical, x-ray, dental and rehabilitative services, including prosthetic devices and **medically necessary** ambulance, hospital and nursing services if the **insured** receives **initial services and care** within fourteen (14) days after a **motor vehicle accident**. Reimbursement for **medical expenses** are only for **initial services and care** or **follow-up services and care** and for which reimbursement shall be limited to and shall not exceed the **PIP Fee Schedule**.

   However, notwithstanding the foregoing:

   a. If the **No-Fault Law** requires a person, entity or facility providing medical services, supplies or care to be licensed under Florida law in order to receive reimbursement under the **No-Fault Law**, such license is required for payment under this **PIP** coverage;

   b. "**Medical expenses**" do not include, and **we** will not pay for, massage as defined in § 480.033, Florida Statutes, or acupuncture as defined in § 457.102, Florida Statutes, regardless of the person, entity, or licensee providing massage or acupuncture; and

   c. If the **No-Fault Law** provides that any type of care or care provider is or may be excluded from **PIP** coverage, at such time as that law is in effect this **PIP** coverage shall no longer provide benefits for that type of care or care provider.

9. "**Medically necessary**" means a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is:

   a. In accordance with generally accepted standards of medical practice;

   b. Clinically appropriate in terms of type, frequency, extent, site and duration; and

   c. Not primarily for the convenience of the patient, physician, or other health care provider.

10. "**Motor Vehicle**" which is of a type both designed and required to be licensed for use on the highways of this state and any trailer or semitrailer designed for use with such vehicle and includes:

    a. A private passenger motor vehicle, which is any motor vehicle which is a sedan, station wagon, or jeep-type vehicle and, if not used primarily for occupational, professional, or business purposes, a motor vehicle of the pickup, panel, van, camper, or motor home type.

    b. A commercial motor vehicle, which is any motor vehicle which is not a private passenger motor vehicle.

    The term "motor vehicle" does not include a mobile home or any motor vehicle which is used in mass transit, other than public school transportation, and designed to transport more than five passengers exclusive of the operator of the motor vehicle and which is owned by a municipality, a transit authority, or a political subdivision of the state.

11. "**Named Insured**" means the person or persons identified as the "Named Insured" on the **Declarations Page** of **your** policy. If the **Declarations Page** lists an individual, then "**named insured**" shall also include that person's spouse if the spouse is a resident of the same household.

12. "**No-Fault Law**" means the Florida Motor Vehicle No-Fault Law in effect at the time **your** policy is issued and delivered or at the time **your** policy renews, whichever is later.

13. "**Owner**" means a person or organization who holds the legal title to a **motor vehicle**, and also includes:

   a. A debtor having the right to possession, in the event a **motor vehicle**, is the subject of a security agreement; and

   b. A lessee having the right to possession in the event a **motor vehicle** is the subject of a lease that has an option to purchase and is for a period of six months or more; and

   c. A lessee having the right to possession in the event a **motor vehicle** is the subject of a lease that does not have an option to purchase; is for a period of six months or more; and requires the lessee to secure insurance.

14. "**Pedestrian**" means a person while not an occupant of a self-propelled vehicle.

15. "**PIP**" means personal injury protection under the **No-Fault Law**.

16. "**PIP Fee Schedule**" means 80% of the following schedule of maximum charges for **medical expenses** as set forth in § 627.736(5)(a)1, Florida Statutes:

   a. For emergency transport and treatment by providers licensed under Florida Statutes, Title 29, Chapter 401, 200 percent of Medicare.

   b. For emergency services and care provided by a hospital licensed under Chapter 395, Florida Statutes, 75 percent of the hospital's usual and customary charges.

   c. For emergency services and care as defined by Florida Statutes, Title 29, § 395.002 provided in a facility licensed under Chapter 395 rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

   d. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

   e. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

   f. For all other medical services, supplies, and care, 200 percent of the allowable amount under the participating physicians' fee schedule of Medicare Part B except as provided below:

      (1) Medicare Part B in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.

      (2) The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

However, if such services, supplies, or care are not reimbursable under Medicare Part B as provided above, **we** will limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under Florida Statutes Title 31, § 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care are provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation is not required to be reimbursed by **us**.

For purposes of § 627.736(5)(a)1, Florida Statutes, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies, or care is rendered and for the area in which such services, supplies or care is rendered. The applicable fee schedule or payment limitation applies to services, supplies, or care rendered during that service year, notwithstanding any subsequent change made to the fee schedule or payment limitation. However, the applicable fee schedule or payment limitation will not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B. For purposes of this subparagraph, the term "service year" means the period from March 1 through the end of February of the following year.

**We** will use the Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers, to determine the appropriate amount of reimbursement for medical services, supplies, or care, if the coding policy or payment methodology does not constitute a utilization limit.

If a provider submits a charge for an amount less than the amount determined by the fee schedule or other limitations established by § 627.736, Florida Statutes, or any other provisions of the **No-Fault Law**, **we** will pay 80 percent of the amount of the charge that was submitted.

17. "**Relative**" means a person related to **you** by blood; marriage; or adoption (including a ward or foster child) residing in the same household as the **named insured**.

18. "**Replacement services expenses**" means with respect to the period of disability of the **insured**, the reasonable expenses incurred in obtaining from others ordinary and necessary services in lieu of those that, but for the **bodily injury**, the **insured** would have performed without income for the benefit of his household. However, **replacement services expenses** do not include any loss after the death of an **insured**.

19. "**Work loss**" means with respect to the period of disability of the **insured**, any loss of gross income and earning capacity from inability to work that is proximately caused by the **bodily injury** sustained by the **insured**. However, **work loss** does not include any loss after the death of an insured.

## INSURING AGREEMENT

Subject to the limits shown on **your Declarations Page**, **we** agree with **you** as follows:

1. If an **insured** receives **initial services and care** within 14 days after a **motor vehicle accident**, after the deductibles on **your** policy are met, **we** will pay **PIP** benefits, as defined and limited in this Endorsement, to or for the benefit of an **insured** who sustains **bodily injury**. The **insured's bodily injury** must be caused by an **accident** arising out of the ownership; maintenance; or use of a **motor vehicle**. Subject to the limits shown on the **Declarations Page**, **PIP** benefits are:

    a. 80% of reasonable and necessary **medical expenses**, subject to the limit specified in the **PIP Fee Schedule**;

    b. 60% of **work loss**;

    c. 100% of **replacement services expenses** incurred as a result of **bodily injury** covered by this Endorsement; and

    d. The $5,000 **death benefit** required under the **No Fault Law**. **Death benefit** is in addition to **medical expenses**, **work loss** and **replacement services expenses**. **We** will pay the **death benefit** to: the executor or administrator of the deceased, to any of the deceased's relatives by blood, legal adoption, or marriage, or to any person appearing to the insurer to be equitably entitled to such benefits.

## EXCLUSIONS

**We** do not provide **PIP** Coverage:

1. To any person while operating the **insured motor vehicle** without the express or implied consent of the **named insured**.

2. To any person if such person's conduct contributed to his **bodily injury** under any of the following circumstances:

    a. Causing **bodily injury** to himself or herself intentionally; or

    b. While committing a felony.

    Whenever an **insured** is charged with a felony, the 30-day payment provision described in §627.736 (4)(b) shall be held in abeyance, and **we** shall withhold payment of any personal injury protection benefits pending the outcome of the case at the trial level. If the charge is nolle prossed or dismissed or the **insured** is acquitted, the 30-day payment provision shall run from the date **we** are notified of such action.

3. To any person that arises out of the ownership, maintenance, or use of a **insured motor vehicle** while it is being used for **prearranged rides**.

4. To any person who is:

    a. not the **named insured,** if such person is the **owner** of a **motor vehicle** that is required to maintain coverage under the **No-Fault Law**; or

    b. not the **named insured** or a **relative,** who is entitled to **PIP** benefits under the policy of the **owner** of a **motor vehicle** that is not an **insured motor vehicle**.

5. To either the **named insured** or the **named insured** and dependent **relatives** for **work loss** as shown in the **Declarations Page** as excluded.

6. To any person who sustains **bodily injury** while **occupying** a **motor vehicle** located for use as a residence or premises.

7. To the **named insured** or any **relative** while **occupying** a **motor vehicle** owned by the **named insured** and which is not an **insured motor vehicle** under this insurance.

8. To any **pedestrian**, other than the **named insured** or any **relative**, who is not a legal resident of the State of Florida.

## LIMITS OF LIABILITY

1. The limits of liability shown on the **Declarations Page** shall apply to **PIP** as follows:

    a. The applicable limit for emergency or non-emergency **medical expenses**;

    b. **Work loss**; and

    c. **Replacement services expenses**;

    and that limit is the most **we** will pay for **bodily injury** to each **insured** in an **accident**.

    Notwithstanding the clause above:

    a. Reimbursement under this Endorsement for **medical expenses** shall apply up to a limit of $10,000 if a physician licensed under Chapter 458 or Chapter 459, Florida Statutes, dentist licensed under Chapter 466, Florida Statutes, physician assistant licensed under Chapter 458, Florida Statutes or Chapter 459, Florida Statutes or an advanced registered nurse practitioner licensed under Chapter 464, Florida Statutes has determined that the **insured** had an **emergency medical condition**.

    b. Reimbursement under this Endorsement for **medical expenses** is limited to $2,500 if any of the following providers has determined that the **insured** did not have an **emergency medical condition**:

    (1) Any physician licensed under Chapter 458, Florida Statutes or Chapter 459, Florida Statutes,

(2) Any dentist licensed under Chapter 466, Florida Statutes,

(3) Any chiropractic physician licensed under Chapter 460, Florida Statutes,

(4) Any physician assistant licensed under Chapter 458, Florida Statutes or Chapter 459, Florida Statutes,

(5) Any physical therapist licensed under Chapter 486, Florida Statutes,

(6) Any person or entity that is licensed under Part III of Chapter 401, Florida Statutes, related to emergency transportation and treatment, or

(7) Any advanced registered nurse practitioner licensed under Chapter 464, Florida Statutes.

The most we will pay for **medical expenses**, **work loss** and **replacement services** for each **insured** is $10,000.

The most **we** will pay for **death benefits** for each **insured** is the limit for the **PIP death benefit** shown on the **Declarations Page**. **Death benefits** are in addition to the **medical expenses**, **work loss**, and **replacement services expenses** provided under this policy.

2. **We** will not pay more than the limits of liability shown on the **Declarations Page** for each **insured** in any one **accident,** without regard to the number of:

   a. **Insured motor vehicles** under this policy;

   b. Premiums paid or shown on the **Declarations Page**;

   c. Persons insured;

   d. Policies or bonds applicable to the **accident**;

   e. Claims made or **persons** injured;

   f. Vehicles or trailers involved in an **accident**;

   g. Heirs, survivors or wrongful death beneficiaries; or

   h. Lawsuits filed.

   There will be no adding, stacking, or combining of coverage.

3. **Our** payment will not include the amount of any applicable **PIP** deductible, as shown on the **Declarations Page**. The deductible:

   a. Will be applied for **bodily injury** to:

      (1) The **named insured**; and

      (2) Any dependent **relative**;

      as elected by the **named insured**.

   b. **We** will apply the deductible to the total amount of all **medical expenses**, **replacement services expenses**, and **work loss** combined.

For **medical expenses**, the deductible is applied before the application of the **PIP Fee Schedule** and before the 80% limitation of reimbursement. For **work loss**, the deductible is applied before the 60% limitation of reimbursement.

   c. After the deductible is met, the **insured** is eligible to receive up to the aggregate limit available under **PIP**, subject to all other limits, terms, and conditions.

   d. A separate deductible shall apply to each **accident**.

   e. No deductible applies to the **death benefit**.

4. **PIP** benefits are also subject to any other reimbursement limitations, reductions and limiting schedule of charges allowed by or set forth in the **No-Fault Law**, and all related laws and regulations in effect, as amended, including but not limited to Medicare payment methodologies and coding policies.

5. **We** will disallow and refuse to pay for any medical services, supplies, or care that is not reimbursable under Medicare or workers' compensation allowance or is not required to be paid as **PIP** benefits under the **No Fault Law**.

6. With respect to **medical expenses** that are in excess of the maximum reimbursement amounts allowed under the **PIP Fee Schedule** or workers compensation allowance, **we** will refuse to pay for such excess or non-reimbursable portions of the **medical expenses** and contest them.

7. **We** will not pay for part or all of a **medical expense** when the service, supply, or care was not lawfully rendered, supervised, ordered, or prescribed by a medical or health care provider or entity properly licensed in Florida and acting within the scope of that license as required by the **No-Fault Law**.

8. No one is entitled to receive duplicate payments from **us** for the same elements of damages that have been paid by **us** or any other source, which may include:

   a. Any other coverage under this policy;

   b. Any other policy **we** or another insurer issue; or

   c. Workers' compensation or any similar insurance.

9. **PIP** benefits shall be credited by any amounts paid or payable for the same expense or elements of damages under any state workers' compensation law.

10. If **we**, or an affiliate insurer, have issued more than one policy to **you** with coverage for **PIP**, **we** will not pay more than the highest limits of liability that applies to the **insured** under one policy. The limits of liability may not be added, combined, or stacked with similar coverage under any other policy issued by **us** or an affiliate insurer.

11. The maximum limits of liability for **PIP** benefits shown on the **Declarations Page** is the total aggregate limit for **PIP** benefits available to or for each **insured** injured in any one **accident**, from all sources combined, including this policy.

12. If **we** pay only a portion of a claim or reject a claim, **we** will provide an itemized explanation of the partial payment or rejection. If our decision is due to an alleged error in the claim, upon receiving the explanation, the person making the claim, at his or her option and without waiving any other legal remedy for payment, has 15 days to submit a revised claim, which shall be considered a timely submission of written notice of claim.

13. In the event of a dispute between **you** and **us**, or **your** assignee and **us**, upon **your** or **your** assignee's written request, **we** will notify **you** or **your** assignee that **your** PIP limits have been reached within 15 days after those limits have been reached.

## OTHER INSURANCE

1. If there is other applicable **PIP** coverage and **we** make a payment under this endorsement, **we** are entitled to recover from each of the other insurers an equitable pro rata share of the amount paid and expenses incurred in processing the claim.

2. If an "**insured**" sustains "**bodily injury**" while "**occupying**", or being struck by, a "**motor vehicle**" that is rented or leased, the **PIP** coverage provided by the lessor's policy shall be primary unless the rental or lease agreement states, in the manner and point type required by § 627.7263, Florida Statutes, as amended, that another insurer is the primary insurer.

## LEGAL ACTION AGAINST US

No legal action may be brought against **us** until there has been full compliance with all the terms of this policy. In addition, no legal action may be brought against **us**:

1. Until the claim for benefits is overdue; and

2. Until a demand letter is provided to **us** in accordance with the requirements of the **No-Fault Law**; and

3. If **we** have, with respect to the overdue claim specified in the demand letter:

   a. Paid the overdue claim; or

   b. Agreed to pay for future treatment not yet rendered;

   within 30 days from the date of receipt of the demand letter by **us**, in accordance with the requirements of the **No-Fault Law**.

   The demand letter shall be mailed to **us** by U.S. certified mail or registered mail, return receipt requested.

## OUR RIGHT TO RECOVER PAYMENT

If **we** make a payment under this coverage and the person to or for whom payment was made sustained **bodily injury** while:

a. **Occupying**; or

b. A **pedestrian** struck by;

a commercial **motor vehicle**, **we** shall, to the extent of **our** payment, be entitled to reimbursement from the person who owns such vehicle or that person's insurer.

**Our** right of reimbursement does not apply to an owner or registrant of a motor vehicle used as a taxicab as identified in § 627.733(1)(b), Florida Statutes.

## PAYMENT OF BENEFITS

1. Benefits payable under this coverage may be overdue if not paid within 30 days after written notice of the fact of a covered loss and the amount of same have been received by **us** in accordance with the **No-Fault Law**.

2. **We** may, at **our** option, pay any **medical expenses** to the:

   a. **Insured**; or

   b. Person or organization lawfully providing services or supplies for such benefits.

3. **We** will maintain a log of **PIP** benefits paid by **us** on behalf of an **insured**. If litigation is commenced, **we** will provide **you** with a copy of the log within 30 days after receiving **your** written request.

4. However, **we** will not pay:

   a. A claim or charges for **medical expenses** made by a:

      (1) Broker, as defined in § 627.732(1), Florida Statutes; or

      (2) Person making the claim on behalf of such broker.

   b. Any charge or reimbursement made by or on behalf of a clinic that is required to be licensed with the Agency For Health Care Administration:

      (1) But is not so licensed; or

      (2) That is otherwise operating in violation of the Florida Health Care Clinic Act.

   c. A claim or charges for **medical expenses**:

      (1) For any service or treatment that was not lawful at the time rendered;

      (2) To any person who knowingly submits a false or misleading statement relating to the claim or charges;

      (3) With respect to a bill or statement that does not substantially meet the applicable requirements of § 627.736(5)(d), Florida Statutes;

(4) For any service or treatment that is:

   i. Upcoded; or

   ii. That is unbundled when such treatment or service should be bundled;

in accordance with the provisions of the **No-Fault Law**;

(5) For any medical services or treatment billed by a physician and not provided in a hospital unless such services or treatment:

   i. Are actually rendered by the physician or are incident to the physician's professional services; and

   ii. Are included in the physician's bill, including documentation verifying that the physician is responsible for the medical services or treatment that were rendered and billed.

d. For any diagnostic test deemed to be invalid or deemed not medically necessary for use in the treatment of persons sustaining bodily injury covered by personal injury protection benefits under this section by the Florida Department of Health in accordance with the **No-Fault Law** in accordance with 627.736(5)(b)(2).

e. Charges for any services rendered by any person who violates the provisions of § 817.234(8), Florida Statutes in regard to the **insured** for whom such services were rendered and with respect to soliciting business or causing business to be solicited from any **insured** involved in a **motor vehicle accident** for the purpose of making:

(1) Motor vehicle tort claims; or

(2) Claims for **PIP** benefits.

f. Claims generated as a result of activities that are unlawful pursuant to § 817.505, Florida Statutes.

5. Pursuant to §627.736(4)(h), Florida Statutes, benefits are not due or payable to or on behalf of an **insured** if that person has committed, by a material act or omission, insurance fraud relating to PIP coverage under this endorsement, if the fraud is admitted to in a sworn statement by the **insured** or established in a court of competent jurisdiction. Any insurance fraud voids all coverage arising from the claim related to such fraud under this endorsement of the insured who committed the fraud, irrespective of whether a portion of the insured's claim may be legitimate, and any benefits paid before the discovery of the fraud is recoverable by the insurer in its entirety from the person who committed insurance fraud. The prevailing party is entitled to its costs and attorney fees in any action in which it prevails in any action **we** bring to enforce **our** right of recovery under §627.736(4)(h), Florida Statutes.

6. Pursuant to §627.736(4)(i), Florida Statutes, if **we** have a reasonable belief that a fraudulent insurance act for the purposes of §626.989 or §817.234, Florida Statutes, was committed, **we** will notify the claimant, in writing, within 30 days after the claim is submitted that the claim is being investigated for suspected fraud. Beginning at the end of the initial 30-day period, **we** will have an additional 60 days to conduct its fraud investigation. Notwithstanding the demand letter requirements under §627.736(10), no later than 90 days after the submission of the claim, **we** will deny the claim or pay the claim with simple interest as provided by law. Interest shall be assessed from the day the claim was submitted until the day the claim is paid. All claims denied for suspected fraudulent insurance acts shall be reported to the Division of Investigative and Forensic Services.

**PROVISIONAL PREMIUM**

1. In the event of any change in the:

a. Rules;

b. Rates;

c. Rating plan;

d. Premiums; or

e. Minimum premiums;

applicable to this coverage because of an adverse judicial finding as to the constitutionality of any provisions of the **No-Fault Law** as amended which provide for the exemption of persons from tort liability, the premium shown in the **Declarations Page** for:

a. **LIABILITY COVERAGE**;

b. **MEDICAL PAYMENTS COVERAGE**; or

c. **UNINSURED MOTORISTS COVERAGE**

of this policy shall be deemed to be provisional and subject to recomputation.

2. If this policy is a renewal policy, such recomputation shall include the amount of any return premium previously credited or refunded to the **named insured**, in accordance with the **No-Fault Law** as amended, with respect to insurance provided under a previous policy.

3. If the final recomputed premium exceeds the premium shown in the **Declarations Page**, the **named insured** shall pay **us**:

a. The excess amount; and

b. The amount of any return premium previously credited or refunded

**POLICY PERIOD, TERRITORY**

The insurance under this Endorsement applies only to accidents, which occur during the policy period:

1. In the State of Florida; and

2. With respect to **you** or a **relative**, while **occupying** an **insured motor vehicle** outside the State of Florida but within the United States of America, its territories or possessions or Canada; and

3. With respect to **you**, while **occupying** a **motor vehicle owned** by a **relative** provided that security is maintained on the **relative's motor vehicle** in accordance with §627.733, Florida Statutes.

# Florida
# Personal Automobile Policy

5630 University Parkway ● PO Box 3199
Winston-Salem NC 27102-3199

Direct General Insurance Company

**WARNINGS**

**FRAUD WARNING: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE.**

**MATERIAL MISREPRESENTATIONS MAY PREVENT RECOVERY OF BENEFITS UNDER THIS POLICY. MISREPRESENTATIONS INCLUDE FAILURE TO DISCLOSE ON THE APPLICATION REGULAR OPERATORS, DRIVERS, AND HOUSEHOLD RESIDENTS.**

**NOTICE: To ask questions, obtain information about your coverages, or if you need assistance in resolving a complaint, please call us at 1-877-468-3466.**

**This Policy with the Declarations Page, Application, and Endorsements, if any, issued complete this Policy.**

12352 (07012019)

THIS PAGE IS INTENTIONALLY LEFT BLANK

## FLORIDA PERSONAL AUTOMOBILE POLICY

**Read your Policy carefully.** Provisions of this contract and its endorsements (if any) restrict coverage. Be certain **you** understand all of the coverage terms, the exclusions, and **your** rights and duties.

### Table of Contents

AGREEMENT ............................................1

DEFINITIONS .........................................1

DUTIES AFTER AN ACCIDENT OR LOSS ...............4

    GENERAL DUTIES ...............................4

    ADDITIONAL DUTIES FOR PART C > ...............5

    ADDITIONAL DUTIES FOR PART D > ...............6

PART A > LIABILITY COVERAGE ...........................6

    INSURING AGREEMENT ...........................6

    ADDITIONAL DEFINITIONS FOR PART A .........6

    SUPPLEMENTARY PAYMENTS.....................6

    EXCLUSIONS ...................................7

    FEDERAL TORT CLAIMS EXCLUSION..............8

    LIMIT OF LIABILITY...............................8

    OUT OF STATE INSURANCE ...................9

    FINANCIAL RESPONSIBILITY REQUIRED.........9

    OTHER INSURANCE...............................9

PART B > MEDICAL PAYMENTS COVERAGE ...........9

    INSURING AGREEMENT ...........................9

    ADDITIONAL DEFINITIONS FOR PART B ...........................10

    EXCLUSIONS ...................................10

    LIMIT OF LIABILITY ...........................12

    ASSIGNMENT OF BENEFITS ...................12

    OTHER INSURANCE...............................12

PART C > UNINSURED MOTORIST COVERAGE...........................12

    INSURING AGREEMENT ...........................12

    ADDITIONAL DEFINITIONS FOR PART C ...........................12

    EXCLUSIONS ...................................13

    LIMIT OF LIABILITY ...........................13

    OTHER INSURANCE...............................14

    ARBITRATION ...................................14

    FLORIDA ARBITRATION ACT ...........................14

PART D > COVERAGE FOR DAMAGE TO YOUR AUTO...........................14

    INSURING AGREEMENT - COLLISION COVERAGE...........................14

INSURING AGREEMENT - COMPREHENSIVE COVERAGE ...........................14

CHILD RESTRAINTS...........................15

TOWING AND LABOR COVERAGE ...........................15

TRANSPORTATION EXPENSES COVERAGE ...........................15

RENTAL REIMBURSEMENT COVERAGE........15

CUSTOMIZED EQUIPMENT AND PARTS COVERAGE ...........................16

ADDITIONAL CUSTOMIZED EQUIPMENT AND PARTS COVERAGE ...........................17

ADDITIONAL DEFINITIONS |FOR PART D ...........................17

EXCLUSIONS ...........................17

LIMIT OF LIABILITY...........................20

PAYMENT OF LOSS ...........................21

PERMISSION TO RELEASE VEHICLE ............21

NO BENEFIT TO BAILEE ...........................21

OTHER SOURCES OF RECOVERY ...........................21

APPRAISAL ...........................21

LOSS PAYABLE CLAUSE...........................21

PART E > GENERAL PROVISIONS ...........................22

ADDITIONAL DEFINITIONS FOR PART E...........................22

ASSIGNMENT ...........................22

BANKRUPTCY...........................22

CHANGES ...........................22

MEDIATION OF CLAIMS...........................23

SETTLEMENT OF CLAIMS...........................23

LEGAL ACTION AGAINST US ...........................23

OUR RIGHT TO RECOVER PAYMENT...........................23

POLICY PERIOD AND TERRITORY...........................24

TERMINATION OF THIS POLICY ...........................24

MISREPRESENTATION AND FRAUD...........................27

TWO OR MORE AUTO POLICIES...........................27

TERMS OF POLICY CONFORM TO STATUTE...........................27

JOINT AND INDIVIDUAL INTERESTS...........................27

ELECTRONIC SIGNATURES ...........................27

THIS PAGE IS INTENTIONALLY LEFT BLANK

## AGREEMENT

This Policy is a legal contract between **you** and **us**. The policy provisions, along with the **Declarations Page** and Application, which are incorporated into and made part of this Policy, and any endorsements issued, complete this Policy. If there is no written Application, then the recorded statements made by **you** at the time of application become a part of this Policy.

This Policy is issued and renewed in reliance upon the truth and accuracy of the information **you** provide in the written or verbal Application for this insurance. **You** have a continuing duty to notify **us** of any changes to this information as explained in the Changes provision of this Policy. The terms of this Policy impose obligations on all persons defined as **you** and on all persons or organizations seeking coverage under this Policy. **We** agree to provide this insurance, subject to the terms, conditions, and limitations set forth in this Policy, if **you** have paid, when due, all of the premiums for the coverages **you** have chosen. Subject to the Out of State Insurance provision, **we** will only insure **you** for the coverages and the Limits of Liability for which a premium is shown on the **Declarations Page** of this Policy.

If the initial payment to **us** is in any non-cash method, this insurance is conditioned on that initial payment being honored by **your** financial institution.

## DEFINITIONS

The following words or phrases, when printed in bold-faced type, will have the following meaning throughout the Policy, whether in the singular, plural or possessive.

A. "**Accident**" means a sudden, unexpected, and unintended occurrence causing injury or physical damage, arising from the ownership, maintenance, or use of an **auto**. This definition does not apply to uninsured motorist coverage or personal injury protection coverage.

B. "**Actual cash value**" means the fair market value of the stolen or damaged property at the time of an **accident** or **loss**. Fair market value takes into account the following factors which may reduce value:

   1. The property's age, mileage, and physical condition; and

   2. Depreciation and prior damage.

   **Actual cash value** may include the amount of sales tax that would be applicable to the fair market value of the stolen or damaged property at the time of an **accident** or **loss** if such tax will necessarily be incurred upon replacement of a total **loss** or upon repair of a partial **loss**; provided, however, that **we** are not obligated to pay such tax unless and until it has actually been incurred.

C. "**Additional auto**" means an **auto** that **you** acquire in addition to the **auto(s)** shown on the **Declarations Page**, if:

1. No other insurance applies to the acquired **auto**;

2. Within 7 calendar days after **you** become the **owner** of the **additional auto**, **you** ask **us** to add it to **your** Policy; and

If **you** ask **us** to insure the **additional auto** within 7 calendar days after **you** acquire the **auto** and **we** agree to insure it, any coverage **we** provide for the **additional auto** is subject to the following conditions:

1. On the date **you** become the **owner**, an **additional auto** will have the broadest coverage **we** provide on any **auto** shown on the **Declarations Page**.

2. Any coverage **you** ask **us** to add to the **auto** and any increase of limits of liability shall not begin until after:

   a. **We** agree to add the coverage or increase the limit; and

   b. **You** pay any additional premium when due.

If **you** do not notify **us** within 7 calendar days after **you** become the **owner** of the **additional auto**, no coverage exists for the **additional auto**.

D. "**Auto**" means a four wheel private passenger vehicle or a dual rear wheel six-wheeled pick-up truck with a gross vehicle weight (as determined by the manufacturer's specifications) of 10,000 pounds or less that is:

1. Designed for operation on public roads; and

2. Required by law to be licensed and registered.

**Auto** does not include:

1. Motorcycles or mopeds;

2. Midget cars;

3. Golf carts as defined in s. 320.01(22), Florida Statutes;

4. All-terrain or quad vehicles, dune buggies, or go-carts;

5. Tractors or farm machinery;

6. Any vehicle operated on rails or crawler treads;

7. Any motor vehicle used as a residence or premises;

8. Delivery vans, Step-vans, cargo cutaway vans, sprinter vans, or vans with cabs separate from the cargo area; or

9. Box trucks with separate, box-like cargo area.

E. "**Bodily injury**" means bodily harm, sickness, or disease, including death that results from such **bodily injury**. **Bodily injury** does not include: harm; sickness; disease or death arising out of:

1. The contraction of a medically defined communicable disease by any person; nor

2. The exposure of such a disease by any person to any other person

unless there is a direct causal connection between the transmission of the disease and a covered **loss**.

This definition does not apply to personal injury protection coverage

F. "**Business**" means any full-time or part-time job, profession, occupation, employment, trade, or commercial enterprise.

G. "**Business use**" means the required use of an **auto** in the ordinary course of **business**. This does not include commuting to or from work or isolated occurrences. A **business use** that **we** allow for a **covered auto** as shown on the **Declarations Page** is limited to within 500 miles of **your** garaging address as shown on the **Declarations Page**.

H. "**Carry persons or property for compensation or a fee**" means to deliver, transport or carry persons, products, goods, materials, property, animals or livestock for any form of money, salary, income, property, consideration or any other thing of value (including, but not limited to, any mileage or expense allowance). This includes, but is not limited to, the delivery of goods, either on a wholesale or retail basis, such as food, magazines, newspapers, or flowers. This does not include share-the-expense car pools.

I. "**Covered auto**" means:

1. Any **auto** or shown on **your Declarations Page**, unless **you** have asked **us** to delete that **auto** from the Policy;

2. A **newly acquired auto**;

3. **Your utility trailer**; or

4. A **temporary substitute**.

J. "**Declarations Page**" means the most recent document **we** have issued to **you** for this policy that lists:

1. The types of coverage **you** have selected;

2. The limit for each coverage;

3. The premium **you** must pay for each coverage;

4. The **autos we** have agreed to insure under this policy;

5. The policy term; and

6. Other policy information.

K. "**Depreciation**" means a decline in value due to wear and tear or obsolescence.

L. "**Diminution in value**" means the actual or perceived **loss** in market or resale value by reason of the fact that the property has been damaged.

M. "**Electronic Signature**" means an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record.

N. "**Family member**" means a person who is, at the time of the **accident** or **loss**.

1. Related to **you** by blood, marriage, registered domestic partnership, or adoption and who **resides** in **your** household;

2. A ward, foster child, or stepchild who **resides** in **your** household;

3. **Your** unmarried, dependent children living temporarily away from home who intend to **reside** in **your** household.

The definition of "**family member**" does not apply to personal injury protection coverage.

O. "**Loss**" means sudden, direct, and accidental destruction or damage. "**Loss**" does not include:

1. **Diminution in value** or

2. Repossession, destruction, seizure, or confiscation of an **auto** by any government authority.

P. "**Motor vehicle business**" means the **business** or occupation of:

1. Selling;

2. Leasing or renting;

3. Repairing;

4. Servicing;

5. Delivering;

6. Testing, including road testing;

7. Storing;

8. Parking, including valet parking;

9. Cleaning;

10. Towing or transporting;

any motor vehicle.

Q. "**Named insured**" means the individual(s) designated as the **named insured(s)** on the **Declarations Page**. This definition does not apply to personal injury protection coverage.

R. "**Newly acquired auto**" means an **additional auto** or a **replacement auto** of which **you** become the **owner** during the policy period.

S. "**Non-owned auto**" means any **auto** that is not

1. **Owned** by;

2. Registered to, or

3. Furnished or available for the regular use of **you** or a **family member**, while in the custody of, or while being operated with the **owner's** express or implied permission by **you** or a **family member**. This definition does not apply to a **temporary substitute auto**.

T. "**Nuclear energy liability policy**" means a policy issued by any of the following or their successors:

1. Nuclear Energy Liability Insurance Association;

2. Mutual Atomic Energy Liability Underwriters; or

3. Nuclear Insurance Association of Canada.

U. "**Occupying**" means in, upon, getting in, on, out, or off.

V. "**Original equipment manufactured**" and "**OEM**" mean parts or items

1. Produced and/or installed by the manufacturer of the **auto**, or

2. Produced by a vendor of the manufacturer of the **auto** that the manufacturer intends as part of the **auto** or manufacturer's option when new.

W. "**Own**", "**owned**", "**owner**" and "**ownership**" with respect to an **auto** or **trailer**, mean the person who:

1. Holds the legal title to the **auto** or **trailer**; or

2. Has legal possession of an **auto** or **trailer** that is:

a. Subject to a written security agreement; or

b. Leased to that person by a written agreement for a continuous period of six (6) months or longer.

X. "**Personal vehicle sharing program**" means a system or process, operated by a **business**, organization, network, group, or individual under the terms of any written agreement that facilitates the sharing of private passenger motor vehicles for use by individuals, **businesses**, or other entities.

Y. "**Prearranged ride**" means the use of any vehicle to provide transportation of persons for any compensation or fee in connection with a **TNC** as defined in Florida Statute s. 627.748, for example Uber or Lyft, from the time a user logs on to, or signs in to, any online-enabled application, software, website or system until the time the user logs out of, or signs off of, any such online-enabled application, software, website or system, whether or not the user has accepted any passenger(s), including the time the user is on the way to pick up any passenger(s), or is transporting any passenger(s).

Z. "**Property damage**" means physical damage to, destruction of, or **loss** of use of, tangible property.

AA. "**Punitive damages**" means all damages that may be awarded, other than compensatory damages, to:

1. Punish or deter conduct; and/or

2. Fine, penalize or impose a statutory penalty due to conduct;

because the conduct is malicious, grossly negligent, wanton, willful, fraudulent, or unlawful. This includes any damages that have been defined by law as **punitive damages** or exemplary damages or treble damages and any additional costs, fees, or interest applicable to the **punitive damage** award.

BB. "**Racing**" means:

1. Participating in, competing in, practicing for or preparing for any prearranged or organized racing, speed, demolition or stunting contest or activity;

2. Participating in or competing in an unarranged or spontaneous street or off-road race or stunt; or

3. Operating an **auto** on an indoor or outdoor track, course or trail designed or used for:

a. A **racing** or speed contest or adventure;

b. Demonstration driving;

c. High performance driving; or

d. Driving competition.

CC. "**Replacement auto**" means an **auto** that **you** acquire to replace an **auto** shown on the **Declarations Page** if no other insurance applies to the acquired **auto**.

Any coverage **we** provide for a **replacement auto** is subject to the following terms:

1. On the date **you** become the **owner** of a **replacement auto**, if coverage applies under this Policy, that **replacement auto** will have the same coverage as the **auto** shown on **your Declarations Page** that is being replaced.

2. The deductible that applies to a **replacement auto** shall be the same as the **auto** it replaced.

3. All coverage **we** provide for the **replacement auto** ends 7 calendar days after **you** become the **owner** if **you** do not ask **us** to insure it within those 7 calendar days.

4. Any coverage **you** ask **us** to add to the **auto** or any increase of limits of liability shall not begin until after:

a. **We** agree to add the coverage or increase the limits; and

b. **You** pay any additional premium when due.

DD. "**Reside**", "**resides**" and "**residing**" mean to dwell within the household as the person's primary and legal domicile. Minor, dependent children whose parents are separated or divorced shall be deemed to **reside** in both parents' households.

EE. "**Temporary substitute**" means an **auto** used by **you**, a **family member**, or someone who has permission from **you** or a **family member** to use that **auto**, while it replaces a **covered auto** for a short period of time while the **covered auto** is out of use due to its:

a. Breakdown;

b. Repair;

c. Servicing; or

d. Theft or destruction.

If the **auto** is

a. Being used by **you** or a **family member** with the permission of the **owner** of the **auto**;

b. In the lawful possession of **you** or **family member**; and

c. Neither **you** nor a **family member** are the **owner** of the **auto** or has registered the **auto**.

If an **auto** is a **temporary substitute** as defined above, it is not a **non-owned auto**.

FF. "**Transportation Network Company**" or "**TNC**" means an organization or entity operating in the State of Florida pursuant to Florida Statute s. 627.748, such as Uber or Lyft, that uses a digital network to connect a rider with a **transportation network company** driver to provide a **prearranged ride**.

GG. "**Utility trailer**" means a non-motorized vehicle, including a farm wagon or farm implement, designed to be pulled on public roads by an **auto** if it is:

1. Not being used for commercial purposes;

2. Being used with an **auto** to which this insurance applies; and

3. Not a home, office, store, display or passenger trailer.

A mobile home, travel trailer, self-propelled vehicle or a vehicle that can be lived in is not a **utility trailer**.

HH. "**War**" means and includes:

1. **War**, declared or undeclared;

2. Civil **war**;

3. Insurrection;

4. Rebellion or revolution; or

5. Any consequence of any of these.

II. "**We**," "**us**" and "**our**" refer to the Company shown on the **Declarations Page** as providing this insurance.

JJ. "**You**" and "**your**" refer to:

1. The **named insured**; and

2. If **residing** in the same household at the time of the **accident** or **loss**:

a. The spouse of the **named insured**; or

b. The registered domestic partner of the **named insured** if the domestic partnership is established pursuant to a domestic partnership, civil union or similar law in any state.

## DUTIES AFTER AN ACCIDENT OR LOSS

### GENERAL DUTIES

A. **We** do not provide coverage under this Policy unless **you** have paid the required premium when due. Failure to give notice as required may affect coverage provided under this Policy. Failure to comply with any of the duties in this Policy may result in denial of coverage and relieve **us** of all duties to investigate, settle, defend, pay any judgment, or otherwise honor any claims made by an **insured** or against an **insured** if that failure is prejudicial to the Company.

B. **We** must be notified promptly of how, when and where the **accident** or **loss** happened. Notice shall include at a minimum the following:

1. All known facts and circumstances, including, the time of occurrence, the location,  the driving conditions as well as all known names, addresses and telephone numbers of any injured persons and witnesses;

2. All known license plate information of vehicles involved or vehicle descriptions; and

3. All known driver's license information of persons involved.

C. Except as specified in section C.4.b., below, a person, organization, or entity seeking coverage under this Policy must:

1. Cooperate with **us** in the investigation, settlement, or defense of any claim or lawsuit, and assist **us** in:

a. Making settlements;

b. Obtaining or authorizing **us** to obtain or secure evidence;

c. Giving evidence;

d. Obtaining the attendance of witnesses at hearings and depositions; and

e. The conduct of lawsuits.

2. Promptly send **us** copies of any notices or legal papers received in connection with the **accident** or **loss**. **We** will not pay for any attorney fees or costs incurred by any **insured** or other person without our prior written consent.

3. Agree to give **us** information and consent necessary for **us** to comply with any statutes or government regulations that apply.

4. If the mental or physical condition of an **insured** is material to any claim, that person must submit to physical and mental exams and tests, at **our** expense, by physicians or other qualified health care providers **we** select, as often as **we** may reasonably require. If transportation costs are incurred to get to and/or from an exam **we** request, **we** will reimburse, upon request, those reasonable costs incurred, as shown by receipts or mileage.

   a. With regard to any coverage under this Policy except for Personal Injury Protection Coverage, it is unreasonable if a person refuses to submit to, or fails to appear at, two such mental or physical examinations.

   b. With regard to Personal Injury Protection Coverage, submission to a mental or physical examination is not a condition precedent to receiving benefits. However, if an **insured** refuses to submit to, or fails to appear at, two such examinations requested by **us**, it will raise a rebuttable presumption that the person's refusal or failure was unreasonable. If an **insured** refuses to submit to, or appear at, two mental or physical examinations, **we** will not pay Personal Injury Protection benefits under this Policy to or for that **insured** for any subsequently rendered treatment.

5. Submit to examinations under oath by **us** or **our** representative as often as **we** reasonably require. These examinations will take place at a reasonable location of **our** choice. And, **we** have the right to conduct examinations under oath without the presence of any person other than the examinee, **us** and **our** attorney, except a stenographer, a court certified translator who is not related to the examinee, and the examinee's attorney, if any. **We** may:

   a. Also require an examination under oath from any **family member** who may be able to assist **us** in obtaining relevant information, even if that person is not claiming benefits under this Policy; and

   b. Make a video and/or audio recording or any other type of recording of any examination under oath.

   Submitting to an examination under oath is a condition precedent to receiving Personal Injury Protection and other benefits under this Policy.

   The duty to submit to examinations under oath is in addition to the duty to provide **us** with recorded statements.

6. Give **us** written and recorded statements and authorize **us** access to **your** personal records as often as **we** reasonably require.

7. Give **us** written authorization to obtain or copy any record relevant to the facts of the **accident** or damages caused by the **accident**, including:

   a. Relevant medical records and reports, including current reports, notes and test results;

   b. Employment and wage records;

   c. Business and financial records, sales agreements and rental agreements;

   d. Audio or video recordings;

   e. Phone records of the drivers and any passengers involved in the **accident**;

   f. Insurance claim records;

   g. Vehicle forensics.

8. Submit a sworn statement as proof of **loss** as **we** require. Proof of **loss** forms are available from **us** at **your** request.

9. Except as needed to render emergency first aid to an injured person, not voluntarily assume any obligation for pay, make any payment, or incur any expense for **bodily injury** or **property damage** arising out of an **accident**.

10. Attend hearings and trials as **we** require.

11. Authorize **us** to get information on any data, maintenance, or event recorder device, except GPS or similar systems, installed in a **covered auto** but only to the extent such information is relevant to the facts of the **accident** or **loss**.

12. Allow **us** to take any photographs and/or audio/video recordings **we** may require as a part of **our** investigation.

13. Convey title to and possession of the damaged, destroyed, or stolen property to **us** if **our** payment is based on a total **loss.**

14. Authorize **us** to move a damaged **auto** or **utility trailer** to a storage facility of **our** choice at **our** expense. If **you** do not authorize **us** to move property, **we** have no duty to pay any storage costs that would have been avoided if the property had been moved to a storage facility of **our** choice. **We** will give **you** at least 72-hours notice before **we** stop payment for previously authorized storage charges.

### ADDITIONAL DUTIES FOR PART C > UNINSURED MOTORIST COVERAGE

A person seeking Uninsured Motorist Coverage or that person's authorized representative must in addition to the **GENERAL DUTIES**:

1. Within 48-hours or as soon as practicable, notify the police of an accident involving a hit-and-run or unknown driver.

2. Promptly notify **us** in writing by certified or registered mail of a tentative settlement between the **insured** and the insurer of the **uninsured motor vehicle**.

3. Allow **us** 30 days to advance payment to that **insured** in an amount equal to the tentative settlement to preserve **our** rights against the insurer, **owner**, or operator of such **uninsured motor vehicle**.

### ADDITIONAL DUTIES FOR PART D > COVERAGE FOR DAMAGE TO YOUR AUTO

A person seeking coverage under Part D > COVERAGE FOR DAMAGE TO YOUR AUTO, must in addition to the **GENERAL DUTIES**:

1. Take reasonable steps after a **loss** to protect all property insured under PART D >COVERAGE FOR DAMAGE TO YOUR AUTO from further **loss**. **We** will pay reasonable expenses incurred to protect that property. Any further **loss** due to failure to protect will not be covered under this Policy.

2. Within 48-hours or as soon as practicable after the discovery of a **loss**, report any theft or vandalism of a **covered auto** or other property insured under this Policy, or its equipment or parts, to the police or other local law enforcement.

3. Within 48-hours or as soon as practicable, report any **accident** or **loss** to the police or other local law enforcement if the person cannot identify the **owner** or operator of an at-fault vehicle involved in the **accident**.

4. When reasonably possible, permit **us** to inspect and appraise all **loss** covered under PART D >COVERAGE FOR DAMAGE TO YOUR AUTO, before its repair or disposal.

## PART A > LIABILITY COVERAGE

### INSURING AGREEMENT

A. Subject to the limit of liability shown on the **Declarations Page**, if **you** pay **us** the premium for Bodily Injury Liability Coverage, **we** will pay compensatory damages for which an **insured** is legally liable due to **bodily injury** caused by an **accident** that arises out of the **ownership**, maintenance or use of an **auto** covered under this PART A.

B. Subject to the limit of liability shown on the **Declarations Page**, if **you** pay **us** the premium for Property Damage Liability Coverage, **we** will pay compensatory damages for which an **insured** is legally liable due to **property damage** caused by an **accident** that arises out of the **ownership**, maintenance or use of an **auto** covered under this PART A.

C. Damages include prejudgment interest awarded in a judgment against the **insured** subject to our limit of liability for this PART A. Damages do not include and **we** will not pay for **punitive damages**.

D. **We** will settle or defend, as **we** consider appropriate, any claim or suit asking for these damages. If **we** defend, **we** will choose the counsel of **our** choice, which may include an in-house counsel. In addition to **our** limit of liability, **we** will pay all defense costs **we** incur. **Our** duty to settle or defend ends when **our** limit of liability for this coverage has been exhausted by payment of judgments or by settlement. **We** have no duty to

1. Defend any suit;

2. Settle any claim; or

3. Pay any judgment;

for **bodily injury** or **property damage** not covered under this Policy.

### ADDITIONAL DEFINITIONS FOR PART A

A. "**Insured**" as used in this Part A means:

1. With respect to a **covered auto**:

   a. **You** or a **family member**.

   b. Any other person using **your covered auto** with express or implied permission to do so from **you** or a **family member**.

   c. Any other person or organization only with respect to legal liability for acts or omissions of:

      i. A person covered under this Part A while using **your covered auto**; or

      ii. **You** or a **family member** while using an **auto** other than **your covered auto**. The **auto** must not be **owned** or hired by that person or organization.

2. With respect to a **non-owned auto**, **you** or a **family member**.

### SUPPLEMENTARY PAYMENTS

In addition to **our** limit of liability, **we** will pay on behalf of an **insured**:

1. Premiums on appeal bonds and bonds to release attachments in any lawsuit **we** defend and **we** choose to appeal. **We** have no duty to:

   a. Apply for or furnish any bond; or

   b. Pay premium on any bond in an amount exceeding **our** limit of liability.

2. Interest accruing after a judgment is entered in any suit **we** defend, on that portion of the judgment that is within **our** limit of liability. **Our** duty to pay interest ends when **we** offer to pay that part of the judgment which does not exceed **our** limit of liability for this coverage.

3. Reasonable **loss** of earnings, up to $50 per day, that is incurred by an **insured** due to attendance at any deposition, hearing, or trial at **our** request. The **insured** must make a written request for **loss** of earnings and provide written proof of such **loss**.

4. Other reasonable expenses incurred at **our** request.

5. Up to $250 for the cost of a bail bond required because of a traffic law violation resulting in **bodily injury** or **property damage** covered by this Part A. **We** have no duty to apply for, furnish, or secure such a bond.

## EXCLUSIONS

**PLEASE READ THE EXCLUSIONS CAREFULLY. IF ANY EXCLUSION APPLIES, COVERAGE WILL NOT BE PROVIDED FOR AN ACCIDENT OR LOSS THAT OTHERWISE WOULD BE COVERED UNDER THIS POLICY.**

A. **We** do not provide Liability Coverage, nor do **we** have a duty to defend, any **insured** for:

1. **Bodily injury** or **property damage**:

    a. Caused intentionally by, or at the direction of, an **insured**; or

    b. That is, or should be, reasonably expected to result from an intentional act of an **insured**;

    even if the actual **bodily injury** or **property damage** that results is different than that which was intended.

2. **Property damage** to any property:

    a. **Owned** by;

    b. Rented to;

    c. Used by;

    d. Transported by; or

    e. In the care, custody, or control of;

    an **insured**.

    This exclusion does not apply to **property damage** to a residence or private garage or to a **non-owned auto**.

3. **Bodily injury** to any employee or co-worker of an **insured** arising out of and in the course of employment. This exclusion does not apply to **bodily injury** to **your** domestic employee unless workers' compensation, disability, or similar benefits are available or required by law to be provided for that domestic employee.

4. **Bodily injury** or **property damage** resulting from the **ownership**, maintenance, or use of a vehicle when used:

    a. To **carry persons or property for compensation or a fee**; or

    b. For a **prearranged ride**.

This exclusion does not apply to a share-the-expense car pool.

5. **Bodily injury** or **property damage** arising out of an **accident** involving any vehicle while being maintained or used by a person while employed or engaged in a **motor vehicle business**.

    This exclusion does not apply to **you** or a **family member** or an employee or agent of **you** or a **family member** when using a **covered auto**.

6. **Bodily injury** or **property damage** that occurs while maintaining or using:

    a. A **covered auto** for **business use** if **you** have not paid **us** the required **business use** surcharge.

    b. Any vehicle while an **insured** is employed or otherwise engaged in any **business** or occupation not described in exclusion (A.5.)

    This exclusion (A.6.) does not apply to the **business** of farming or ranching or the use of a private passenger auto, pickup, or van or a trailer used with one of these vehicle types.

7. **Bodily injury** or **property damage** arising out of the use of:

    a. **Your covered auto** by a person, other than a **family member**, without **your** express or implied permission; or

    b. An **auto** by an **insured** without the **owner's** express or implied permission.

8. **Bodily injury** or **property damage** arising out of the **ownership**, maintenance, or use of **your covered auto** while:

    a. Enrolled in **a personal vehicle sharing program** under the terms of a written agreement; and

    b. Being used in connection with such **personal vehicle sharing program** by anyone other than **you** or a **family member**.

    This exclusion will only apply to damages that are in excess of the minimum limits of liability coverage required by the financial responsibility law of the State of Florida.

9. **Bodily injury** to **you** or a **family member**.

10. **Bodily injury** or **property damage** which is:

    a. Insured under a **nuclear energy liability policy** or which would be insured under such a policy but for its termination upon exhaustion of its limit of liability.

    b. As a consequence of nuclear reaction, radiation or radioactive contamination whether controlled or uncontrolled or however caused.

11. **Bodily injury** or **property damage** resulting from the **ownership**, maintenance, or use of any vehicle while **racing**.

12. **Bodily injury** or **property damage** arising out of any liability assumed by an **insured** under any contract or agreement, except as required by and subject to Florida Statutes § 627.7263, as amended, as to a motor vehicle rental or leasing contract.

13. **Bodily injury** or **property damage** caused by, or reasonably expected to result from, a criminal act or omission, excluding moving traffic violations, of any **insured** person. This exclusion applies regardless of whether that **insured** person is actually charged with, or convicted of, a crime. For any person sustaining **bodily injury** or **property damage** who is not an **insured** person involved in the criminal act, this exclusion will apply only to the damages that are in excess of the minimum limits of liability coverage required by the financial responsibility law of the state of Florida.

14. For **bodily injury** or **property damage** caused by, resulting from, or a consequence of **war,** radioactive contamination, radiation, or a nuclear reaction, whether controlled or uncontrolled or however caused.

15. **Bodily injury** or **property damage** that arises while a **covered auto** is parked and being occupied as a residence or premises.

16. Court ordered criminal restitution.

17. **Bodily injury** or **property damage** resulting from the operation of a **covered auto** or any other **auto** by a person or persons specifically excluded by endorsement. This exclusion shall not apply to Property Damage Liability Coverage up to the minimum limits required by the State of Florida to or to Bodily Injury Liability Coverage if certified as proof of financial liability.

18. **Bodily injury** or **property damage** arising out of the **insured's ownership**, maintenance, use, loading or unloading of any haul away, tank truck, or tank trailer or when used with a **covered auto** or any other **auto**.

B. **We** do not provide Liability Coverage, nor do **we** have a duty to defend, any **insured** for **bodily injury** or **property damage** arising out of the **ownership**, maintenance, or use of:

1. Any vehicle, other than a **covered auto**, that is:

   a. **Owned** by **you**; or

   b. Furnished or available for **your** regular use.

2. Any vehicle, other than a **covered auto**, that is:

   a. **Owned** by a **family member**; or

   b. Furnished or available for the regular use of a **family member**.

   This exclusion B.2. does not apply to **you**.

3. A **covered auto** that:

   a. Has been rented, leased, subleased, or given by **you** or a **family member** to another party in exchange for money, anything of value, goods, services, compensation, or reimbursement.

   b. Has been given in exchange for compensation.

   c. Is under a conditional sales agreement by **you** to another after possession and control of the **covered auto** has been transferred.

   d. Has been entrusted to anyone other than **you** or a **family member** for consignment, sale, promoting sale, subleasing, leasing, renting or selling, and is no longer in **your** possession. This will only apply to the damages that are in excess of the minimum limits of liability coverage required by the financial responsibility law of the state of Florida.

## FEDERAL TORT CLAIMS EXCLUSION

The following are not **insureds** under Part A-Liability Coverage of the Policy:

1. The United States of America or any of its agencies.

2. Any person for **bodily injury** or **property damage** arising from the operation of a vehicle by that person as an employee of the United States Government when the provisions of the Federal Tort Claims Act apply.

## LIMIT OF LIABILITY

A. The limit of liability shown on the **Declarations Page** shall apply subject to the following:

1. The **bodily injury** liability limit for "each person" is the maximum **we** will pay as damages for **bodily injury** to any one person in any one **accident**. This includes all damages for care, medical expenses, **loss** of services, **loss** of society, comfort, companionship, **loss** of consortium, and any other damages in any way arising out of, or deriving from such **bodily injury**.

2. Subject to the **bodily injury** liability limit for "each person" the **bodily injury** liability limit for "each accident" is the maximum **we** will pay as damages for all **bodily injury** to two or more persons in any one **accident**. It includes all damages for care, medical expenses, **loss** of services, **loss** of society, comfort, companionship, **loss** of consortium, and any other damages in any way arising out of, or deriving from such **bodily injury**.

3. The **property damage** liability limit for "each **accident**" is the maximum **we** will pay for all damages to property in one **accident**. If sales tax will necessarily be incurred by a claimant upon replacement of a total **loss** or upon repair of a partial **loss**, **we** may defer payment of the sales tax unless and until the obligation has been incurred; otherwise, **we** have no obligation to pay for sales tax.

4. All **bodily injury** and **property damage** arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one **accident**. **We** will pay no more than the maximum limit of liability regardless of the number of:

   a. Vehicles described on the **Declarations Page**;

   b. **Insureds**;

   c. Claims;

   d. Claimants;

   e. Policies;

   f. Vehicles involved in the **accident**; or

   g. Contacts with or collisions with any other vehicles in the **accident**.

B. Any amount payable under this coverage to or for an injured person will be reduced by any amount paid or payable to that person under Part B– Medical Payments Coverage or Part C– Uninsured Motorist Coverage of this Policy.

## OUT OF STATE INSURANCE

If an **accident** covered under Part A - Liability takes place in any state in the United States other than the State of Florida or in a province of Canada and that state or province has:

1. A law requiring financial responsibility that specifies an amount to cover **bodily injury** or **property damage** liability that is higher than the limits of liability shown on **your Declarations Page**, this policy will provide the higher limit only for the coverage or coverages shown on **your Declarations Page** for which **you** have paid the premium.

2. A compulsory insurance requiring a nonresident to maintain insurance whenever the nonresident uses an **auto** in that state or province, this policy will provide the greater of:

   a. The required minimum amount and type of coverage; or

   b. The limits of liability under this policy.

## FINANCIAL RESPONSIBILITY REQUIRED

When **we** certify this Policy as proof under the financial responsibility law for the state of Florida, it will comply with that law to the extent of the coverage and limit of liability required by that law.

## OTHER INSURANCE

A. If there is other applicable liability insurance, self-insurance, or bond, **we** will pay only **our** share of the damages. **Our** share is the proportion that **our** limits of liability bears to the total of all applicable limits with the same priority. However, any insurance **we** provide for an **auto you** do not **own** shall be excess over any other collectible insurance, self-insurance, or bond.

B. If the other insurer refuses to defend, **we**

   1. Will continue to defend where required by law;

   2. Shall be subrogated to the **insured's** rights against the other insurer;

   3. Reserve **our** rights against such insurer; and

   4. Do not waive any of **our** rights against the other insurer by continuing to defend.

C. However, **we** will provide primary insurance for a vehicle **you** do not **own** if:

   1. The vehicle is leased by **you** under a written rental or lease agreement; and

   2. The face of the rental or lease agreement contains, in at least 10-point type, the following language:

      The valid and collectible liability insurance and personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of liability and personal injury protection coverage required by Section 324.021(7) and Section 627.736, Florida Statutes.

D. In the event this Other Insurance clause is nullified due to multiple policies with competing excess insurance clauses, **we** shall regardless pay only **our** proportionate share as **our** limit of liability bears to the total of all applicable liability limits.

## PART B > MEDICAL PAYMENTS COVERAGE

## INSURING AGREEMENT

A. Subject to the limit of liability shown on the **Declarations Page**, if **you** pay **us** the premium for Medical Payments Coverage, **we** will pay **medical expenses** and funeral service expenses arising out of **bodily injury**:

   1. Caused by an **auto accident**;

   2. Sustained by an **insured**; and

   3. Arising out of the **ownership**, maintenance, or use of an **auto**.

   **We** will pay only those **medical expenses** and funeral service expenses incurred within three (3) year from the date of the **accident**.

B. **We** have the right to review the **medical expenses** to determine if they are reasonable and necessary for diagnosis and treatment of **bodily injury. We** may use independent sources of information selected by **us** to assist us in determining if any **medical expense** is reasonable and necessary. These sources may include, but are not limited to:

1. Physical exams paid for by **us** and performed by physicians **we** select;

2. Review of medical files;

3. Computer databases; or

4. Published sources of **medical expense** information.

C. **We** may refuse to pay for:

1. Any portion of a **medical expense** that is unreasonable because the fee for the service is greater than the **usual and customary charge**; and/or

2. Any **medical expense** because the service rendered is unnecessary for the treatment of the **bodily injury** sustained.

If **we** refuse to pay for any portion of a **medical expense** because the fee is unreasonable or for any service because the service is unnecessary and the **insured** is sued for payment of this **medical expense**, **we** will defend the **insured** with an attorney of **our** choice. **We** will pay defense costs and any judgment against the **insured** up to **our** limit of liability for this coverage. The **insured** must cooperate with **us** in the defense of the lawsuit and attend depositions, hearings, or trials at **our** request. **We** will pay, upon written request from the **insured**:

1. Reasonable **loss** of earnings to an **insured**, up to $50 per day that is incurred by an **insured** due to attendance at hearings, proceedings or trials at **our** request. The **insured** must provide **us** written proof of such **loss**; and

2. Other reasonable expenses the **insured** incurs at **our** request as a result of a lawsuit by a health care provider to recover **medical expenses we** refuse to pay because the fee is unreasonable or unnecessary.

D. **We** may refuse to pay for any medical services that are not provided and prescribed by a medical provider licensed by the state and acting within the scope of that license.

E. **We** have the right to make payment directly to a provider of necessary **medical expenses** and funeral service expenses.

## ADDITIONAL DEFINITIONS FOR PART B

As used in this PART B:

A. "**Insured**" means:

1. **You** or a **family member**:

a. While **occupying**; or

b. As a pedestrian when struck by

a motor vehicle designed for use mainly on public roads; or

2. Any other person while **occupying** a **covered auto** when the **covered auto** is being used by **you** or a **family member** or another person with **your** express or implied permission.

B. "**Medical expense**" and "**medical expenses**" mean the **usual and customary charge** for reasonable and necessary:

1. Services, treatment, procedures and products provided by a state licensed health care provider;

2. Medications, orthopedic and prosthetic devices, eyeglasses, hearing aids, and other medical supplies when prescribed by a state licensed health care provider; and

3. Services, treatment, procedures and products provided by a state licensed health care provider for physical therapy, vocational rehabilitation, occupational therapy, and speech pathology and audiology.

"**Medical expense**" and "**medical expenses**" do not include any fees, costs, or charges for:

1. Massage therapy not prescribed by a state licensed doctor of chiropractic;

2. Treatment, services, products, or procedures that are:

a. Experimental or for research; or

b. Not commonly and customarily recognized in the medical profession in the United States as a customary treatment for **bodily injury**.

3. Thermography, acupuncture or other related procedures of similar nature; or

4. The purchase or rental of equipment not primarily designed to serve a medical purpose.

C. "**Usual and customary charge**" means the fees, costs or charges **we** determine that represents a common and typical charge for services in the geographical area in which the service is rendered. **We** may determine the **usual and customary charge** by using independent sources of **our** choice.

## EXCLUSIONS

**PLEASE READ THE EXCLUSIONS CAREFULLY. IF ANY EXCLUSION APPLIES, COVERAGE WILL NOT BE PROVIDED FOR AN ACCIDENT OR LOSS THAT OTHERWISE WOULD BE COVERED UNDER THIS POLICY.**

A. **We** do not provide Medical Payments Coverage for any person for **bodily injury**:

1.  Caused intentionally by, or at the direction of, an **insured,** or that is or should be reasonably expected to result from the intentional act of an **insured**, even if the actual **bodily injury** that results is different from that which was intended.

2.  Arising out of, and in the course of employment if worker's compensation benefits, disability benefits or similar benefits are required or available for the **bodily injury**.

3.  Arising out of the **ownership**, maintenance, or use of a **covered auto**:

    a.  To **carry persons or property for compensation or a fee**, or as a public or livery conveyance; or

    b.  For **prearranged ride**.

    This exclusion does not apply to a share-the-expense car pool.

4.  That occurs while the **insured** is employed or otherwise engaged in any **motor vehicle business**. However, this exclusion does not apply to the **ownership**, maintenance, or use of a **covered auto** by **you** or a **family member**.

5.  **Bodily injury** or **property damage** that occurs while maintaining or using:

    a.  A **covered auto** for **business use** if **you** have not paid **us** the required **business use** surcharge.

    b.  Any vehicle while an **insured** is employed or otherwise engaged in any **business** or occupation.

    This exclusion does not apply to the **business** of farming or ranching or the use of a private passenger **auto**, pickup, or van or a trailer used with one of these vehicle types.

6.  That occurs while any person is using an **auto** without the **owner's** permission. This does not apply to **you,** or a **family member** when using or **occupying** a **covered auto**.

7.  Arising out of the **ownership**, maintenance, or use of **your covered auto** while it is being used in connection with a **personal vehicle sharing program**. This does not apply to **you** or a **family member**.

8.  That is insured under a **nuclear energy liability policy** or that would be insured under such a policy but for its termination upon exhaustion of its limit of liability.

9.  Arising out of the **ownership**, maintenance, or use of any vehicle while **racing**.

10. Resulting from an **accident** or **loss** caused by, or reasonably expected to result from, a criminal act or omission, excluding moving traffic violations, of any **insured** person. This exclusion applies

regardless of whether that **insured** person is actually charged with, or convicted of, a crime.

11. Caused by, resulting from, or a consequence of **war**, radioactive contamination, radiation, or a nuclear reaction, whether controlled or uncontrolled or however caused.

12. Arising while **occupying** an **auto** while located for use as a residence or premises.

13. Arising out of or resulting from, in whole or in part, any actual, alleged, or threatened migration; release; existence; or presence of, or actual, alleged, or threatened exposure to, any mold, mildew, fungus or other microbes. This includes any type or form of: (i) decomposing or disintegrating organic material or microorganism; (ii) organic surface growth on moist, damp, or decaying matter; (iii) yeast or spore-bearing plant-like organism; or (iv) spores; scents; toxins; mycotoxins; bacteria; viruses; or any other by-products produced or released by any mold, mildew, fungus, or other microbes.

14. Resulting from the use of an **auto** by any person specifically excluded.

B.  **We** do not provide Medical Payments Coverage for any **insured** for **bodily injury** arising out of the **ownership**, maintenance, or use of:

1.  Any motorized vehicle having fewer than four wheels;

2.  Any vehicle, other than a **covered auto** for which this coverage has been purchased, that is:

    a.  **Owned** by **you**; or

    b.  Furnished or available for **your** regular use.

3.  Any vehicle, other than a **covered auto** for which this coverage has been purchased, that is:

    a.  **Owned** by any **family member**; or

    b.  Furnished or available for the regular use of any **family member**.

    This exclusion B.2. does not apply to **you**.

4.  A **covered auto** that:

    a.  Has been rented, leased, subleased, or given by **you** or a **family member** to another party in exchange for money, value, goods, services, compensation or reimbursement;

    b.  Has been given in exchange for compensation;

    c.  Is under a conditional sales agreement by **you** to another after possession and control of the **covered auto** has been transferred; or

    d.  Has been entrusted to anyone other than **you** or a **family member** for consignment; sale; promoting sale; subleasing; leasing; renting; or selling, and is no longer in **your** possession.

This exclusion B.4 does not apply to **you** or a **family member**.

## LIMIT OF LIABILITY

A. The limit of liability shown on the **Declarations Page** for Medical Payments Coverage is the most **we** will pay for all damages arising out of and due to **bodily injury** for each person injured in any one **accident**. There will be no adding, stacking, or combining of coverage. The limit of liability for Medical Payments Coverage shown on the **Declarations Page** is the most **we** will pay, without regard to the number of:

1. **Insureds**, heirs or survivors;

2. Claimants;

3. Claims made;

4. Lawsuits filed;

5. Vehicles shown on the **Declarations Page**;

6. Premiums shown on the **Declarations Page**;

7. Vehicles involved in the **accident**; or

8. Premiums paid.

B. No one will be entitled to receive duplicate payments for the same elements of damage under PART B for which payment has been made:

1. Under any other coverage provided by this Policy;

2. By or on behalf of the person or organization that may be legally responsible; or

3. Under any other insurance or source of recovery.

C. No payment will be made under this coverage unless the **insured** or his legal representative agrees that any payment shall be applied toward any settlement or judgment that person receives under any Auto Liability or Uninsured Motorist coverage provided by this Policy.

## ASSIGNMENT OF BENEFITS

**We** will pay for **medical expenses** directly to a licensed health care provider if the **insured** gives **us** a signed written assignment of benefits payable under PART B > MEDICAL PAYMENTS COVERAGE. If **we** pay benefits directly to a health care provider, **we** have no further duty or liability to pay those same benefits to an **insured** or to any other person or entity.

## OTHER INSURANCE

A. If there is other applicable insurance that provides coverage for **medical expenses** and/or funeral service expenses, including, but not limited to other motor vehicle medical payments coverage, personal injury protection coverage, no-fault coverage, worker's compensation or similar insurance, any insurance **we** provide shall be excess to all other collectible insurance and bonds.

B. If there is any other insurance for **medical expenses** with the same priority as this Medical Payments Coverage, **we** will not pay more than **our** share of the unpaid covered **medical expenses**. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits with the same priority.

C. This Policy will be excess over any coverage afforded to a person using a **covered auto** with **your** express or implied permission.

D. In the event this Other Insurance clause is nullified due to multiple policies with competing excess insurance clauses, **we** shall regardless pay only **our** proportionate share as **our** limit of liability bears to the total of all applicable liability limits.

## PART C > UNINSURED MOTORIST COVERAGE

### INSURING AGREEMENT

If **you** paid the required premium for uninsured motorist coverage, **we** will pay compensatory damages which an **insured** is legally entitled to recover from the **owner** or operator of an **uninsured motor vehicle** because of **bodily injury**:

1. Sustained by an **insured**; and

2. Caused by an **accident**.

The **owner's** or operator's liability for these damages must arise out of the **ownership**, maintenance, or use of the **uninsured motor vehicle**.

Any judgment for damages arising out of a suit brought without **our** written consent is not binding on **us**.

### ADDITIONAL DEFINITIONS FOR PART C

As used in this Part C:

A. "**Insured**" means:

1. **You** or a **family member**.

2. Any other person **occupying your covered auto** with **your** express or implied permission.

3. Any person for damages that person is entitled to recover because of **bodily injury** to which this coverage applies sustained by a person described in A.1. or A.2. above.

An **insured** does not include **you** or a **family member** when operating a **non-owned auto** without permission of its **owner**.

B. "**Uninsured motor vehicle**" means a land motor vehicle or trailer of any type:

1. To which no bodily injury liability bond or policy applies at the time of the accident.

2. To which a bodily injury liability bond or policy applies at the time of the accident but the amount paid for **bodily injury** under that bond or policy to the **insured** is not enough to pay the full amount the **insured** is legally entitled to recover as damages.

3. Which is a vehicle whose operator or **owner** cannot be identified and which hits or which causes an accident that results in **bodily injury** without hitting:

   a. **You** or a **family member**;

   b. A motor vehicle which an **insured** is **occupying**; or

   c. **Your covered auto.**

   If there is no physical contact with the motor vehicle causing the **accident**, the facts of the accident must be proven. **We** will only accept competent evidence other than the testimony of a person making claims under this or any similar coverage.

4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

   a. Denies coverage; or

   b. Is or becomes insolvent.

However, **uninsured motor vehicle** does not include any motor vehicle or equipment:

1. **Owned** by or furnished or available for regular use by **you** or a **family member** unless it is a **covered auto** to which Part A Liability Coverage of this Policy applies and liability coverage is excluded for any person other than **you** or a **family member** for damages sustained in the accident by **you** or a **family member**.

2. Operated on rails or crawler treads.

3. Designed mainly for use off public roads while not on public roads.

4. While located for use as a residence or premises.

5. That is not required to be registered as a motor vehicle.

## EXCLUSIONS

A. **We** do not provide Uninsured Motorist Coverage for **bodily injury** sustained by any **insured**:

1. If that **insured** or the legal representative settles the **bodily injury** claim without **our** consent. However, this exclusion A.1. does not apply:

   a. If such settlement does not prejudice **our** right to recover payment; or

   b. To a settlement made with the insurer of a motor vehicle described in paragraph B.2. of the definition of **uninsured motor vehicle**, if **we** fail to respond within 30 days to **your**

request for authority to settle with the at fault party. **Your** request must be sent to **us** by certified or registered mail.

2. Resulting from the **ownership**, maintenance, or use of a **covered auto** when used:

   a. To **carry persons or property for compensation or a fee**; or

   b. For a **prearranged ride**.

3. Using a motor vehicle without a reasonable belief that the person is entitled to do so. This exclusion does not apply to a **family member** using a **covered auto** which is **owned** by **you**.

4. With respect to damages for pain, suffering, mental anguish or inconvenience unless the **bodily injury** consists in whole or in part of:

   a. Significant and permanent **loss** of an important bodily function;

   b. Permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement;

   c. Significant and permanent scarring or disfigurement; or

   d. Death.

5. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law.

   a. Workers' compensation law; or

   b. Disability benefits law.

6. **We** do not provide Uninsured Motorist Coverage for **punitive damages**.

## LIMIT OF LIABILITY

A. **Our** maximum limit of liability for all damages for care, medical expenses, **loss** of services, **loss** of society, comfort, companionship, **loss** of consortium, death, and any other damages in any way arising out of, or deriving from such **bodily injury** sustained by any one person in any one accident is the sum of the Uninsured Motorist Coverage limits of liability shown on the **Declarations Page** applicable for each person.

B. Subject to this limit for each person, **our** maximum limit of liability for all damages arising out of **bodily injury** resulting from any one accident is the sum of the Uninsured Motorist Coverage limits of liability shown on the **Declarations Page** for each accident. This is the most **we** will pay regardless of the number of:

1. **Insureds**;

2. Claims made;

3. Vehicles or premiums shown on the **Declarations Page**; or

4. Vehicles involved in the accident.

C. No one will be entitled to receive duplicate payments for the same elements of **loss** under this coverage and:

1. Part A – Liability Coverage of this Policy.

2. Personal Injury Protection/No-fault Coverage; or

3. Automobile medical payments coverage.

D. **We** will not make a duplicate payment under this coverage for any element of **loss** for which payment had been made by or on behalf of persons or organizations who may be legally responsible.

E. **We** will not pay for any element of **loss** if a person is entitled to receive payment for the same element of **loss** under any of the following or similar law:

a. Workers' compensation law; or

b. Disability benefits law or similar law.

F. Any payment made under this coverage shall reduce the amount that person is entitled to receive for the same element of damage under PART A - LIABILITY COVERAGE and PART B - MEDICAL PAYMENTS COVERAGE of this policy. However, this provision shall not reduce coverage under this Part to an amount less than the minimum limits.

G. In no event shall an **insured** be entitled to receive duplicate payment for the same element of damages.

H. **We** will be entitled to a credit against the **insured's total damages** in the amount of the full limits of the bodily injury liability bonds or policies insuring the **owner** or operator of the **uninsured motor vehicle**. **We** will be entitled to this credit even if the **insured** enters into a settlement for less than the full limits of the bodily injury liability bonds or policies insuring the owner or operator of the **uninsured motor vehicle**. The term "**total damages**" as used in this paragraph means the full amount of damages determined to have been sustained by the **insured**, regardless of the amount of uninsured motorist coverage. This provision does not reduce the limit of liability for the uninsured motorist coverage provided under this endorsement.

## OTHER INSURANCE

If there is other applicable similar insurance, **we** will pay only **our** share of the **loss**. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide with respect to a motor vehicle **you** do not **own** shall be excess over any other collectible insurance.

In the event this Other Insurance clause is nullified due to multiple policies with competing excess insurance clauses, **we** shall regardless pay only **our** proportionate share as **our** limit of liability bears to the total of all applicable liability limits

## ARBITRATION

A. If **we** and an **insured** do not agree:

1. Whether that person is legally entitled to recover damages under this coverage; or

2. As to the amount of damages;

then the matter may be:

1. Mediated, in accordance with the Mediation provision contained in Part E this Policy, if the damages resulting from **bodily injury** are for $10,000 or less; or

2. Arbitrated, Disputes concerning coverage under this Part C cannot be arbitrated.

If either party demands mediation, the mediation must be completed before arbitration can occur.

B. Both parties must agree to arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may require that selection be made by a judge of a court having jurisdiction.

C. Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

D. Unless both parties agree otherwise, arbitration will take place in the county in which the **insured** lives. Local rules of law as to procedure and evidence will apply.

E. A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the **insured** is legally entitled to recover damages; and

2. The amount of damages.

## FLORIDA ARBITRATION ACT

If **we** and an **insured** agree to arbitration or mediation, the Florida Arbitration Act will not apply.

## PART D > COVERAGE FOR DAMAGE TO YOUR AUTO

### INSURING AGREEMENT - COLLISION COVERAGE

A. If **you** pay **us** the premium for Collision Coverage and it is shown on the **Declarations Page, we** will pay for direct and accidental **loss** to a **covered auto** and its equipment caused by a **collision**.

B. **Our** payment will be reduced by the applicable deductible shown on the **Declarations Page**. The deductible amount shall not apply to **loss** or damage to the windshield glass on a **covered auto**.

### INSURING AGREEMENT - COMPREHENSIVE COVERAGE

A. If **you** pay **us** the premium for Comprehensive Coverage and it is shown on the **Declarations Page**, **we** will pay for direct and accidental **loss** to a **covered auto** and its equipment caused by a peril that is **other than collision**.

B. **Our** payment will be reduced by the applicable deductible shown on the **Declarations Page**. The deductible amount shall not apply to **loss** or damage to the windshield glass on a **covered auto**.

## CHILD RESTRAINTS

In the event of a **loss** to which Collision Coverage or Comprehensive Coverage applies, and **we** determine that the integrity of a child safety seat or restraint system is compromised, **we** will pay up to $250 to replace it with a child safety seat or restraint system of like kind and quality. The child safety seat or restraint system must have been in the **covered auto** at the time of the covered **loss**. No deductible applies to this child safety seat or restraint system.

## TOWING AND LABOR COVERAGE

A. Subject to the each occurrence and each term limit shown on the **Declarations Page**, if **you** pay **us** the premium for Towing and Labor Coverage, **we** will pay the reasonable cost, as determined by **us**, that **you** incur for a **covered auto** for:

1. Mechanical labor up to one hour at the place where the **covered auto** broke down.

2. Towing to the nearest place where the necessary repairs can be made during regular business hours if the **covered auto** will not run.

3. Towing the **covered auto** out if it is stuck on or within 100 feet of a public roadway.

4. Delivery of gas, oil, battery, or tire change.

B. Towing and Labor Coverage will apply only to the **covered auto** for which this coverage and specific premium are shown on the **Declarations Page**.

C. **We** will not pay for the cost of the necessary repairs or the cost of the gas, oil, battery, or tire.

D. The each occurrence and each term limit shown on the **Declarations Page** for this coverage is the most **we** will pay for any one **loss**. This coverage is limited to no more than three (3) occurrences in any 6-month policy period or six (6) occurrences per annual policy period.

E. **You** will not be entitled to receive duplicate payment under this coverage for reasonable costs **you** incur and which are covered elsewhere under this Policy.

F. **We** will only provide Towing and Labor Coverage within the policy territory as defined in the GENERAL PROVISIONS of this Policy.

G. **You** must give **us** written verifiable proof of towing and/or labor charges incurred.

## TRANSPORTATION EXPENSES COVERAGE

A. If Comprehensive Coverage has been purchased as shown on the **Declarations Page, we** will pay up to the transportation expense limit shown on the **Declaration Page** for expenses incurred by **you** from a commercially licensed rental agency in the event of a total theft of a **covered auto**. A deductible will not apply to this coverage.

B. **We** will pay only transportation expenses or **loss** of use expenses, whichever is applicable, incurred during the period:

1. Beginning forty-eight (48) hours after **you** notify the police and **us** of the theft of a **covered auto**; and

2. Ending the earlier of:

a. When a **covered auto** has been recovered and returned to **you** or its **owner**;

b. When a **covered auto** has been recovered and repaired;

c. When a **covered auto** has been replaced;

d. Forty-eight (48) hours after **we** tender payment for the **loss** if the **covered auto** is deemed by **us** to be a total **loss** or unrecoverable; or

e. When **you** have incurred the maximum $300 limit.

C. **We** will not pay for transportation expense if there is a theft only of **your trailer**.

D. **You** must give **us** written verifiable proof of **your** transportation and or **loss** of use expenses.

E. At **your** request, **we** will guarantee payment of transportation expenses to the provider of such transportation up to $10 per day, to a maximum limit of $300, and shall pay such provider directly.

F. There shall be no duplicate recovery for the same elements of **loss** or expense under this coverage and any other coverage provided by this Policy. However, if **you** purchase Rental Reimbursement Coverage with the same or higher limits of coverage than this section provides, then the provisions and limits of the Rental Reimbursement Coverage shall apply to the total theft of a **covered auto**. Transportation Expenses Coverage cannot be combined or stacked with the Rental Reimbursement Coverage provided under PART D.

## RENTAL REIMBURSEMENT COVERAGE

A. Subject to the limits shown on the **Declarations Page**, if **you** pay **us** the premium for Rental Reimbursement Coverage, **we** will reimburse **you** or, at **our** option, pay directly on **your** behalf the daily rental expenses **you** incur when **you** rent an **auto** from a commercially licensed rental agency approved by **us**. No deductible will apply to this coverage. Rental Reimbursement Coverage will apply only to the **covered auto** for which this coverage and a specific premium are shown on the **Declarations Page**.

B. Subject to the limits shown on the **Declarations Page** the length of time for which this coverage will apply will be limited to the lesser of:

1. The period of time reasonably required, to repair the **covered auto**; or

2. Forty-eight (48) hours after **we** tender payment for the **actual cash value** of the **loss**, if the **covered auto** is deemed by **us** to be a total **loss**.

C. At **your** request, **we** will guarantee such rental payments hereunder to the provider of the vehicle. If **we** guarantee payment, such payment will be made directly to the provider of the vehicle up to **our** limits of liability as shown on the **Declarations Page**.

D. Daily rental expenses shall not include the cost of:

1. Insurance related to the rental of the **auto**;

2. Refueling the rental **auto**;

3. Mileage fees;

4. Navigation devices or other optional equipment;

5. Collision damage waiver; or

6. Tolls.

E. Rental Reimbursement Coverage applies only if the **covered auto** is withdrawn from use for more than twenty-four (24) hours and:

1. **You** have purchased Collision Coverage for that **covered auto** and the **loss** falls under that coverage; or

2. **You** have purchased Comprehensive Coverage for that **covered auto** and the **loss** falls under that coverage.

F. If **you** purchase Rental Reimbursement Coverage with a limit lower than that provided for in the Transportation Expenses Coverage provision in PART D and the **loss** involves the total theft of a **covered auto**, then the limits and provisions applicable to transportation expenses under Transportation Expenses Coverage will apply.

G. Rental Reimbursement Coverage cannot be combined or stacked with the Transportation Expenses Coverage provided under PART D.

H. **You** must give **us** written verifiable proof of incurred rental expenses.

I. If "SureDrive" is shown on the **Declarations Page** for the **covered auto** instead of the each day and each **accident** limit for this coverage, then **we** will reimburse **you** or, at **our** option, pay directly on **your** behalf the daily rental expenses incurred by **you** when **you** rent an **auto** from a commercially licensed rental agency approved by **us**. **We** will pay rental expenses for **you** to rent up to a "full size" **auto** approved by **us**. No deductible will apply to this coverage. The length of time for which this coverage will apply will be the lesser of:

1. Forty-five (45) days; or

2. The period of time reasonably required to repair the **covered auto**; or

3. Forty-eight (48) hours after **we** tender payment for the **actual cash value** of the **covered auto** in the event of a total **loss**.

**CUSTOMIZED EQUIPMENT AND PARTS COVERAGE**

A. Unless **you** pay **us** the premium for Customized Equipment and Parts Coverage and it is shown on the **Declarations Page** or on the applicable schedule, the limit of liability for **loss** to **customized equipment and parts** is the lowest of:

1. The **actual cash value** of such **customized equipment and parts**, reduced by the applicable deductible and by its salvage value if **you** or the **owner** retain the salvage;

2. The amount necessary to repair the **customized equipment and parts**, reduced by the applicable deductible;

3. The amount necessary to replace the **customized equipment and parts**, reduced by the applicable deductible and reduced by its salvage value if **you** or the **owner** retain the salvage; or

4. $1000.

B. If the **actual cash value** of the **covered auto** without the **customized equipment and parts** is less than $1000, the most **we** will pay is the **actual cash value** of the **covered auto** unless Additional Customized Equipment and Parts Coverage has been purchased.

C. Customized Equipment And Parts Coverage applies only if:

1. **You** have purchased Collision Coverage for the **covered auto** containing the **customized equipment and parts** and the **loss** falls under that coverage; or

2. **You** have purchased Comprehensive Coverage for the **covered auto** containing the **customized equipment and parts** and the **loss** falls under that coverage.

D. Coverage for **customized equipment and parts** shall not cause **our** limit of liability for **loss** to an **auto** under this PART D > COVERAGE FOR DAMAGE TO YOUR AUTO to be increased to an amount in excess of:

1. The **actual cash value** of the **auto**, including its **customized equipment and parts** covered under this coverage; or

2. Any applicable limits or stated amount elected by **you** shown on the **Declarations Page** for this coverage.

E. Any amount payable under this coverage shall be reduced to the extent any expense is payable under any other coverage under this Policy.

F. There shall be no duplicate recovery for the same elements of **loss** or expense under this coverage and any other coverage provided by this Policy.

## ADDITIONAL CUSTOMIZED EQUIPMENT AND PARTS COVERAGE

A. Subject to the limits shown on the **Declarations Page**, if **you** pay **us** the premium for Additional Customized Equipment and Parts Coverage for a **covered auto**, **we** will pay for **loss** to the **customized equipment and parts** in or on that **covered auto** that results from a **loss**. All payments for **loss** to such **customized equipment and parts** shall be reduced by the applicable deductible, but only one deductible shall be applied to any one **loss** under this PART D > COVERAGE FOR DAMAGE TO YOUR AUTO.

B. Additional Customized Equipment and Parts Coverage applies only if:

1. **You** have purchased Collision Coverage for the **covered auto** containing the **customized equipment and parts** and the **loss** falls under that coverage; or

2. **You** have purchased Comprehensive Coverage for the **covered auto** containing the **customized equipment and parts** and the **loss** falls under that coverage.

C. The limit of liability for **loss** to **customized equipment and parts** under this coverage is the lowest of:

1. The **actual cash value** of such **customized equipment and parts**, reduced by the applicable deductible and by its salvage value if **you** or the **owner** retain the salvage;

2. The amount necessary to repair the **customized equipment and parts**, reduced by the applicable deductible;

3. The amount necessary to replace the **customized equipment and parts**, reduced by the applicable deductible and reduced by its salvage value if **you** or the **owner** retain the salvage; or

4. The limit of liability for Additional Customized Equipment and Parts Coverage shown on the **Declarations Page**.

## ADDITIONAL DEFINITIONS FOR PART D

As used in this PART D:

A. **"Collision"** means the upset of a **covered auto** or its impact with another vehicle or object.

B. **"Comprehensive"** and "**other than collision**" including a **loss** caused by:

1. Missiles or falling objects;

2. Fire or lightning;

3. Theft or larceny;

4. Explosion or earthquake;

5. Windstorm;

6. Hail, water or flood;

7. Malicious mischief or vandalism;

8. Riot or civil commotion;

9. Impact with a bird or animal; or

10. Breakage of glass, except breakage of glass caused by a **collision**.

C. **"Customized equipment and parts,"** means equipment, devices, accessories, changes, and enhancements, other than those installed by the original manufacturer, which alter the appearance or performance of an auto. This includes, but is not limited to, such items as: body or suspension alterations; custom or special wheels or tires; side exhausts; roll bars; light bars; spoilers; ground effects; bed liners; side exhausts; utility boxes; custom windows; custom painting; murals; or decals or graphics. **Customized equipment and parts** also includes, but is not limited to, such items as any electronic equipment; antennas; and other devices used exclusively to send or receive audio, visual or data signals, or play back recorded media. The **customized equipment and parts** must be permanently installed in a **covered auto** using bolts, brackets, or slide-out brackets. **Customized equipment and parts** does not include snow plows or snow removal equipment.

D. "**Loss**" means sudden, direct, and accidental **loss** of or damage to:

1. A **covered auto**;

2. A **covered auto's** original optional equipment, as available and permanently installed by the manufacturer or its authorized dealer at the time of purchase.

**Loss** shall not include confiscation of the motor vehicle by any governmental agency.

## EXCLUSIONS

**PLEASE READ THE EXCLUSIONS CAREFULLY. IF ANY EXCLUSION APPLIES, COVERAGE WILL NOT BE PROVIDED FOR AN ACCIDENT OR LOSS THAT OTHERWISE WOULD BE COVERED UNDER THIS POLICY.**

A. **We** will not pay for:

1. **Loss**:

   a. Caused intentionally by or at the direction of **you**, any **family member**, any person listed as a driver on the **Declarations Page**, or the **owner** of a **covered auto**; or

   b. That is or should be reasonably expected to result from such intentional act even if the actual **loss** or damage is different than that which was intended.

   However, this exclusion does not apply to an innocent co-insured's legal interest in the **covered auto** if:

   a. The innocent co-insured did not cooperate in or contribute to the cause of the **loss**;

b. The **loss** arose out of an act of domestic violence; and

c. The person who caused the **loss** is criminally prosecuted for the act causing the **loss**.

Payment to the innocent co-insured may be limited to his or her ownership interest in the property as reduced by any payments to a mortgagor or other secured interest.

2. **Loss** to a **covered auto** that occurs while it is being used:

a. To **carry persons or property for compensation or a fee** or as a public or livery conveyance.

b. For **prearranged ride**.

This exclusion does not apply to a share-the-expense car pool.

3. **Loss** to any **covered auto** being maintained or used by any person while employed or otherwise engaged in any **motor vehicle business**.

4. **Loss** to any **covered auto** that occurs while maintaining or using:

a. A **covered auto** for **business use** if **you** have not paid **us** the required **business use** surcharge.

b. Any vehicle while an **insured** is employed or otherwise engaged in any **business** or occupation not described in exclusion (A.3.)

This exclusion does not apply to the business of farming or ranching or the use of a private passenger auto, pickup, or van or a trailer used with one of these vehicle types.

5. For which the **insured** is entitled to recover benefits under a **nuclear energy liability policy**, or would be entitled to recover benefits under such a policy but for its termination upon exhaustion of its limit of liability.

6. **Loss** resulting from the use of a **covered auto** while it is engaged in **racing**.

7. **Loss** to a **covered auto** caused by, or reasonably expected to result from, a criminal act or omission, excluding moving traffic violations, of any **insured**. This does not apply to **loss** that occurs when the **covered auto** has been stolen by someone other than an **insured**.

8. **Loss** to a **covered auto** that occurs while being used in connection with such a **personal vehicle sharing program**. This exclusions does not apply if **you** or a **family member** are operating a **covered auto**.

9. **Loss** caused by, resulting from, or a consequence of **war,** radioactive contamination, radiation, or a nuclear reaction, whether controlled or uncontrolled or however caused.

10. **Loss** arising out of or resulting from, in whole or in part, any actual, alleged, or threatened migration; release; existence; or presence of, or actual, alleged, or threatened exposure to, any mold, mildew, fungus or other microbes. This includes any type or form of: (i) decomposing or disintegrating organic material or microorganism; (ii) organic surface growth on moist, damp, or decaying matter; (iii) yeast or spore-bearing plant-like organism; or (iv) spores; scents; toxins; mycotoxins; bacteria; viruses; or any other by-products produced or released by any mold, mildew, fungus, or other microbes.

This exclusion does not apply if there is a direct causal connection between the types of **loss** described in this exclusion A.10 and an otherwise covered **loss**.

11. **Loss** or damage due and confined to:

a. Wear and tear;

b. Freezing;

c. Mechanical, electronic, or electrical breakdown or failure;

d. Lack of lubricant or coolant;

e. Deterioration, rust or corrosion, wet or dry rot;

f. Road damage to tires;

g. Water leakage or seepage;

h. Dampness of atmosphere or extremes of temperature; or

i. Faulty materials;

j. **Your** lack of routine and/or proper maintenance as prescribed by the manufacturer.

k. Prior **loss** or damage.

l. Delamination unless caused by any other **loss** covered under this PART D.

This exclusion does not apply if the damage results from the total theft of a **covered auto** to which Comprehensive Coverage under this Policy applies.

12. **Loss** to a **utility trailer you own** that is not shown on the **Declarations Page**. This exclusion does not apply to a **utility trailer you**:

a. Acquire during the policy period; and

b. Ask **us** to insure within 14 days after **you** become the **owner**.

13. **Loss** to a **covered auto** due to or as a consequence of:

   a. Destruction, seizure or confiscation by any government or civil authorities including, but not limited to, destruction, seizure or confiscation by any federal or state law enforcement officer in connection with any violation of any controlled substances law for which **you** are convicted; or

   b. Repossession by any entity acting on behalf of the **owner** of the **covered auto**.

   This exclusion does not apply to the interests of Loss Payees in a **covered auto**.

14. **Loss** to equipment designed or used for the detection or location of radar, laser or other speed measuring equipment or its transmission.

15. **Loss** to clothes, tools, or personal effects.

16. **Loss** to any electronic equipment, devices, accessories, and any other personal effects that are not permanently installed in a **covered auto**. This includes, but is not limited to:

   a. Radios, satellite radio systems, stereos, tape decks, compact disc systems, audio cassette recorders, citizen band radios, two-way mobile radios, video entertainment systems; digital video device players;

   b. Tapes; compact discs; cassettes; VHS tapes; DVDs, other recording or recorded media; Any containers designed to carry or store these materials;

   c. Telephones; televisions; personal computers and tablets; GPS/navigation systems; and

   d. Modified or customized engines or carburetor systems.

   This exclusion does not apply to:

   a. Any parts or equipment that are individually scheduled for coverage under Customized Equipment and Parts Coverage.

   b. Any electronic equipment that is necessary for the normal operation of the **auto** or the monitoring of the **auto's** operating systems;

   c. A permanently installed telephone designed to be operated by use of the power from the **auto's** electrical system and any accessories used with the telephone;

   d. Permanently installed equipment designed to be solely operated by use of the power from the **auto's** electrical system; and

   e. Equipment removable from a housing unit that is permanently installed in the **auto** by bolts, brackets, or slide-out brackets.

17. **Loss** due to theft, larceny, or conversion of a **covered auto** or its equipment by **you** or a **family member**.

18. **Loss** to a **covered auto**:

   a. Prior to its delivery to **you**; or

   b. Due to theft prior to its delivery to **you**.

19. **Loss** to any vehicle if **you** acquire it from a seller without legal title; or if the vehicle has been sold, gifted or conveyed to anyone prior to the date of **loss**.

20. **Loss** to a snow plow or any snow removal equipment.

21. **Loss** to a recreational vehicle, motor home, or travel trailer.

22. Amounts incurred for:

   a. Mileage;

   b. Fuel;

   c. Collision damage waiver;

   d. Navigation devices;

   e. Insurance; or

   f. Tolls.

23. **Loss** arising out of any liability assumed by **you** or a **family member** under any contract or agreement, except as required by and subject to Florida Statutes § 627.7263, as amended, as to a motor vehicle rental or leasing contract.

B. **We** do not provide coverage for **loss** arising out of the **ownership**, maintenance, or use of:

   1. Any vehicle that has less than four wheels or which is designed for use mainly off public roads such as any type of all-terrain or quad vehicle, dune buggy, go-cart, or golf cart. This exclusion does not apply to **your utility trailer**.

   2. A **covered auto** that:

      a. Has been rented, leased, subleased or given by **you** or a **family member**, or any other persons listed as a driver either rated or excluded on the **Declarations Page** to another party in exchange for money, value, goods, services, compensation or reimbursement;

      b. Has been given in exchange for compensation;

      c. Is under a conditional sales agreement, consignment agreement, or bailment lease by **you** to another and possession and control of the vehicle has been transferred; or

      d. Has been entrusted to anyone other than **you** or a **family member** for consignment; sale; promoting sale; subleasing; leasing; renting; or selling and is no longer in **your** possession.

3. Loss to a **covered auto** due to diminution in value.

## LIMIT OF LIABILITY

A. **Our** limit of liability for **loss** shall not exceed the lowest of the:

1. **Actual cash value** of the stolen or damaged property at the time of the **accident** or **loss**, reduced by

   a. The applicable deductible shown on the **Declarations Page**, and

   b. Its salvage value if **you** or the **owner** retain the salvage;

2. Amount necessary to repair the physical damage to the **covered auto**, or its parts if the **loss** is limited to parts, to return it to its pre-**loss** physical condition, reduced by the applicable deductible shown on the **Declarations Page**; or

3. Amount necessary to replace the stolen or damaged property, or its parts if the **loss** is limited to parts, reduced by:

   a. The applicable deductible shown on the **Declarations Page**; and

   b. Its salvage value if **you** or the **owner** retain the salvage; or

4. Stated amount shown on the **Declarations Page**, if any.

However, **our** limit of liability under this PART D > COVERAGE FOR DAMAGE TO YOUR AUTO may never exceed $1000 for **customized equipment and parts**.

B. A deduction for **depreciation** and betterment will be made from the amount **we** will pay for repair or replacement of the damaged or stolen property, or any part thereof, if the repair or replacement results in better property or in a better part with regard to:

1. Its market value;

2. The useful life of the part; or

3. The improvement of the condition of the **auto** considering wear and tear and damage that existed prior to the **loss**.

Our adjustment to the amount payable by us due to betterment or **depreciation** on parts replaced includes, but is not limited **to**:

1. Batteries;

2. Tires;

3. Engines;

4. Transmissions; and

5. Any other parts that wear out over time or have a finite useful life or duration typically shorter than the life of the auto as a whole. This does not include external crash parts, wheels, windshields, or other glass.

C. If **you** have declared a stated amount for a specific **auto** shown on the **Declarations Page**, the stated amount is the most **we** will pay for **loss** to that **auto**, including its **customized equipment and parts**.

D. In repairing damaged property, **we** may specify the use of mechanical, non-safety related automobile parts not made by the original manufacturer. These parts will be at least equal in terms of fit, quality, performance, and warranty to the original manufacturer parts they replace. Warranties applicable to non-**OEM** parts may be provided by the manufacturer or distributor of these parts rather than the manufacturer of the **covered auto**. If **we** specify the use of non-**OEM** parts, **we** will identify each such part on **your** repair estimate.

E. In determining the amount necessary to repair the damaged parts, **we** will not pay more than the prevailing competitive labor rates charged in the area in which the property is to be repaired. **We** will also not pay more than the cost of repair or replacement parts as reasonably determined by **us**. **Our** liability for the cost of repairing damaged property is limited to the amount needed to perform physical repairs to the stolen or damaged property. PART D > COVERAGE FOR DAMAGE TO YOUR AUTO does not cover, and **we** will not pay for, **diminution in value**.

F. In the event of a total **loss** to a **covered auto** listed on the **Declarations Page**, **you**, or someone on **your** behalf, must provide **us** the keys to the **covered auto** at **our** request if we retain the salvage.

G. Payments for **loss** covered under this PART D are subject to the terms set forth here:

1. No more than one deductible shall be applied to any one covered **loss**.

2. In determining the amount necessary to repair damaged property to its pre-**loss** condition, the amount to be paid by **us** will be based on the cost of repair or on the cost of replacement parts and equipment which may be new, reconditioned, remanufactured or used including, but not limited to:

   a. Original manufacturer parts or equipment; and

   b. Non-**OEM** parts or equipment.

3. The **actual cash value** is determined by the market value, age and condition of the vehicle at the time the **loss** occurs.

4. If sales tax will necessarily be incurred by an insured upon replacement of a total loss or upon repair of a partial loss, **we** may defer payment of the sales tax unless and until the obligation has been incurred upon replacement of a total loss or upon repair of a partial loss; otherwise, **we** have no obligation to pay for sales tax.

5. Duplicate recovery for the same elements of **loss** is not permitted. No one will be entitled to receive duplicate payments for the same elements of **loss** under this coverage and:

    a. Any other coverage provided by this Policy; or

    b. Under any other insurance or source of recovery.

H. If **you** agree to have the window glass repaired at **our** expense, **we** have no duty to replace the window glass or pay the **actual cash value** unless such window glass cannot be repaired.

I. After an **accident** to which PART D applies, **we** will pay reasonable charges for transporting and storing a **covered auto** to a repair facility near the location of **loss**; provided you comply with your duties and contact us as soon as practical.

## PAYMENT OF LOSS

A. At **our** option, **we** may pay for the **loss** in money or repair or replace the damaged or stolen property.

B. **We** may, at **our** expense, return any stolen property to **you** or to the address last known to **us**. If **we** return stolen property, **we** will pay for any direct physical damage to a **covered auto** or its equipment, resulting from the theft, subject to the provisions of the LIMIT OF LIABILITY section. **We** may keep all or part of the property at an agreed or appraised value, but there shall be no abandonment to **us**.

C. **We** may make payment for a **loss** to **you**, the **owner** of the property, or the lienholder.

D. If **we** make a payment for theft or total **loss** of an **auto**, **you** or the **owner** must transfer the title of that **auto** to **us** at or before the time of payment, unless **you** or the **owner** keep the salvage of a totaled **auto**.

E. A party with an additional interest in a **covered auto** shall have no greater rights than **your** rights to recover for a **loss**.

F. **We** may make payment for a **loss** directly to a repair facility with **your** consent.

## PERMISSION TO RELEASE VEHICLE

This Policy allows **us** to act as an agent on **your** behalf in the event a **covered auto** is non-drivable and incurring storage and/or any additional **accident** related expenses thus conferring authority for **us** to move the **covered auto** to a secure, storage free inspection facility. **We** will give **you** at least 72-hours notice before **we** stop payment for previously authorized storage charges.

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier, organization, person, or other bailee for hire.

## OTHER SOURCES OF RECOVERY

If other insurance or source of recovery also covers the **loss**, **we** will pay only **our** share of the **loss**. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. Any applicable deductible of this Policy will be taken in a proportionate share based on the applicable deductibles of each policy. However, any insurance **we** provide with respect to an **auto** you do not own shall be excess over any other collectible insurance or source of recovery including, but not limited to:

1. Any coverage provided by the **owner** of the **auto**;

2. Any other applicable physical damage insurance; or

3. Any other source of recovery applicable to the **loss**.

In the event this Other Sources of Recovery provision is nullified due to multiple policies with competing excess insurance clauses, **we** shall regardless pay only **our** proportionate share as **our** limit of liability bears to the total of all applicable liability limits.

## APPRAISAL

A. If **you** and **we** do not agree on the amount of the **loss,** then either **you** or **we** may request an appraisal of the **loss**. Within 15 days of receipt of a request for appraisal, the opposing party may request mediation of the dispute in accordance with the Mediation section under Part E — General Provisions of the Policy. The mediation must be completed and unsuccessful before the appraisal can proceed.

B. In the event mediation is not timely requested, or mediation is unsuccessful, or the parties agree to appraisal, then within 30 days of such event, each party will select an appraiser and provide that appraiser's name to the other party. The two appraisers will select an umpire. If they cannot agree on an umpire within 10 days, or **we** may request that the choice be made by a court of competent jurisdiction. The appraisers will separately state in writing the **actual cash value** and the amount of **loss**. If they agree, the **actual cash value** and amount of **loss** shall be as they agreed. If they fail to agree, they will submit their differences to the umpire. A written decision agreed to by any two will be binding on all parties, subject to the terms of the Policy.

C. Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally.

D. Neither **you** nor **we** waive any rights under this Policy by agreeing to mediation or appraisal.

E. The appraisers and umpire have authority only to decide the amount of the **loss**. The appraisers and umpire have no authority to:

1. Make any coverage decisions; or

2. Award any fees, interest, or costs.

## LOSS PAYABLE CLAUSE

A. Subject to all the terms of this Policy, **loss** or damage shall be paid, as interest may appear, to the **named insured** and/or the loss payee shown on the **Declarations Page** of this Policy, both jointly or separately, at **our** discretion.

B. The loss payee's interest will not be protected if the **loss** results from fraudulent acts, material misrepresentation, or omissions, conversion, secretion or embezzlement of a **covered auto**; or an intentional act causing damage that was committed by or at the direction of **you** or a **family member**; or if the **loss** is not covered under the terms of this Policy, including coverage denials for reasons such as **your** material noncooperation.

C. **We** reserve the right to rescind, cancel, or nonrenew this Policy as permitted by policy terms and state law. The rescission, cancellation, or nonrenewal shall terminate this agreement as to the loss payee's interest. If **we** are required by law or regulation to give the loss payee notice of cancellation, **we** will give such notice in accordance to such law or regulation. In addition, any continuance of coverage protecting the loss payee's interest shall terminate on the effective date of a policy contract or insurance binder for similar coverage issued by another insurance carrier.

D. When **we** pay the loss payee, **we** shall, to the extent of the payment, be subrogated to the loss payee's rights of recovery.

E. Except when **we** are required by law to search the Department of Highway Safety and Motor Vehicle records for liens, **we** have no obligation to any lien holder or loss payee that is not shown in the **Declarations Page**. **We** have no obligation to any lien holder or loss payee that does not have a valid security interest in **your covered auto** as of the date of **loss**.

## PART E > GENERAL PROVISIONS

### ADDITIONAL DEFINITIONS FOR PART E

A. "**Mail**," "**mailing**" or "**mailed**" means:

1. Delivery by **us** to any of the following:

   a. United States Postal Service; or

   b. Public or private mail carrier;

2. Sent by **us** through electronic transmission, if not prohibited by state law; or

3. Any other methods allowed by law.

B. "**Proof of mailing**" means sufficient evidence that a correspondence or notice has been presented to the United States Postal Service for mailing. **Proof of mailing** includes, but is not limited to, sworn affidavit, any form of certificate of mailing, certificate of bulk mailing, intelligent mail bar coding, or other form of tracking or proof that is accepted or issued by the United States Postal Service, including Certificate of Bulk Mail, or any other form allowed by state law.

### ASSIGNMENT

A. **Your** duties under this Policy may not be assigned without **our** written consent. However, upon the death of the **named insured**, coverage will be provided until

the end of the policy period or cancellation date, whichever is earlier, for:

1. The **named insured**'s surviving spouse or the **named insured**'s registered domestic partner, if that person **resides** in the same household as the **named insured** at the time of death. Coverage applies to that spouse or registered domestic partner as if he or she were a named insured shown on the **Declarations Page**.

2. The legal representative of the deceased **named insured** while acting as such. This applies only with respect to the representative's legal responsibility to maintain or use a **covered auto**.

B. Coverage will only be provided until the end of the policy term or until otherwise terminated under the terms of this Policy.

### BANKRUPTCY

Bankruptcy or insolvency of an **insured** shall not relieve us of any obligations under this Policy.

### CHANGES

A. This Policy, along with the **Declarations Page** and Application, which are incorporated into and made part of this Policy, and any endorsements issued by **us**, contain all the agreements between **you** and **us**. Its terms may not be changed or waived except in writing by **us**.

B. The premium for each **covered auto** is based on information **we** have received from **you** or other sources. If any of this information material to the development of the Policy premium is incorrect, incomplete or changed, **we** may adjust the premium accordingly during the policy period. **You** have a continuing duty to cooperate with **us** and to notify **us** of any of the following changes which **we** deem material to **your** Policy:

1. **Your** address and/or the principal place where **you** garage any of the **autos** insured under this Policy;

2. The number and type of the **autos** insured or to be insured;

3. How the **autos** insured under **your** policy are being used;

4. The residents of **your** household who are age 15 years or older (either additions or deletions);

5. The driver's license or permit status (new, revoked, suspended or reinstated) of any resident in **your** household or driver listed on the **Declarations Page**;

6. The identity of **regular operators**; or

7. **Your** marital status and the marital status of any resident in **your** household who is age 15 years or older.

C. Any adjustment of **your** premium will be made using **our** rules in effect at the time of the change. Premium adjustments may include, but are not limited to, changes in:

1. **Autos** insured under the Policy;

2. Use of the **autos** insured under the Policy;

3. Drivers;

4. Coverages or coverage limits;

5. Principal place where **you** garage any of the **autos** insured under this Policy;

6. Eligibility for discounts or surcharges or other premium credits or debits;

7. Marital status; or

8. Other factors permitted by law.

D. **We** may revise your Policy coverages during the term to provide more protection without additional premium charge. If **we** do this and **you** have the coverage which is changed, **your** Policy will automatically provide the additional coverage as of the date the revision is effective in **your** state. This does not apply to changes made with a general program revision that includes both broadening and restrictions in coverage, whether that general program revision is made through introduction of a subsequent edition of **your** Policy or an amendatory endorsement.

E. If **you** ask **us** to delete an **auto**, no coverage will apply as of the date and time **you** ask **us** to delete such **auto**.

## MEDIATION OF CLAIMS

A. In any claim filed with **us** for:

1. **Loss** resulting from **bodily injury** in an amount of $10,000 or less;

2. **Property damage**; or

3. **Loss** to **your covered auto** or any **non-owned auto**;

Either party may demand mediation of claim, prior to taking legal action, by filing a written request with the Department of Financial Services on a form which may be obtained from the Department. The request must state:

1. Why mediation is being requested; and

2. The issues in dispute which are to be mediated.

B. Only one mediation may be requested for each claim, unless all parties agree to further mediation. A party demanding mediation shall not be entitled to demand or request mediation after a suit is filed relating to the same already mediated.

C. The Department shall randomly select mediators. Each party may reject one mediator, either before or after opposing side has rejected a mediator. The mediator will notify the parties of the date, time, and

place of the mediation conference, which will be held within 45 days of the request for mediation. The conference may be held by telephone, if feasible.

D. The mediation shall be conducted as an informal process and formal rules of evidence and procedure need not be observed.

E. Participants must:

1. Have authority to make a binding decision; and

2. Mediate in good faith.

F. Cost of the mediation shall be shared equally by both parties unless the mediator determines that one party has not mediated in good faith.

## SETTLEMENT OF CLAIMS

**We** may use estimating, appraisal, or injury evaluation systems or tools to determine any amounts to be paid under this Policy. These systems or tools may be developed by **us** or by third parties, and may include computer software, databases, and special technology.

## LEGAL ACTION AGAINST US

A. No legal action may be brought against **us** until there has been full compliance with all the terms of this Policy. In addition, under PART A >LIABILITY COVERAGE, no legal action may be brought against **us** unless:

1. **We** agree in writing that an **insured** has an obligation to pay for damages due to a covered **accident**; or

2. The amount of that obligation has been finally determined by judgment after trial.

B. No person or organization has any right under this Policy to bring legal action against **us** or to make **us** a party to any legal proceeding to determine the liability of the **insured**.

C. If **we** retain salvage, **we** have no duty to preserve or otherwise retain the salvage for any purpose, including as evidence for a legal proceeding absent any specific and formal written request to do so.

D. Any lawsuit against **us** for benefits under any part of this Policy, except Part C, or any lawsuit filed against **us** by an **insured** following an **accident**, must be commenced within the time period set forth in the bodily injury statute of limitations in the law of the state where the **accident** occurred.

## OUR RIGHT TO RECOVER PAYMENT

A. If **we** make a payment under this Policy and the person to or for whom payment was made has a right to recover damages from another, **we** shall be subrogated to that right. That person shall:

1. Do whatever is necessary to enable **us** to exercise **our** rights;

2. Do nothing after an **accident** or **loss** to prejudice **our** rights;

3. Deliver to **us** any legal papers relating to that recovery;

4. Take the necessary or appropriate action, through a representative designated by **us,** to recover payment as damages from the responsible person or organization. If there is a recovery, then, after the insured has been made whole, **we** shall be reimbursed out of the recovery for expenses, costs, and attorney fees incurred in connection with this recovery; and

5. Execute and deliver to **us** any legal instruments or papers necessary to secure the rights and obligations of the **insured** and **us** as established here.

However, **our** rights under this paragraph A do not apply:

1. With regard to PART D > COVERAGE FOR DAMAGE TO YOUR AUTO against any person using a **covered auto** with the **owner's** permission; or

2. With regard to PART C > UNINSURED MOTORIST COVERAGE, if **we:**

   a. Have been given prompt written notice of a tentative settlement between an **insured** and the insurer of an **uninsured motor vehicle** (as defined in paragraph B.2. of Part C); and

   b. Fail to make advance payment to the **insured** in an amount equal to the tentative settlement within 30 days after receipt of notification.

   If **we** advance payment to the **insured** in an amount equal to the tentative settlement within 30 days after receipt of notification,

   a. That payment will be separate from any amount the **insured** is entitled to recover under the provisions of Uninsured Motorists Coverage; and

   b. **We** also have a right to recover payment and the **insured** must cooperate with **us** and assist **us** in recovering those sums from liable parties.

B. If **we** make a payment under this Policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for **us** the proceeds of the recovery; and

2. Reimburse **us** to the extent of **our** payment.

C. If **we** pursue recovery from a liable party:

1. **You** permit **us** to seek recovery of any deductible that may apply, but **we** have no duty to do so. **We** will notify **you** if **we** do not intend to collect the deductible.

2. **We** reserve the right to compromise or settle the deductible and property damage claims against the responsible parties for less than the full amount. For those sums, **you** agree to be bound by:

   a. A settlement agreement entered into by **us** and the liable party; or

   b. The outcome of appraisal or arbitration.

3. If the total recovery is less than the total of **our** payment and the deductible, **we** will reduce reimbursement of the deductible to **you** based on the proportion that the actual recovery bears to the total of **our** payment and the deductible.

4. Any reimbursement to **you** by **us** will be reduced by a proportionate share of expenses and attorney fees incurred due to the recovery.

5. **We** have priority over an **insured** for any amounts recovered from the liable party to the extent of **our** payments to or on behalf of that **insured**.

D. If **we** make a payment to, or on behalf of, anyone under this Policy which is not covered by this Policy but is compelled by law, then to the extent allowed by law **you** must reimburse **us** to the full extent of all **loss** or damages paid by **us** and **our** claims adjustment expenses.

**POLICY PERIOD AND TERRITORY**

A. This Policy applies only to **accidents** or **losses** which occur:

1. On or after the effective date of the policy and during the policy period as shown on the **Declarations Page**; and

2. Within the policy territory.

   This Policy does not apply to **accidents** or **losses** that occur during any lapse in coverage or for **accidents** or **loss** that occur after this Policy has terminated for any reason.

B. The policy territory is:

1. The United States of America, its territories or possessions; and

2. Canada.

   This Policy also applies to covered **accidents** or covered **losses** while **your covered auto** is being transported between its ports.

**TERMINATION OF THIS POLICY**

A. **Cancellation**

   This Policy may be cancelled during the policy period as follows:

1. **You** may cancel by:

   a. Returning this Policy to **us**; or

b. Giving **us** or **our** authorized agent notice of notice of cancellation stating a future date on which **you** are requesting the Policy be cancelled. The effective date of the cancellation shall be either the date **we** receive **your** notice or the date specified in the notice, whichever is later, except that **we** may, at **our** option, waive the requirement that the notice state a future date for cancellation and cancel the Policy as of the effective date stated in the notice.

2. If this is a new policy **you**:

   a. May not cancel this Policy, if this Policy provides Personal Injury Protection or Property Damage Liability Coverage, or both, during the first 60 days immediately following the effective date of this Policy unless:

      i. The **covered auto** has been totally destroyed so that it is no longer operable on the roads of Florida; or

      ii. Ownership of the **covered auto** is transferred; or

      iii. Other insurance is obtained on the **covered auto**; or

      iv. The named insured is a member of the United States Armed Forces and is called on to or on active duty outside the United States in an emergency situation.

      v. The **named insured** has been charged an incorrect premium for the coverage(s) set forth in the original new business Application and **we** have given notice of the additional premium due.

   b. May cancel for any reason after this Policy is in effect for 60 days.

3. **We** may cancel this Policy as follows:

   a. If this is a new policy:

      i. **We** will not cancel for nonpayment of premium during the first 60 days following the date of issuance, except as permitted by Florida law. However, **we** may cancel by mailing at least 10 days notice of cancellation to **you** at the address shown in the Policy if a check used to pay **us** is dishonored for any reason.

      ii. Except as otherwise provided in 3.a.i. above and 3.b. below, **we** may cancel by mailing at least 45 days notice of cancellation to **you** at the address shown in the Policy.

   b. In the event **we** determine that **you** have been charged an incorrect premium for coverage requested in **your** original new business Application, **we** shall promptly mail **you** a notice of any additional premium due **us**. If

within 10 days from receipt of the notice of additional premium due (or a longer time period as specified in the notice), **you** fail to either:

   i. Pay the additional premium and maintain this Policy in full force under its original terms; or

   ii. Cancel this Policy and demand a refund of any unearned premium;

   Then this Policy shall be cancelled effective 14 days after the date of the notice (or a longer time period as specified in the notice).

   c. If this is a new policy that has been in effect for at least 60 days or if this is a renewal or continuation policy:

      i. **We** will cancel only for the following reasons:

         (1) Nonpayment of premium; or

         (2) If **your** driver's license or that of:

            (a) Any driver who lives with **you**; or

            (b) Any **regular operator**;

            Has been suspended or revoked. This must have occurred during:

            (a) The policy period; or

            (b) The 180 days immediately preceding the original effective date of the Policy; or

         (3) Material misrepresentation or fraud.

      ii. **We** may cancel by mailing to **you** at the address shown in the Policy:

         (1) At least 10 days notice of cancellation in the case of non-payment of premium; or

         (2) At least 14 days notice of cancellation in the case of nonpayment of additional premium as provided in 4.b. above; or

         (3) At least 45 days notice of cancellation in all other cases.

4. **We** will not cancel or terminate **your** Policy based on the lawful use, possession, or ownership of a firearm or ammunition by the insured or household member of the insured.

5. Offering to renew or renewing a policy shall not constitute a waiver or estoppel with respect to grounds for cancellation that existed before the effective date of such renewal. If a policy is cancelled prior to the policy's renewal, such cancellation shall terminate any right of renewal.

## B.  Nonrenewal

1.  **We** may decline to renew or continue this Policy. If **we** do, **we** will mail to **you**, at the address shown on the **Declarations Page**, not less than 45 days notice of nonrenewal before the end of the policy period. Subject to this notice requirement, if the policy period is:

    a.  Less than 6-months, **we** will have the right not to renew or continue this Policy every 6-months, beginning 6-months after its original effective date.

    b.  6-months or longer, but less than one year, **we** will have the right not to renew or continue this period at the end of the policy period.

    c.  1-year or longer, **we** will have the right not to renew or continue this Policy at each anniversary of its original effective date.

2.  **We** will not refuse to renew **you** if an **insured** has had only one **accident** in which the **insured** was at fault within the current 3-year period. This does not prohibit **us** from refusing to renew this policy if an **insured** has had two at fault accidents within the most recent 3-year period or three or more accidents, regardless of fault, during the most recent 3-year period.

3.  **We** will not refuse to renew **you** solely because an **insured** committed a noncriminal traffic infraction unless the infraction is:

    a.  A second infraction committed within an 18-month period or a third or subsequent infraction committed within a 36-month period; or

    b.  A violation of §316.183, Florida Statutes when such violation is a result of exceeding the lawful speed limit by more than 15 miles per hour.

4.  **We** will not refuse to renew **your** Policy based on the lawful use, possession, or ownership of a firearm or ammunition by the insured or household member of the insured.

## C.  Other Termination Provisions

1.  Proof of mailing a notice shall be sufficient proof of notice. United States postal proof of mailing, or certified or registered mailing, of notice to the first-**named insured** at the address shown in the Policy will be used for any notice that:

    a.  The Policy is cancelled or that includes the reasons for cancellation;

    b.  The Policy is not to be renewed; or

    c.  **Our** intent is to issue a Policy by an affiliated insurer.

2.  If this Policy is cancelled, **we** will mail any premium refund that may be due. If due, **we** will send **you** the refund as follows:

    a.  If this Policy is cancelled by **us**, **we** will send **you** the refund within 15 days after the effective date of cancellation.

    b.  If this Policy is cancelled by **you**, **we** will send **you** the refund within 30 days after the later of the:

        i.  Effective date of cancellation; or

        ii.  Receipt of notice or request for cancellation.

3.  The premium refund, if any, will be computed as follows:

    a.  If **we** cancel **your** Policy, **we** will refund the pro rata unearned premium.

    b.  If **you** cancel the Policy, **we** will refund a minimum of 90% of the pro rata unearned premium (also known as short-rated), provided, however, this short-rated calculation shall not apply:

        i.  If **you** cancel the Policy pursuant to Fla. Stat. 627.7282; or

        ii.  If **you** are a military service member as defined in Florida Statutes § 250.01, as amended, and cancel because **you** are called to active duty or are transferred by the United States Armed Forces to a location where the insurance is not required;

        in which case **we** will refund the pro rata unearned premium.

    c.  **Our** making or offering a refund is not a condition of, nor will it affect the effective date of any cancellation.

4.  The earliest effective date of cancellation stated in any notice shall be the date on which the Policy terminates.

5.  Nothing set forth herein shall waive **our** rights to void this Policy when permitted by law.

## D.  Automatic Termination

If **we** offer to renew or continue this Policy and **you** or **your** representative do not accept, this Policy will automatically terminate at the end of the current policy period. Failure to pay the required continuation or renewal premium when due (this includes a payment that is dishonored by a financial institution for any reason) shall mean that **you** have not accepted **our** offer.

If **you** obtain other insurance on **your** covered **auto**, any similar insurance provided by this Policy will terminate as to that **auto** on the effective date of the other insurance.

If a **covered auto** is sold or transferred to someone other than **you** or a **family member**, any insurance provided by this policy will terminate as to that **covered auto** on the effective date of the sale or transfer.

## MISREPRESENTATION AND FRAUD

A.  This Policy was issued in reliance on the information provided on **your** written or verbal insurance application. **We** reserve the right, at **our** sole discretion, to void or rescind this Policy if **you** or a **relative**:

1.  Made any false statements or representations to **us** with respect to any material fact or circumstance; or

2.  Concealed, omitted or misrepresented any material fact or circumstance or engaged in any fraudulent conduct;

in any application for this insurance or when renewing this Policy. **We** will not be liable and will deny coverage for any **accident**, **loss** or claim occurring thereafter.

A fact or circumstance will be deemed material if **we** would not have:

1.  Written this Policy;

2.  Agreed to insure the risk assumed; or

3.  Assumed the risk at the premium charged.

This includes, but is not limited to, failing to disclose in a verbal or written application all persons residing in **your** household or regular operators of a **covered auto**.

B.  When **we** have not voided or reformed the Policy, **we** may still deny coverage for an **accident** or **loss** if **you**, in connection with an application, an endorsement request, or at any time during the policy period, **you** have omitted, concealed or misrepresented any material fact or circumstance or engaged in fraudulent conduct and that omission, concealment, misrepresentation, or fraudulent conduct was material to a risk **we** assumed.

C.  If this Policy has been certified as Proof of Financial Responsibility (e.g., SR-22 or FR-44) and **we** are not able to void the Policy in its entirety, **we** shall have the right to reform the Policy by rescinding all coverages except for the minimum coverage and limits required for the certification. If **we** make a payment under Part A because the policy is certified that **we** would not have otherwise made, **you** must reimburse **us** the amount of that payment.

D.  **We** will not provide coverage to any person who conceals or misrepresents any material fact or circumstance or who engages in fraudulent conduct related to this insurance in connection with the presentation or settlement of a claim.

## TWO OR MORE AUTO POLICIES

If this Policy and any other **auto** policy issued to **you** by **us** or any other member of the National General Insurance group of companies apply to the same **accident** or **loss**, the total limit of **our** liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

## TERMS OF POLICY CONFORM TO STATUTE

If any provision of this Policy fails to conform to the statutes of the state in which this Policy is written, the provision shall be deemed amended to conform to such statutes. All other provisions shall be given full force and effect. Any disputes as to the coverages provided or the provisions of this Policy shall be governed by the law of the state in which this Policy is written

## JOINT AND INDIVIDUAL INTERESTS

**You** may change or cancel this Policy; however, **your** action(s) shall be binding on all persons provided coverage under this Policy. If there is more than one **named insured** shown as the policyholder on the **Declarations Page** of this Policy, any **named insured** may cancel or change this Policy. The action of one **named insured** shall be binding on all persons provided coverage under this Policy.

## ELECTRONIC SIGNATURES

A.  **You** and **we** agree that **electronic signatures** may be used and will satisfy any regulatory or other requirement for written signatures. When a law requires:

1.  A signature on any form or document, or

2.  A letter or document to be notarized, verified or acknowledged or made under oath,

the **electronic signatures** will satisfy this requirement if the signature of the person authorized to perform the service of notarizing, verification, or acknowledgment is attached or logically associated with the signature or electronic signatures of record. A stamp or seal is not required for an electronic notarization.

B.  **You** and **we** agree that electronic signatures shall include, but are not limited to, any assent, acceptance, agreement, election, selection, and rejection sent via e-mail, internet, text message, or fax, or done as a recorded telephonic signature or assent, when done with the intent of the person to be bound, as if signed in writing.

In witness whereof, we, as officers of the Company, have caused this Personal Automobile Policy to be executed and attested. If required by state law, this Policy shall not be valid unless countersigned by **our** authorized representative.

Barry S. Karfunkel
President

Jeffrey Weissmann
Secretary



**Florida**
**Personal Auto**
**Insurance Application**

Direct General Insurance Company
through MGA Direct General Insurance
Agency, Inc.
PO Box 3199
Winston Salem, NC 27102-3199



| Policy #: 2014019679 | Effective Date: 01/01/2022 | Time: 6:02 PM | Amount Enclosed: $250.73 |
|---|---|---|---|

## Agency Information

| Agency Name: | Producer: |
|---|---|
| Agency Number-Producer Code: | Agency E-Mail: |

## Applicant Information

| Applicant Name: Joseph Beecher Alce | | Social Security #: | |
|---|---|---|---|
| Affinity Group: Direct General | | | |

| Mailing Address:<br>5474 Grove Crossing Blvd<br>House | City:<br>Orlando | State:<br>FL | Zip:<br>32839 |
|---|---|---|---|
| E-Mail Address:<br>BEECHER.ALCE@GMAIL.COM | Phone Number:<br>407-902-1297 | Work Number: | |

## Payment Options

| Policy Term | # of Payments | Payment Type | Account # |
|---|---|---|---|
| 12 | 11 | Direct Bill | |

## Underwriting Information / Policy Discount and Surcharge Information

| Underwriting Information | Policy Discount and Surcharge Information |
|---|---|
| Prior Company Name:<br>State Farm | Accident Free Claims Free<br>Homeowner Discount<br>Paperless Discount |
| Prior Policy Expiration/ Cancellation Date:<br>10/21/2019 | |
| Prior BI Limits:<br>$500,000 / $1,000,000 | |

## Vehicle Information

| Veh | Terr | Year | Make | Model | Serial (VIN) Number | Usage | Veh Sym |
|---|---|---|---|---|---|---|---|
| 1 | 95 | 2013 | LNDR | LR4 HSE | SALAG2D43DA683068 | Pleasure/Commute | B7A5A4 |

## Vehicle Information (continued)

| Veh | Garaging Address/Zip Code<br>(if different from mailing address above) | Discounts and Surcharges |
|---|---|---|
| 1 | | Airbag Discount<br>Anti-lock Brakes Discount |

## Coverage Information - Policy Level

| Coverages | Limits/Deductibles | Premium |
|---|---|---|
| Accidental Death | $5,000 Named Insured Only | $20.00 |
| | Combined Policy Level Premium: | $20.00 |

## Coverage Information - 2013 LNDR LR4 HSE

| Coverages | Limits/Deductibles | Premium |
|---|---|---|
| Property Damage | $10,000 Each Accident | $628.00 |
| Personal Injury Protection | $10,000 , $1,000 Deductible Per Occurrence -<br>Named Insured and Resident Relatives,<br>Exclusion of Work Loss Benefit - Named<br>Insured and Resident Relatives | $1,117.00 |

Exhibit "C"

Envelope ID: 25423322f-ce89-4665-be8e-0e5391045dc4

| | |
|---|---|
| **Combined Vehicle Premium:** | $1,765.00 |
| **Additional Charges:** | $43.00 |
| **Total 12 Month Policy Premium:** | $1,808.00 |

**INFORMATION RE: OPERATORS, DRIVERS AND HOUSEHOLD RESIDENTS**

**Provide the following information for Applicant, Applicant's spouse and ALL persons age 15 years and older who reside with Applicant, whether or not they (1) operate any of the vehicles listed above, or (2) are licensed to drive. Dependent children whose parents are separated or divorced are deemed to reside in both parent's households and must be listed. Also, list every person who does not reside in Applicant's household but who regularly operates any of the vehicle(s) to be insured at least 5 times in a 30-day period or 60 or more times per year - this includes children who live away from home or are in college.**

| | Name (As shown on license) | Drivers License Number | License State | Driver Status | Date of Birth | Gender | Marital Status | Relationship to Applicant |
|---|---|---|---|---|---|---|---|---|
| 1 | Joseph Beecher Alce | XXXXXXXXX3401 | FL | Rated Driver | ██████ | Male | Single | Named Insured |

**Driver and Household Member Information (continued)**

| | SR-22 | Discounts and Surcharges |
|---|---|---|
| 1 | No | |

**Accidents, Violations and Nonchargeable Incidents**

| Driver Name | Violation/ Conviction/ Accident Date | List Date and Details of All Accidents, Violations and Convictions During Previous 35 months | Coverage and Amount Paid for Damages | Disputed | Points |
|---|---|---|---|---|---|
| Joseph Beecher Alce | 05/18/2020 | Unlawful Use of Lic or Reg, Allow Unlic to Drv, or W/O Perm | | No | 4 |
| Joseph Beecher Alce | 01/07/2020 | Driving with suspended/revoked/invalid, unlawful use | | No | 4 |

Envelope ID: 25423321-ce69-4669-be8e-0e5391045dc4

| Applicant's Questions | |
|---|---|
| 1. Are there any residents in your household who are 15 years and older, whether licensed or not, that you have not disclosed on the Application, including children/step-children or dependents who reside temporarily elsewhere? | NO |
| 2. Is any vehicle listed on this application used for deliveries (including pizza) or transportation networks like Uber/Lyft or other commercial use other than an approved artisan business? | NO |
| 3. Are any of the vehicles to be insured "rent-to-own"? | NO |
| 4. Are any of the vehicles to be insured leased or rented to others by Applicant? | NO |
| 5. Is your principal residence in Florida fewer than 10 months each year? | NO |
| a. Do any listed operators reside in Florida fewer than 10 months each year? | NO |
| 6. For any person identified in the section "INFORMATION RE: OPERATORS, DRIVERS AND HOUSEHOLD RESIDENTS," has anyone: | |
| a. In the last 10 years, ever pled guilty or been convicted of a felony other than an alcohol related driving offense? You may answer "NO" if your record has been officially expunged. | NO |
| b. Ever pled guilty or no contest to, or been convicted of, insurance fraud? | NO |
| c. Had any insurance cancelled, revoked, or rescinded because of fraud or material misrepresentation? | NO |
| d. Filed a PIP claim, or had a PIP claim filed on his/her behalf, with their knowledge, under any automobile insurance policy in the preceding 36 months? | YES |
| i. If you answered "YES" to 6.d., were any of those PIP claims filed in the last 12 months? | YES |
| ii. If you answered "YES" to 6.d.(i), How many were filed in the last 12 months? | 1 |
| e. Filed 3 or more claims against any auto insurance policy in the preceding 36 months. | NO |
| 7. Are you a homeowner?  (If Yes, proof may be required.) | YES |
| 8. Have you had auto insurance with another carrier during the last 6 months with no more than 30 days lapse in coverage?  If Yes, proof may be required.) | NO |
| 9. Are you currently insured under an auto insurance policy? (If Yes, proof may be required.) | NO |
| 10. Do any of the vehicles to be insured have a modified or altered engine or suspension? | NO |
| 11. Does any driver on the application need an SR22 or FR44? | NO |
| 12. Consent for Policy and Driver service calls and texts? | YES |
| 13. Consent to sales calls and texts? | YES |

**Applicant's Statement – Please read carefully.**

**Acknowledgements.**

1. I represent that I am authorized to sign this Application as the Applicant or on behalf of the Applicant.

2. I understand, recognize, and agree that the information I have given with this Application was done to induce the Company to issue the policy for which I have applied.

3. I have reported on this Application all persons age 15 and older who reside with me, whether or not they are licensed to operate a vehicle. I have also reported all regular operators of my vehicle(s).

4. I have reported on this Application if my vehicle is driven for commercial purposes, including deliveries, or as part of a transportation network service.

5. I represent that my principal residence, the place where I garage my covered vehicles, and the residence of each person I ask to be insured, is in the state of Florida, at least 10 months each year.

6. I understand that I have a duty to promptly notify the Company of changes to any information on this Application, including but not limited to changes to: (1) mailing address; (2) garaging location of vehicles; (3) number, type, and use of vehicles to be insured under the Policy. This includes the use of the vehicle to carry persons or property for compensation or a fee, ride sharing activity, TNC prearranged trips, personal vehicle sharing program, limousine, or taxi service, livery conveyance, including not-for-hire livery, or for retail or wholesale delivery, including but not limited to, the pickup, transport, or delivery of magazines, newspapers, mail, or food. (4) residents of my household of eligible driving age or permit age; (5) driver's license or permit status (new, revoked, suspended or reinstated) of any resident of my household; (6) operators using any vehicles to be insured under this Policy; or (7) the marital status of any resident or family member of my household. I further understand that I have a continuing duty, during the lifetime of my policy, to promptly notify the Company of changes to any information on the policy, including but not limited to changes to the items listed here. I understand the Company may declare that no coverage will be provided or afforded if I do not comply with my continuing duty of advising the Company of any change as noted above.

7. I understand and agree that insurance coverage is conditioned on payment of premium.

8. I agree and authorize my spouse to make changes to the policy if my spouse is listed on the Application or policy as a driver, is not an excluded driver, and is residing in the same household with me at the time of my spouse's signature.

9. I understand that discounts, if applied, are subject to the Company's rules and confirmation.

10. The Company's representatives have fully explained the policy coverages, available limits, and my coverage options to me, and I made an informed decision as reflected on this Application. I understand there will be no coverage unless the coverage is filled in on the Requested Insurance Coverage section and unless a premium has been charged, and I have paid for that specific coverage.

11. If any of my answers on this Application are materially false or misleading, I understand and agree that the Company may rescind any policy issued, as authorized by law.

**MVR & Consumer Report Consent.** I understand and agree that in connection with this Application, the Company may obtain and review vehicle history reports and consumer reports which may include: driver history reports; my credit report or an insurance score based on the information contained in that credit report; individual background checks on all listed drivers; or personal or privileged information from third parties. I further understand and agree (1) that the Company may use a third party in connection with the development of my credit-based insurance score; (2) information from the consumer reports may be disclosed to affiliated or unaffiliated third parties without my prior permission but only as permitted or required by law; (3) upon my written request, the Company will inform me if a consumer report was requested and the name and address of the consumer reporting agency that furnished the report; (4) I may also request access to and correction of information the Company has collected on me; (5) where permitted by law, the Company may request and use subsequent consumer reports in updating and renewing any insurance afforded in connection with this Application; (6) the Company will furnish a more detailed explanation of its information practices upon my request; and (7) refusal to authorize the Company to obtain a consumer report may give the Company the right to decline insurance to me.

**Applicant Initials:** _JBA_

I hereby authorize the Company to obtain history reports on my vehicles and consumer reports on me. I authorize the Company to obtain from the Department of Highway Safety and Motor Vehicles, Motor Vehicle Reports for me and all drivers and household members under this policy. I understand this information will be used in rating and/or underwriting the insurance for which I have applied and any renewal thereafter. I agree the named members of my household and all other operators of any vehicle(s) to be insured under the Policy have authorized me to consent on their behalf to all coverages provided herein and to authorize the Company to obtain consumer reports on them for the rating and/or underwriting of the insurance for which I am applying and, where permitted by law, for any renewal

Envelope ID: 2542332FCE89-4685-BE8E-0E5391045DC4

thereof. Upon written request, additional information as to the nature and scope of the report, if one is made, will be provided. I understand this permission will remain in effect until it is cancelled by me in writing.

**Dishonored Payment Acknowledgement**. I understand the policy may be rescinded and no coverage provided if my premium down payment or full payment is paid by check, credit card, or debit card and the bank returns said check unpaid or fails to honor the credit charge or debit charge in full. Further, if the dishonored check represents the initial premium payment, the contract shall be void ab initio unless the nonpayment is cured within the earlier of 5 days after actual notice by certified mail is received by the applicant or 15 days after notice is sent to the applicant by certified mail or registered mail, and if the contract is void, any premium received by the insurer from a third party shall be refunded to that party in full.

**Fee Acknowledgement**. I understand that a fee will be added to each installment after the downpayment. I understand that fees of $15 for an SR22/FR44 filing, $10 for a late installment or $15 for non-sufficient funds may be assessed and that those are separate and distinct from the installment fees. I understand that a Policy fee of $25 will assessed at new business and each renewal. I understand and agree that certain fees are non-refundable and not part of the premium due. I understand my payments are first applied to the earned fees owed and then to the premium. Installment and renewal down payments made by draft or check are subject to a non-sufficient funds fee if the financial institution does not honor the payment for any reason.

**Cancellation**. All insured requested cancellations will be computed 90% pro-rata. This is the method the Company will use to compute unearned premium refunds. Cancellations will be mailed or delivered at least 45 days prior to the effective date of cancellation. At least 10 days' notice of cancellation will be given for nonpayment. Exception: If the insured is a service member who cancels because he or she is called to active duty or transferred by the United States Armed Forces outside the state of Florida, the Company will refund 100 percent of the unearned premium pursuant to Florida Statute 627.7283.

**Preexisting Damage Exclusion Acknowledgment**. I understand, if I apply for Collision and/or Comprehensive/Other than Collision coverage, and there is existing damage to my vehicle, there will be no coverage provided for that existing damage. I acknowledge that the terms Comprehensive Coverage and Other than Collision Coverage refer to the same coverage.

**Consent to Use Cell Phone Number**. By providing phone number(s) for myself and any other individual(s) I have listed on this application, I acknowledge and confirm that I, and each such individual, expressly consent to the Company making policy related service calls and/or texts to our respective numbers. Each person has authorized me to give their consent to the Company. I agree that I have or will notify them that I have communicated their consent and that the Company may be calling or texting them as described. If I also consented to marketing communication as set forth in this application, I understand and agree that the Company and its affiliates can use texts, recorded messages, and/or an automated dialer to call me about insurance quotes, to discuss the status of my policy and about their other products and services. I understand that I did not have to agree to that in order to purchase my policy and that I can revoke my consent at any time by notifying the Company in writing.

**Electronic Signature**. I agree that any type of electronic signature, including voice recordings, may be used and will satisfy any regulatory or other requirement for written signatures. When a law requires a signature or letter to be notarized, verified, acknowledged, or made under oath, the electronic signature will satisfy this requirement if the signature of the person authorized to perform the service of notarizing, verification or acknowledgement is attached or logically associated with the signature of record. I understand that I also have the right to refuse to conduct transactions by electronic means.

**Producer Acknowledgement**. I understand my producer will receive compensation for this Policy in the form of a commission and may from time to time receive other compensation from the Company based on sales and/or profitability.

**Producer Limitation**. I understand that the producer/agent associated with this Application, if any, has no authority to revise or in any way alter the provisions of any insurance policy issued and is expressly precluded from waiving the Company's rights or requirements.

**Application Review and Accuracy**. I have had the liability coverages and limits available for purchase fully explained to me and have selected the limits shown on this Application. I have had the different policy coverage levels available to me fully explained and made an informed decision and have selected the policy coverage level shown on this Application. I acknowledge and agree to the statements contained within this Application and understand they will become part of my policy. I also agree that no loss will be covered which occurred on the effective date of this policy between 12:01 A.M. and the time this Policy became effective. I hereby acknowledge that I have read and understood all the questions, statements, and information set forth in this Application, including this Applicant's Statement. I hereby represent that my answers and all information, provided by me or on my behalf, contained in this Application is accurate and complete.

**FRAUD WARNING**: Per Florida Statute 817.234(1)(b), any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing false, incomplete, or misleading information is guilty of a felony of the third degree.

Envelope ID: 2542332f-ce69-4665-be8e-0e5391045dc4

| **Applicant's Signature** | _Joseph Beecher Alee_ | **Date** | 01/01/2022 |
|---|---|---|---|
| | 97c9ae18cf8d | | |

Envelope ID: 25423321-ce89-4665-be8e-0e5391045dc4

**Direct General Insurance Company**

**PERSONAL INJURY PROTECTION OPTIONS**

Joseph Beecher Alce
_____
Policyholder

2014019679
_____
Policy Number

**PERSONAL INJURY PROTECTION (NO-FAULT COVERAGE) –** Personal Injury Protection must be provided for any motor vehicle subject to the Florida Motor Vehicle No-Fault Law. Personal Injury Protection benefits include replacement services expenses, payment of 80% of medical expenses and 60% of work loss up to $10,000 per person. Personal Injury Protection benefits also include a $5,000 death benefits which are separate from the limits available for replacement services expenses, medical benefits and work loss.

The named insured may elect a deductible and to exclude coverage for loss of gross income and loss of earning capacity ("lost wages" or "work loss"). These elections apply to the named insured alone, or to the named insured and all dependent resident relatives. For purposes of these elections, a resident spouse is considered a "Named Insured" and not a dependent resident relative. A premium reduction will result from these elections.

**PERSONAL INJURY PROTECTION DEDUCTIBLE –** By electing a deductible you are responsible to pay that portion of the medical benefits, work loss and replacement services expenses. If you want a deductible, check the box with the deductible amount you want. If you want the deductible to apply to you and your spouse, check that box. If you want the deductible to apply to you and any dependent resident relative, check that box. If you do not check a box in this section, no deductible will apply to your policy. (Note: PIP Deductibles do not apply to death benefits)

| Deductible Amount | Named Insured(s) Only (includes resident spouse) | Named Insured(s) and Dependent Resident Relative(s) |
|---|---|---|
| ☐ $0 | ☐ | ☐ |
| ☐ $250 | ☐ | ☐ |
| ☐ $500 | ☐ | ☐ |
| ☒ $1,000 | ☐ | ☒ |

**EXCLUSION OF WORK LOSS BENEFITS –** If you want to exclude work benefits, check only one box. If you do not check a box in this section, work loss benefits will not be excluded. The named insured is hereby advised not to elect the work loss exclusion if the named insured or dependent resident relatives are employed, since lost wages will not be payable in the event of an accident.

☐ Exclude Work Loss Benefits for Named Insured(s) Only (includes resident spouse).

☒ Exclude Work Loss Benefits for Named Insured(s) and Dependent Resident Relatives.

*Joseph Beecher Alce*
_____
Signature
997c9ae18cf8d

01/01/2022
_____
Date

Envelope ID: 25423321-ce89-4685-be8e-0e5391045dc4

# DIRECT GENERAL INSURANCE COMPANY

## Driver Statement

I agree that the persons listed below of eligible driving or permit age do not reside in my household nor have access to drive the vehicles insured on my policy.  I understand that the Company may declare no coverage will be provided if said answers are false or misleading, and materially affect the risk the Company assumes by issuing this policy.

| Driver(s) Selection |
| --- |
| Stephany M Alce |
| Joseph Jeanphilip |
| Destiny L Alce |
| Felipe M Jaramillo |
| Jovanny Alce |

Joseph Beecher Alce

Named Insured

2014019679

Policy Number

*Joseph Beecher Alce*

97c9ae18cf8d

Signature

01/01/2022

Date

**Thank you for your business!**

**Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.**

11222 (07012014)



PO Box 3199 ● Winston Salem, NC 27102-3199

| | |
|---|---|
| Policy Number: | **2014019679** |
| LOB: | **PERSONAL AUTOMOBILE** |
| Named Insured: | |
| **Joseph Beecher Alce** | |
| Policy Period: | **12:06 PM** |
| **1/1/2022 - 1/1/2023** | |
| Date of Notice: | **8/29/2022** |
| Policy Underwritten By: | |
| **Direct General Insurance Company** | |

**24 Hour Claim Reporting: 800-403-1077**
**For Policy Information: 877-463-4732**
**www.DirectAuto.com**

Joseph Beecher Alce
5474 Grove Crossing Blvd
House
Orlando FL 32839

# FL PERSONAL AUTOMOBILE NOTICE OF RESCISSION

**RESCISSION TO TAKE EFFECT AT 12:01 AM ON 1/1/2022**

You are hereby notified that the above numbered policy has been rescinded effective the date and time noted above and no coverage shall be provided.

This action has been taken for the following specific reason:

**Material misrepresentation.  The named insured failed to disclose unlisted household member - Staphany Alce**

**Florida Automobile Joint Underwriting Association Information (applicable only to policies providing Personal Automobile Liability and/or Personal Injury Protection Coverage):**

If the policy being cancelled or nonrenewed provides personal automobile liability and/or personal injury protection, you are possibly eligible for automobile insurance through another insurer or through the Florida Automobile Joint Underwriting Association. For further information regarding replacement insurance, either from another insurer or through the Association, please consult your agent or company representative. This notification of the availability of the Florida Automobile Joint Underwriting Association is given pursuant to the provisions of Section 627.728 of the Florida Statutes.

**Authorized Signature**

☒ THIS MULTI-TONE AREA OF THE DOCUMENT CHANGES COLOR GRADUALLY AND ☒ EVENLY FROM DARK TO LIGHT WITH DARKER AREAS BOTH TOP AND BOTTOM.

**National General** ❯❯
Insurance
P.O Box 3199
Winston-Salem, NC 27102-3199

JPMorgan Chase Bank N.A.
NEW YORK, NY

CHECK NO. 0011066704
50-937/213

POLICY
2014019679

AMOUNT: One Thousand Four Hundred And Twenty And 97/100 US Dollars

VOID AFTER SIX MONTHS

| ISSUE DATE | AMOUNT |
|---|---|
| 08/31/2022 | *******$1,420.97 |

Direct General Insurance Company

PAY TO THE
ORDER OF : JOSEPH BEECHER ALCE

Countersignature

⑆0011066704⑆ ⑈021309379⑈ 508072696⑈

For Deposit Only - JPMC

206830049

X025 DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE
RESERVED FOR FINANCIAL INSTITUTION USE

All Payees must endorse check as written

"Exhibit E"

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA

DIRECT GENERAL INSURANCE COMPANY,

     Plaintiff,

v.

JOSEPH BEECHER ALCE, DESTINY
ALCE, JEANETTE JACQUES, JOSEPH
BEECHER ALCE, AS PARENT, NATURAL,
AND LEGAL GUARDIAN OF J.A., A MINOR,
AND JOSEPH BEECHER ALCE, AS
PARENT, NATURAL, AND LEGAL
GUARDIAN OF S.A., A MINOR,

     Defendants.
-------------------------------------------------
JOSEPH BEECHER ALCE, DESTINY
ALCE, JEANETTE JACQUES, and JOSEPH
BEECHER ALCE, AS PARENT AND
NATURAL GUARDIAN OF JOVANNY
ALCE and  STEPHANY ALCE, MINORS,

     Defendants / Counter-Plaintiffs,

v.

DIRECT GENERAL INSURANCE COMPANY,

     Plaintiff / Counter-Defendant,

_____/

CASE NO.: 2022-CA-010682-O
**CLASS REPRESENTATION**
**JURY DEMAND**

**COUNTER-PLAINTIFFS' CLASS ACTION COMPLAINT**

COME NOW, the Defendants / Counter-Plaintiffs, JOSEPH BEECHER ALCE, DESTINY

ALCE, JEANETTE JACQUES, and JOSEPH BEECHER ALCE, AS PARENT AND NATURAL

GUARDIAN OF JOVANNY ALCE and  STEPHANY ALCE, MINORS, (hereafter "Counter-

Plaintiffs") individually and on behalf of all others similarly situated, and hereby file this Class

Action Complaint against DIRECT GENERAL INSURANCE COMPANY (hereafter "DIRECT"

1

Exhibit F

or "Counter-Defendant"), and assert upon personal knowledge as to their own acts and status, and upon information and belief as to all other matters, the following allegations:

1.     This is an action based on a policy of insurance issued by DIRECT to JOSEPH BEECHER ALCE.

2.     DIRECT is seeking to have said policy of insurance declared rescinded and void ab initio.

3.     Upon information and belief, DIRECT systematically seeks to have policies declared rescinded - not just Counter-Plaintiffs' policy, but thousands of other policies for thousands of other insureds, of whom make up the putative members of the classes (as fully defined below).

4.     This is a class action counterclaim based on claims for Declaratory Judgment and Breach of Insurance Contract and otherwise within the jurisdiction of this Court.

5.     The amount of the total claim is in excess of Fifty Thousand ($50,000.00) dollars.

6.     Venue is proper in Orange County, Florida.

## PARTIES

7.     At all times material to this action, DIRECT is and was a duly licensed insurance company authorized to conduct business in the State of Florida and Orange County.

8.     At all times material to this action, JOSEPH BEECHER ALCE is and was a Florida citizen residing in Orange County, Florida.

9.     At all times material to this action, DESTINY ALCE is and was a Florida citizen residing in Orange County, Florida.

10.    At all times material to this action, JEANETTE JACQUES is and was a Florida citizen residing in Orange County, Florida.

11.    At all times material to this action, JOVANNY ALCE and STEPHANY ALCE, are both minors, Florida citizens, and reside in Orange County, Florida.

**FACTS**

12.     DIRECT issued a policy of insurance, bearing policy # XXXXXXX9679, to JOSEPH BEECHER ALCE, with effective dates from January 1, 2022 through January 1, 2023. (Herein "Subject Policy") See Subject Policy (including declaration pages) attached as Exhibit A and Exhibit B to DIRECT's Complaint

13.     The Subject Policy provided the following coverages to JOSEPH BEECHER ALCE for a 2013 Land Rover LR4, VIN# SALAG2D43DA683068 (hereinafter "Insured Vehicle"):

> a.   property damage liability (hereinafter "PD") coverage and
>
> b.   personal injury protection / accidental death benefits (hereinafter "PIP") coverage.

14.     The Subject Policy does not provide any bodily injury liability coverage, collision coverage or comprehensive coverage.

15.     On or about May 29, 2022, DESTINY ALCE was operating the Insured Vehicle when the insured Vehicle was involved in an accident (hereinafter "Subject Accident") with an opposing motor vehicle.

16.     The Subject Policy was in full force and effect on the date of the Subject Accident.

17.     The Insured Vehicle was owned by JOSEPH BEECHER ALCE.

18.     JEANETTE JACQUES, JOVANNY ALCE, and STEPHANY ALCE, were passengers in the Insured Vehicle at the time of the Subject Accident.

19.     As a result of the Subject Accident, DESTINY ALCE, JEANETTE JACQUES, JOVANNY ALCE and STEPHANY ALCE, have claims for personal injury protection benefits against DIRECT.

20.     As a result of the Subject Accident, the owner of the opposing motor vehicle, has a potential claim for property damage against JOSEPH BEECHER ALCE, and DESTINY ALCE.

21.     On or about January 1, 2022, JOSEPH BEECHER ALCE applied for insurance with DIRECT.

22.     A contract was entered into between JOSEPH BEECHER ALCE and DIRECT.

23.     DIRECT claims that during an investigation, DIRECT determined that JOSEPH BEECHER ALCE made misrepresentations to DIRECT when applying for insurance.

24.     DIRECT claims that JOSEPH BEECHER ALCE failed to disclose that an additional resident over the age of 15 lived within his household on the application for insurance dated January 1, 2022.

25.     Specifically, DIRECT claims that JOSEPH BEECHER ALCE failed to disclose that STEPHANY ALCE, his minor Daughter, resided with him.

**26.     <u>JOVANNY ALCE is under the age of 15.</u>**

27.     DIRECT claims that said failure constituted a material misrepresentation.

28.     JOSEPH BEECHER ALCE did not fail to disclose that an additional resident over the age of 15 lived within his household and, or alternatively, JOSEPH BEECHER ALCE did not make any material misrepresentation to DIRECT when applying for insurance.

## CLASS REPRESENTATION ALLEGATIONS

29.     Counter-Plaintiffs bring this action seeking representation of a class pursuant to Fla R. Civ. P. 1.220(a) and (b)(3).

30.     Counter-Plaintiffs bring this action as class representative, individually and on behalf of all other persons or entities similarly situated, more specifically defined as follows:

      a.   **PIP and PD Only Class:** All DIRECT insureds, from the earliest allowable date until the date of class certification, who had PIP and PD only policies rescinded due

to an alleged failure to disclose additional household residents over the age of 15 on an application for insurance.

b. **Online Class:** All DIRECT insureds, from the earliest allowable date until the date of class certification, who had their policies rescinded due to an alleged failure to disclose additional household residents over the age of 15 on an application for insurance using DIRECT's online quote tool.

c. **Prior Knowledge Class:** All DIRECT insureds, from the earliest allowable date until the date of class certification, who had their policies rescinded due to an alleged failure to disclose additional household residents over the age of 15 on an application for insurance for which DIRECT knew of the alleged additional household residents prior to DIRECT's rescission but continued billing for and collecting premiums in a manner inconsistent with any rescission or forfeiture of coverage.

31.    The issues related to Plaintiffs' claims do not vary from the issues relating to the claims of the other members of the classes such that a class action provides a more efficient vehicle to resolve this claim than through a myriad of separate lawsuits.

32.    **Numerosity**: Although the precise number of class members is unknown to Counter-Plaintiffs at this time and can only be determined through appropriate discovery, upon information and belief, the class members in this case are at least in the thousands and the damages (not including prejudgment interest, attorneys' fees, or costs) exceed $30,000.00. Thus, joinder of all such claims is impracticable and numerosity as to the Classes is otherwise established within the meaning of Rule 1.220(a)(1).

33.    **Commonality**: Rule 1.220(a)(2)'s commonality requirement for the Classes is satisfied because the central (and dispositive) issues in this litigation turn on interpretation of materially identical policy provisions; thus, this case is well-suited for class wide adjudication. DIRECT and all class members are bound by the same materially identical policy terms. This litigation raises common questions of law and fact subject to common resolution within the meaning of Rule 1.220(a)(2), including:

    a.   whether DIRECT can establish "materiality" as a matter of law as to insureds with PIP and PD only policies because a household member or driver surcharge on PIP and PD only policies is prohibited.

    b.   whether DIRECT can establish the "materiality" as a matter of law as to insureds who obtained coverage online and did not fill out or sign the application approved by the state of Florida.

    c.   whether DIRECT waived material misrepresentation claims and should be estopped from rescinding coverage because DIRECT knew of the alleged misrepresentation prior to the rescission yet continued billing for and collecting premiums in a manner inconsistent with the forfeiture of coverage.

    d.   whether DIRECT can rescind policies if DIRECT knew of alleged additional household residents prior to rescission yet continued billing for and collecting premiums in a manner inconsistent with any rescission or forfeiture of coverage.

34.    **Typicality**: Rule 1.220(a)(3)'s typicality requirement is satisfied because Counter-Plaintiffs and Class Members were injured by DIRECT 's uniform misconduct. Plaintiffs' claims and the defenses thereto are typical of members of the Classes. DIRECT injured Counter-Plaintiffs and members of the Classes through uniform misconduct and Plaintiffs' legal claims arise from

the same core practices. Counter-Plaintiffs suffered the same harm as all Class members and Plaintiffs' interests are identical to those of the other Class Members. Thus, typicality within the meaning of Rule 1.220(a)(3) is established.

35.  **Adequacy**: Counter-Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in prosecuting and defending class actions, and Counter-Plaintiffs have no interests in conflict with or antagonistic towards those of Putative Class Members. Plaintiffs' counsel has successfully litigated class action cases similar to that here, where insurers breached contracts with insureds. For these and other reasons, Counter-Plaintiffs and the undersigned counsel are adequate within the meaning of Rule 1.220(a)(4).

36.  **Predominance**: The previously articulated common issues of fact and law predominate over any question solely affecting individual Class Members. Resolution of the common issues in this litigation will resolve virtually the entirety of every Class Members' claims in a single stroke. There are no significant individual questions of liability or damages whatsoever, and certainly not ones that predominate over issues common to the Classes. Issues of liability are common to the class, and, as such, even if issues of damages are individualized, that would not preclude class treatment. Moreover, while the amount of damages will vary, the measure of damages will not. Thus, predominance within the meaning of Rule 1.220(b)(3) is established.

37.  **Superiority**: Class treatment is superior to any other viable alternative method of adjudication within the meaning of Rule 1.220, in that:

   a.  Neither the size of the Classes, nor any other factor, make it likely that difficulties will be encountered in the management of this case as a class action;

   b.  The prosecution of separate actions by individual Class Members, or the individual joinders of all Class Members in this action, is impracticable and would create a

significant and unnecessary burden on the resources of the courts and could result in inconsistent adjudication, while a single class action can determine, with judicial economy, the rights of each member of the Classes;

c.  Because of the disparity of resources available to DIRECT versus those available to individual members of the Classes, prosecution of separate actions would work a financial hardship;

d.  The conduct of this action as a class action conserves the resources of the parties and the court system and protects the rights of each Class Member and meets all due process requirements. A class action is also superior to the maintenance of these claims on an individual basis when all actions arise out of the same circumstances and course of conduct; and

e.  Because the claims are relatively small compared to the cost, time, and expense of litigation, individual actions will be rendered financially impractical, if not impossible.

38.  Thus, class treatment is superior to any other possible form of adjudication within the meaning of Rule 1.220(b)(3).

39.  Counter-Plaintiffs retained the undersigned counsel and agreed to pay reasonable attorney's fees and costs in connection with this action. Counter-Plaintiffs for themselves and the Putative Class, are entitled to recover attorney's fees pursuant to Section 627.428, Florida Statutes and taxable costs pursuant to Section 57.041, Florida Statutes.

## COUNT I: CLAIM FOR BREACH OF CONTRACT
*(On behalf of Counter-Plaintiffs and the Putative PIP and PD Only Class)*

40.  The allegations contained in paragraphs 1 through 39 are hereby incorporated by reference.

41.    This count is brought by Counter-Plaintiffs on behalf of themselves and the Putative PIP and PD Only Class Members.

42.    Counter-Plaintiffs were each covered under an insurance contract with DIRECT as described herein. All PIP and PD Only Class Members were parties and/or omnibus insureds to an insurance contract with DIRECT containing materially identical terms.

43.    The interpretation of Plaintiffs' and all Class Members' Policies are governed by Florida law.

44.    Counter-Plaintiffs and all Putative PIP and PD Only Class Members have claims determined by DIRECT to be covered under DIRECT's insurance policies.

45.    DIRECT has failed and refused to pay benefits for Counter-Plaintiffs and Putative PIP and PD Only Class Members which are due under the Subject Policy and Class Policies.

46.    Counter-Plaintiffs and Putative PIP and PD Only Class Members made no material misrepresentation to DIRECT.

47.    Counter-Plaintiffs and Putative PIP and PD Only Class Members have PIP and PD only policies.

48.    A household member surcharge or driver surcharge is prohibited on PIP and PD only policies.

49.    DIRECT cannot establish "materiality" as a matter of law as to insureds with PIP and PD only policies because a household member or driver surcharge on PIP and PD only policies is prohibited.

50.    DIRECT would still have issued the Subject Policy and Class Policies at the same premium rate.

51.    DIRECT's refusal to pay claims owed under the Subject Policy and Class Policies is a material breach of the contracts with Counter-Plaintiffs and Putative PIP and PD Only Class Members.

52.    Counter-Plaintiffs and Putative PIP and PD Only Class Members have been damaged by DIRECT's breach.

53.    Counter-Plaintiffs and Putative PIP and PD Only Class Members damages are measured by the claims that have been submitted to DIRECT but have not been paid.

54.    Counter-Plaintiffs and Putative PIP and PD Only Class Members are entitled to attorneys' fees and costs, prejudgment and post-judgment interest, and any further relief this Court deems just and proper.

WHEREFORE, Counter-Plaintiffs, individually and on behalf of the PIP and PD Only Class, demand relief and judgment against DIRECT as follows:

A.    For an Order certifying this action as a Class Action on behalf of the PIP and PD Only Class described above;

B.    For an award of compensatory damages for the Counter-Plaintiffs and the Putative PIP and PD Only Class in amounts owed under the Policies for covered claims.

C.    For an award of fees and costs pursuant to Fla. Stat. §§ 627.428 and 57.104;

D.    For pre and post-judgment interest on any amounts awarded; and

E.    For other and further forms of relief as this Court deems just and proper.

## COUNT II: CLAIM FOR BREACH OF CONTRACT
*(On behalf of Counter-Plaintiffs and the Putative Online Class)*

55.    The allegations contained in paragraphs 1 through 39 are hereby incorporated by reference.

56.    This count is brought by Counter-Plaintiffs on behalf of themselves and the Putative Online Class Members.

57.    Counter-Plaintiffs were each covered under an insurance contract with DIRECT as described herein. All Online Class Members were parties and/or omnibus insureds to an insurance contract with DIRECT containing materially identical terms.

58.    The interpretation of Plaintiffs' and all Online Class Members' Policies is governed by Florida law.

59.    Counter-Plaintiffs and all Putative Online Class Members have claims determined by DIRECT to be covered under DIRECT's insurance policies.

60.    DIRECT has failed and refused to pay benefits for Counter-Plaintiffs and Putative Online Class Members which are due under the Subject Policy and Class Policies.

61.    Counter-Plaintiffs and Putative Online Class Members made no material misrepresentation to   DIRECT.

62.    DIRECT cannot establish "materiality" as a matter of law as to insureds who obtained coverage online and did not fill out or sign the application approved by the state of Florida.

63.    Counter-Plaintiffs and Putative Class Members, included in the Online Class, obtained coverage with DIRECT online and did not fill out or sign the application approved by the state of Florida.

64.    Rather, an online form was submitted and DIRECT auto-populated alleged applications for insurance loosely based on the submissions from the online forms.

65.    DIRECT would still have issued the Subject Policy and Class Policies at the same premium rate.

66.    DIRECT's refusal to pay claims owed under the Subject Policy and Class Policies is a material breach of the contracts with Counter-Plaintiffs and Putative Online Class Members.

67.     Counter-Plaintiffs and Putative Online Class Members have been damaged by DIRECT's breach.

68.     Counter-Plaintiffs and Putative Online Class Members damages are measured by the claims that have been submitted to DIRECT but have not been paid.

69.     Counter-Plaintiffs and Putative Online Class Members are entitled to attorneys' fees and costs, prejudgment and post-judgment interest, and any further relief this Court deems just and proper.

WHEREFORE, Counter-Plaintiffs, individually and on behalf of the Online Class, demand relief and judgment against DIRECT as follows:

F.   For an Order certifying this action as a Class Action on behalf of the Online Class described above;

G.   For an award of compensatory damages for the Counter-Plaintiffs and the Putative Online Class in amounts owed under the Policies for covered claims.

H.   For an award of fees and costs pursuant to Fla. Stat. §§ 627.428 and 57.104;

I.   For pre and post-judgment interest on any amounts awarded; and

J.   For other and further forms of relief as this Court deems just and proper.

### COUNT III: CLAIM FOR BREACH OF CONTRACT
*(On behalf of Counter-Plaintiffs and the Putative Prior Knowledge Class)*

70.     The allegations contained in paragraphs 1 through 39 are hereby incorporated by reference.

71.     This count is brought by Counter-Plaintiffs on behalf of themselves and the Putative Prior Knowledge Class Members.

72.     Counter-Plaintiffs were each covered under an insurance contract with DIRECT as described herein. All Class Members were parties and/or omnibus insureds to an insurance contract with DIRECT containing materially identical terms.

12

73.     The interpretation of Plaintiffs' and all Class Members' Policies is governed by Florida law.

74.     Counter-Plaintiffs and all Putative Prior Knowledge Class Members have claims determined by DIRECT to be covered under DIRECT's insurance policies.

75.     DIRECT has failed and refused to pay Counter-Plaintiffs and Putative Prior Knowledge Class Members for the benefits due under the Subject Policy and Class Policies.

76.     Counter-Plaintiffs and Putative Class Members made no material misrepresentation to DIRECT.

77.     As to Counter-Plaintiffs and Putative Prior Knowledge Class Members, DIRECT knew of any alleged misrepresentation prior to the rescission yet DIRECT continued to bill for and collect premiums for the policies covering Counter-Plaintiffs and Putative Prior Knowledge Class Members.

78.     DIRECT waived material misrepresentation claims and should be estopped from rescinding coverage. DIRECT continued its unequivocal act of billing for and collecting premiums in a manner wholly inconsistent with the forfeiture of coverage and lulling insureds into the false sense of security that they would be covered by their insurance policy for any loss that may have arisen.

79.     DIRECT would still have issued the Subject Policy and Class Policies at the same premium rate.

80.     DIRECT's refusal to pay claims owed under the Subject Policy and Class Policies is a material breach of the contracts with Counter-Plaintiffs and Putative Prior Knowledge Class Members.

81.     Counter-Plaintiffs and Putative Prior Knowledge Class Members have been damaged by DIRECT's breach.

82.     Counter-Plaintiffs and Putative Prior Knowledge Class Members damages are measured by the claims that have been submitted to DIRECT but have not been paid.

83.     Counter-Plaintiffs and Putative Class Members are entitled to attorneys' fees and costs, prejudgment and post-judgment interest, and any further relief this Court deems just and proper.

WHEREFORE, Counter-Plaintiffs, individually and on behalf of the Class, demand relief and judgment against DIRECT as follows:

K.  For an Order certifying this action as a Class Action on behalf of the Prior Knowledge Class described above;

L.  For an award of compensatory damages for the Counter-Plaintiffs and the Putative Prior Knowledge Class in amounts owed under the Policies for covered claims.

M.  For an award of fees and costs pursuant to Fla. Stat. §§ 627.428 and 57.104;

N.  For pre and post-judgment interest on any amounts awarded; and

O.  For other and further forms of relief as this Court deems just and proper.

## COUNT IV: DECLARATORY RELIEF
*(On behalf of Counter-Plaintiffs and all Putative Class Members)*

84.     The allegations contained in paragraphs 1 through 39 are hereby incorporated by reference.

85.     This count is brought by Counter-Plaintiffs on behalf of themselves and the Putative Class Members.

86.     At this time, there exists a bona fide dispute regarding whether the Subject Policy and Class Policies provide coverage to Counter-Plaintiffs and the Putative Class Members.

87.     There are also bona fide disputes regarding:

a. whether DIRECT can establish "materiality" as a matter of law as to Counter-Plaintiffs and the Putative Class Members with PIP and PD only policies

b. whether a household member surcharge or driver surcharge on PIP and PD only policies is prohibited.

c. whether DIRECT can establish "materiality" as a matter of law as to Counter-Plaintiffs and the Putative Class Members who obtained coverage online and did not fill out or sign the application approved by the state of Florida.

d. whether DIRECT waived material misrepresentation claims and should be estopped from rescinding coverage as to Counter-Plaintiffs and the Putative Class Members because DIRECT knew of the alleged misrepresentation prior to the rescission and yet, DIRECT continued its unequivocal act of billing for and collecting premiums in a manner inconsistent with any forfeiture of coverage.

88. The parties disagree on these points and there exists an actual and present need for a declaration of rights under the Subject Policy and the Class Policies.

89. Counter-Plaintiffs and Putative Class Members are entitled to attorneys' fees and costs, prejudgment and post-judgment interest, and any further relief this Court deems just and proper.

90. WHEREFORE, Counter-Plaintiffs, individually and on behalf of the Class requests the entry of a declaratory judgment as to the following:

A. That the Court declare that the POLICY issued by DIRECT provide statutory and contractual benefits;

B. For an Order certifying this action as a Class Action on behalf of the Classes described above;

C.  That the Court enter a declaratory judgment that Counter-Plaintiffs and the Putative

Class Members are entitled to insurance coverage from DIRECT;

D.  For an award of fees and costs pursuant to Fla. Stat. §§ 627.428 and 57.104;

E.  That the Court determine and declare any other material matters pertaining to coverage

or otherwise as to the respective rights and responsibilities of Counter-Plaintiffs and

the Putative Class Members under the policies as needed and retain jurisdiction to order

any other relief as may be necessary to do complete justice in this matter and between

the parties.

## JURY DEMAND

Counter-Plaintiffs, individually and on behalf of the Class, hereby demand a trial by jury

as to all issues so triable.

By: /s/ Coretta Anthony-Smith
ANTHONY-SMITH LAW, P.A.
Florida Bar No. 0175684
1711 Amazing Way, Ste. 205
Ocoee, FL 34734
canthony@anthony-smithlaw.com
ataveras@anthony-smithlaw.com
services@anthony-smithlaw.com

By: /s/ Crystal Eiffert
EIFFERT & ASSOCIATES
Florida Bar No. 0553581
711 W. Harvard Street
Orlando, FL 332804
(407) 244-1980
service@ealawgroup.com
ceiffert@ealawgroup.com

By: /s/ Tricia Neimand
NEIMAND LAW, LLC
Tricia Neimand, Esq.
Florida Bar No: 102562
1835 NE Miami Gardens Dr. Suite 151
North Miami Beach, FL 33179

Phone 305-901-5219
tricia@neimandlaw.com
service@neimandlaw.com

By: /s/ Alex Couch
ALEX RAY COUCH
Florida Bar No. 118152
COUCH PA
238 N. Westmonte Ave., Suite 140
Altamonte Springs, FL 32714
(407) 391-5900
arc@couch.law
service@couch.law

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _____ day of March, 2023, I electronically filed

the foregoing with the Clerk of the Court using the Florida Court's E-Filing Portal system, thereby

giving electronic notice to all parties of record.

By: /s/ Coretta Anthony-Smith
ANTHONY-SMITH LAW, P.A.
Florida Bar No. 0175684
1711 Amazing Way, Ste. 205
Ocoee, FL 34734
canthony@anthony-smithlaw.com
ataveras@anthony-smithlaw.com
services@anthony-smithlaw.com

17